# ADVISORY COMMITTEE
# ON
# CRIMINAL RULES

**Salt Lake City, UT**
**October 18, 2013**

Cited in In re A warrant to Search email
account controlled maintained by Microsoft
13Mag2814 Decided 4/25/14

Archived on 5/6/14

This document is protected by copyright.
Further reproduction is prohibited without permission.

# TABLE OF CONTENTS

AGENDA ....................................................................................................... 5

TAB 1   OPENING BUSINESS

A.   Draft Minutes of April 2013 Criminal Rules Meeting...................... 19

B.   Draft Minutes of June 2013 Standing Committee Meeting.............. 37

TAB 2   AMENDMENTS TO THE CRIMINAL RULES UNDER CONSIDERATION

A.   Proposed Amendments Approved by the Supreme Court &
Submitted to Congress

Rule 11.  Pleas............................................................................. 81

B.   Proposed Amendments Approved by the Judicial Conference
& Transmitted to the Supreme Court

Rule 5.  Initial Appearance .......................................................... 87

Rule 6.  The Grand Jury ............................................................... 91

Rule 12.  Pleadings & Pretrial Motions ....................................... 95

Rule 34.  Arresting Judgment..................................................... 107

Rule 58.  Petty Offenses & Other Misdemeanors ....................... 109

TAB 3   PROPOSAL TO AMEND RULE 4

A.   Reporters' Memorandum Regarding Rule 4
(September 24, 2013) ............................................................. 117

B.   Proposed Amended Rule 4 (with style changes)............................ 129

C.   Proposed Amended Rule 4 (without style changes) ........................ 135

D.   Letter to Judge Reena Raggi from Assistant Attorney General
Lanny A. Breuer Regarding Rule 4 (October 25, 2012) ................. 139

E.   Memorandum to Judge David M. Lawson from
Jonathan J. Wroblewski Regarding Proposed Amendments to
Rule 4 (August 23, 2013)....................................................... 151

Cited in In re A warrant to Search email
account control or maintained by Microsoft
13 Mag 2814, Decided 4/25/14
Archived on 5/6/14
This document is protected by copyright.
Further reproduction is prohibited without permission.

TAB 4        SUGGESTION TO AMEND RULE 41

                Letter to Judge Reena Raggi from Acting Assistant Attorney General
                Mythili Raman Regarding Rule 41 (September 18, 2013) .......................... 159

TAB 5        STATUS OF PENDING PROJECTS

                A.       Reporter's Memorandum & Attachment Regarding
                           Civil Rule 45 (September 19, 2013) ........................................ 169

                B.       Reporters' Memorandum Regarding Possible Amendments
                           to Federal Rules of Criminal Procedure to Accommodate
                           CM/ECF (July 5, 2013).......................................................... 175

Cited in In re A warrant to Search e-mail account controlled maintained by Microsoft 13Mag2814 Decided 4/25/14

Archived on 5/6/14

This document is protected by copyright. Further reproduction is prohibited without permission.

# AGENDA
# CRIMINAL RULES COMMITTEE MEETING
## OCTOBER 18, 2013
### SALT LAKE CITY, UTAH

## I. PRELIMINARY MATTERS

A. Chair's Remarks and Administrative Announcements

    1. Introduction of new members

B. Review and Approval of Minutes of April 2013 meeting in Durham

C. Status of Criminal Rules: Report of the Rules Committee Support Office

## II. CRIMINAL RULES UNDER CONSIDERATION (information item)

**A. Proposed Amendments Approved by the Supreme Court and forwarded to Congress**

    1. Rule 11. Advice re Immigration Consequences of Guilty Plea

**B. Proposed Amendments Approved by the Judicial Conference and forwarded to the Supreme Court**

    1. Rule 12. Pleadings and Pretrial Motions. Proposed amendment clarifies what motions must be made before trial and addresses consequences of failure to file timely motion.

    2. Rule 34. Arresting Judgment. Proposed amendment makes conforming changes to implement amendment to Rule 12.

    3. Rule 5. Initial Appearance. Proposed amendment provides that non-citizen defendants in U.S. custody shall be informed that upon request a consular official from the defendant's country of nationality will be notified, and that the government will make any other consular notification required by its international obligations.

    4. Rule 58. Initial Appearance. Proposed amendment provides that in petty offense and misdemeanor cases non-citizen defendants in U.S. custody shall be informed that upon request a consular official from the defendant's country of nationality will be notified, and that the government will make any other consular notification required by its international obligations.

1

Cited in In re A warrant to Search email account controlled maintained by Microsoft, 15 Mag2814 Decided on 5/6/14 Archived on 4/25/14 This document is protected by copyright. Further reproduction is prohibited without permission.

     5. Rule 6. Grand Jury.  Technical and conforming amendment to correct statutory cross reference affected by recodification.

## III.  RULE 4 PROPOSAL REFERRED TO SUBCOMMITTEE

   A.  Rule 4 (service on foreign corporations) (memo)

## IV.  DEPARTMENT OF JUSTICE PROPOSAL TO AMEND RULE 41

## V. RULES AND PROJECTS PENDING BEFORE CONGRESS, STANDING COMMITTEE, JUDICIAL CONFERENCE, AND OTHER COMMITTEES.

   A.  Status Report on Legislation Affecting Federal Rules of Criminal Procedure

   B.  CM/ECF Subcommittee

     1. Rule 45 (Memo)

     2. Reporters' Memo to CM/ECF Subcommittee

     3. Other possible agenda items

   C.  Other

## VI.  PANEL DISCUSSION: AN ACADEMIC VIEW OF THE SUPREME COURT'S RECENT DECISIONS AND A PREVIEW OF THE COMING TERM

Panel members: Professor Orin Kerr, Professor Carissa Hessick, and Professor Andrew Hessick
Moderator: Professor Nancy King

## VII.  DESIGNATION OF TIMES AND PLACES FOR FUTURE MEETINGS

   A.   Spring meeting

2

cited in in re: A warrant to search email account controlled maintained by Microsoft Mag2d14 Decided 4/25/14 Archived on 5/6/14 This document is protected by copyright. Further reproduction is prohibited without permission.

# ADVISORY COMMITTEE ON CRIMINAL RULES

| | |
|---|---|
| **Chair, Advisory Committee** <br>    **on Criminal Rules** | **Honorable Reena Raggi** <br> United States Court of Appeals <br> 704S United States Courthouse <br> 225 Cadman Plaza East <br> Brooklyn, NY 11201-1818 |
| **Reporter, Advisory Committee** <br>    **on Criminal Rules** | **Professor Sara Sun Beale** <br> Charles L. B. Lowndes Professor <br> Duke Law School <br> 210 Science Drive <br> Durham, NC 27708-0360 <br><br> **Professor Nancy J. King** <br> Vanderbilt University Law School <br> 131 21st Avenue South, Room 248 <br> Nashville, TN 37203-1181 |
| **Members, Advisory Committee** <br>    **on Criminal Rules** | **Carol A. Brook, Esq.** <br> Executive Director <br> Federal Defender Program <br>   for the Northern District of Illinois <br> 55 East Monroe Street, Suite 2800 <br> Chicago, IL 60603 <br><br> **Honorable Morrison C. England, Jr.** <br> United States District Court <br> 501 I Street – Suite 14-230 <br> Sacramento, CA 95814-7300 <br><br> **Mark Filip, Esq.** <br> Kirkland & Ellis LLP <br> 300 North LaSalle <br> Chicago, IL 60654 <br><br> **Honorable David E. Gilbertson** <br> Chief Justice <br> Supreme Court of South Dakota <br> 500 E. Capitol <br> Pierre, SD 57501 <br><br> **Honorable John F. Keenan** <br> United States District Court <br> 1930 Daniel Patrick Moynihan U.S. Courthouse <br> 500 Pearl Street <br> New York, NY 10007-1312 |

Cited in In re A warrant to Search a Microsoft account controlled and maintained by Microsoft. 13Mag2814 Decided 4/25/14

Archived on copyright. This document is not the final draft. Further reproduction prohibited without permission.

| Members, Advisory Committee on Criminal Rules *(cont'd.)* | **Professor Orin S. Kerr**<br>The George Washington University Law School<br>2000 H Street, N.W.<br>Washington, DC 20052 |
|---|---|
| | **Honorable Raymond M. Kethledge**<br>United States Court of Appeals<br>Federal Building<br>200 East Liberty Street, Suite 224<br>Ann Arbor, MI 48104 |
| | **Honorable David M. Lawson**<br>United States District Court<br>Theodore Levin United States Courthouse<br>231 West Lafayette Boulevard, Room 802<br>Detroit, MI 48226 |
| | **Honorable Donald W. Molloy**<br>United States District Court<br>Russell E. Smith Federal Building<br>201 East Broadway Street<br>Missoula, MT 59802 |
| | **Honorable Mythili Raman**<br>Assistant Attorney General<br>Criminal Division<br>United States Department of Justice<br>950 Pennsylvania Avenue, N.W. - Room 2107<br>Washington, DC 20530-0001 |
| | **Honorable Timothy R. Rice**<br>United States District Court<br>James A. Byrne United States Courthouse<br>601 Market Street, Room 3041<br>Philadelphia, PA 19106 |

| | |
|---|---|
| **Members, Advisory Committee**<br>  **on Criminal Rules** *(cont'd.)* | **John S. Siffert, Esq.**<br>Lankler, Siffert & Wohl LLP<br>500 Fifth Avenue, 33rd Floor<br>New York, NY 10110 |
| **Clerk of Court Representative,**<br>  **Advisory Committee on Criminal Rules** | **James N. Hatten**<br>Clerk<br>United States District Court<br>Richard B. Russell Federal Building<br>  and United States Courthouse<br>75 Spring Street, S. W., Room 2217<br>Atlanta, GA 30303-3309 |
| **Secretary, Standing Committee**<br>  **and Rules Committee Officer** | **Jonathan C. Rose**<br>Secretary, Committee on Rules of Practice &<br>  Procedure and Rules Committee Officer<br>Thurgood Marshall Federal Judiciary Building<br>One Columbus Circle, N.E., Room 7-240<br>Washington, DC 20544<br>Phone 202-502-1820<br>Fax 202-502-1755<br>Jonathan_Rose@ao.uscourts.gov |
| **Chief Counsel** | **Andrea L. Kuperman**<br>Chief Counsel to the Rules Committees<br>11535 Bob Casey U.S. Courthouse<br>515 Rusk Ave.<br>Houston, TX 77002-2600<br>Phone 713-250-5980<br>Fax 713-250-5213<br>Andrea_Kuperman@txs.uscourts.gov |
| **Deputy Rules Committee Officer**<br>  **and Counsel** | **Benjamin J. Robinson**<br>Deputy Rules Committee Officer and Counsel to<br>  the Rules Committees<br>Thurgood Marshall Federal Judiciary Building<br>One Columbus Circle, N.E., Room 7-240<br>Washington, DC 20544<br>Phone 202-502-1516<br>Fax 202-502-1755<br>Benjamin_Robinson@ao.uscourts.gov |

Cited in In re A warrant to Search a Certain E-mail account controlled and maintained by ... 13Mag2814 Decided 04/25/2014

This document archived, deposited and is subject to copyright. Further reproduction is prohibited without permission.

# LIAISON MEMBERS

| | | |
|---|---|---|
| **Liaison for the Advisory Committee on Appellate Rules** | **Gregory G. Garre, Esq.** | *(Standing)* |
| **Liaison for the Advisory Committee on Appellate Rules** | **Judge Adalberto Jordan** | *(Bankruptcy)* |
| **Liaison for the Advisory Committee on Bankruptcy Rules** | **Roy T. Englert, Jr., Esq.** | *(Standing)* |
| **Liaison for the Advisory Committee on Civil Rules** | **Judge Arthur I. Harris** | *(Bankruptcy)* |
| **Liaison for the Advisory Committee on Civil Rules** | **Judge Diane P. Wood** | *(Standing)* |
| **Liaison for the Advisory Committee on Criminal Rules** | | |
| **Liaison for the Advisory Committee on Evidence Rules** | **Judge Judith H. Wizmur** | *(Bankruptcy)* |
| **Liaison for the Advisory Committee on Evidence Rules** | **Judge Paul S. Diamond** | *(Civil)* |
| **Liaison for the Advisory Committee on Evidence Rules** | **Judge John F. Keenan** | *(Criminal)* |
| **Liaison for the Advisory Committee on Evidence Rules** | **Judge Richard C. Wesley** | *(Standing)* |

## ADMINISTRATIVE OFFICE OF THE UNITED STATES COURTS

**Jonathan C. Rose**
Secretary, Committee on Rules of Practice &
  Procedure and Rules Committee Officer
Thurgood Marshall Federal Judiciary Building
One Columbus Circle, N.E., Room 7-240
Washington, DC 20544
Phone   202-502-1820
Fax      202-502-1755
Jonathan_Rose@ao.uscourts.gov

**Peter G. McCabe**
Assistant Director
Office of Judges Programs
Thurgood Marshall Federal Judiciary Building
One Columbus Circle, N.E., Room 4-180
Washington, DC 20544
Phone   202-502-1800
Fax      202-502-1755
peter_mccabe@ao.uscourts.gov

**Benjamin J. Robinson**
Deputy Rules Committee Officer
  and Counsel to the Rules Committees
Thurgood Marshall Federal Judiciary Building
One Columbus Circle, N.E., Room 7-240
Washington, DC 20544
Phone   202-502-1516
Fax      202-502-1755
Benjamin_Robinson@ao.uscourts.gov

**Julie Wilson**
Attorney Advisor
Thurgood Marshall Federal Judiciary Building
One Columbus Circle, N.E., Room 4-250
Washington, DC 20544
Phone 202-502-3678
Fax 202-502-1766
Julie_Wilson@ao.uscourts.gov

**James H. Wannamaker III**
Senior Attorney
Bankruptcy Judges Division
Thurgood Marshall Federal Judiciary Building
One Columbus Circle, N.E., Room 4-254
Washington, DC  20544
Phone   202-502-1900
Fax       202-502-1988
James_Wannamaker@ao.uscourts.gov

**Scott Myers**
Attorney Advisor
Bankruptcy Judges Division
Thurgood Marshall Federal Judiciary Building
One Columbus Circle, N.E., Room 4-250
Washington, DC  20544
Phone   202-502-1900
Fax       202-502-1988
Scott_Myers@ao.uscourts.gov

**Bridget M. Healy**
Attorney Advisor
Bankruptcy Judges Division
Thurgood Marshall Federal Judiciary Building
One Columbus Circle, N.E., Room 4-273
Washington, DC 20544
Phone   202-502-1900
Fax       202-502-1988
Bridget_Healy@ao.uscourts.gov

**Frances F. Skillman**
Paralegal Specialist
Thurgood Marshall Federal Judiciary Building
One Columbus Circle, N.E., Room 7-240
Washington, DC 20544
Phone   202-502-3945
Fax       202-502-1755
Frances_Skillman@ao.uscourts.gov

Cited in ... want to Search email
account ... not maintained by Microsoft
... Decided on 5/6/14
... provided 4/25/14
This document is protected by copyright.
Further reproduction is prohibited without permission.

# FEDERAL JUDICIAL CENTER

| | |
|---|---|
| **Joe Cecil**<br>*(Rules of Practice & Procedure)*<br>Senior Research Associate<br>Research Division<br>Thurgood Marshall Federal Judiciary Building<br>One Columbus Circle, N.E.<br>Washington, DC 20002-8003<br>Phone  202-502-4084<br>Fax      202-502-4199<br>jcecil@fjc.gov | **Marie Leary**<br>*(Appellate Rules Committee)*<br>Research Associate<br>Research Division<br>Thurgood Marshall Federal Judiciary Building<br>One Columbus Circle, N.E.<br>Washington, DC 20002-8003<br>Phone  202-502-4069<br>Fax      202-502-4199<br>mleary@fjc.gov |
| **Molly T. Johnson**<br>*(Bankruptcy Rules Committee)*<br>Senior Research Associate<br>Research Division<br>Thurgood Marshall Federal Judiciary Building<br>One Columbus Circle, N.E.<br>Washington, DC 20002-8003<br>Phone  315-824-4945<br>mjohnson@fjc.gov | **Emery G. Lee**<br>*(Civil Rules Committee)*<br>Senior Research Associate<br>Research Division<br>Thurgood Marshall Federal Judiciary Building<br>One Columbus Circle, N.E.<br>Washington, DC 20002-8003<br>Phone  202-502-4078<br>Fax      202-502-4199<br>elee@fjc.gov |
| **Laural L. Hooper**<br>*(Criminal Rules Committee)*<br>Senior Research Associate<br>Research Division<br>Thurgood Marshall Federal Judiciary Building<br>One Columbus Circle, N.E.<br>Washington, DC 20002-8003<br>Phone  202-502-4093<br>Fax      202-502-4199<br>lhooper@fjc.gov | **Catherine Borden**<br>*(Evidence Rules Committee)*<br>Research Associate<br>Research Division<br>Thurgood Marshall Federal Judiciary Building<br>One Columbus Circle, N.E.<br>Washington, DC 20002-8003<br>Phone  202-502-4090<br>Fax      202-502-4199<br>cborden@fjc.gov |

In re A warrant to Search a Target Computer at Premises Unknown 3Mag2814 Decided on 5/1/2014 Archived on SearchWarrant.net This document is protected by copyright. Further reproduction is prohibited without permission.

**THIS PAGE INTENTIONALLY BLANK**

Cited in In re A warrant to Search email account controlled maintained by Microsoft 13Mag2814 Decided 4/25/14 Archived on 5/6/14 This document is protected by copyright. Further reproduction is prohibited without permission.

# TAB 1

Cited in In re A warrant to Search email account controlled maintained by Microsoft 13Mag2814 Decision 4/25/14

Archived on 5/6/14

This document is protected by copyright. Further reproduction is prohibited without permission.

**THIS PAGE INTENTIONALLY BLANK**

Cited in In re A warrant to Search email account controlled maintained by Microsoft 13Mag2814 Decided 4/25/14

Archived on 5/6/14

This document is protected by copyright. Further reproduction is prohibited without permission.

# TAB 1A

Cited in In re A warrant to Search email account controlled maintained by Microsoft 13Mag2814 Decided 4/25/14 Archived on 5/6/14 This document is protected by copyright. Further reproduction is prohibited without permission.

**THIS PAGE INTENTIONALLY BLANK**

Cited in In re A warrant to Search email account controlled maintained by Microsoft 13Mag2814 Decided 4/25/14 Archived on 5/6/14 This document is protected by copyright. Further reproduction is prohibited without permission.

# ADVISORY COMMITTEE ON CRIMINAL RULES
## DRAFT MINUTES
### April 25, 2013, Durham, North Carolina

## I. Attendance and Preliminary Matters

The Criminal Rules Advisory Committee ("Committee") met in at Duke Law School in Durham, North Carolina on April 25, 2013. The following persons were in attendance:

Judge Reena Raggi, Chair
Carol A. Brook, Esq.
Judge Morrison C. England, Jr.
Kathleen Felton, Esq.
Mark Filip, Esq. (by telephone)
Chief Justice David E. Gilbertson
James N. Hatten, Esq.
Judge John F. Keenan
Judge David M. Lawson
Professor Andrew D. Leipold
Judge Donald W. Molloy
Judge Timothy R. Rice
John S. Siffert, Esq.
Jonathan Wroblewski, Esq.
Judge James B. Zagel
Professor Sara Sun Beale, Reporter
Professor Nancy King, Reporter

Judge Jeffrey Sutton, Standing Committee Chair
Professor Daniel Coquillette, Standing Committee Reporter
Judge Marilyn L. Huff, Standing Committee Liaison
Judge Richard C. Tallman, Former Advisory Committee Chair

The following persons were present to support the Committee:

Laural L. Hooper, Esq.
Jonathan C. Rose, Esq.
Benjamin J. Robinson, Esq.

## II. CHAIR'S REMARKS AND OPENING BUSINESS

### A. Chair's Remarks

Judge Raggi introduced new members Mark Filip (who participated by telephone) and John S. Siffert. She also thanked Judge Richard Tallman, the former chair of the Committee, for attending. Judge Tallman played a critical role in the development of the proposed amendment

Cited materials pursuant to maintained by Microsoft to Search email account copy of Tag 2814 Decided on 5/6/14 Archived on 5/6/14 This document is protected by copyright. Further reproduction is prohibited without permission.

to Rule 12.

Judge Raggi noted that the Department of Justice recently conferred significant honors on Jonathan Wroblewski and Kathleen Felton. Mr. Wroblewski received the John C. Keeney award for Exceptional Integrity and Professionalism. Ms. Felton received the most prestigious award given by the Criminal Division, the Henry E. Peterson Memorial Award, in recognition of her "lasting contribution to the Division." Judge Raggi congratulated Mr. Wroblewski and Ms. Felton, and thanked them for their exceptional contributions to the Committee's work. Judge Raggi also noted with regret Ms. Felton's plan to retire before the next meeting of the Committee.

### B. Review and Approval of Minutes of April 2012 Meeting

A motion to approve the minutes of the April 2012 Committee meeting in San Francisco, California, having been moved and seconded:

*The Committee unanimously approved the April 2012 meeting minutes by voice vote*

### C. Proposed Amendments Approved by the Supreme Court for Transmittal to Congress

Judge Raggi reported that the following proposed amendments, approved by the Supreme Court and transmitted to Congress, will take effect on December 1, 2013, unless Congress acts to the contrary:

Rule 11. Advice re Immigration Consequences of Guilty Plea.

Rule 16. Government Disclosure: Proposed technical and conforming amendment.

## III. CRIMINAL RULES ACTIONS

### A. Proposed Amendments to Rules 12 and 34

Judge Raggi noted that the main work before the Committee was consideration of Rules 12 and 34. Because the proposed amendments have such a lengthy history and the materials in the agenda book were voluminous, Judge Raggi asked the Reporters to begin with a summary of the history of the proposal.

Professors Beale and King stated that following the Supreme Court's decision in *United States v. Cotton*, 535 U.S. 625 (2002), in 2006 the Department of Justice asked the Criminal

Rules Committee to consider amending Rule 12(b)(3)(B) to require defendants to raise *before trial* any objection that the indictment failed to state an offense by eliminating the provision that required review of such a claim even when raised for the first time after conviction. (In the remainder of these minutes, failure to state an offense will be referred to as FTSO.) At the urging of members of the Advisory Committee and at the Standing Committee, the proposal evolved and expanded over the course of eight years to address other features of Rule 12's treatment of pretrial motions in general.

As published, the proposed amendment:

● stated that the requirement that certain claims and defenses be raised before trial applies only if the basis for the motion is "reasonably available" before trial;

● enumerated the common types of motions that courts have found to constitute defects "in instituting the prosecution" and "in the indictment or information" that must be raised before trial;

● included FTSO among the defects "in the indictment or information" that must be raised before trial; and

● clarified the general standard for relief from the rule that late-filed claims may not be considered, resolving confusion created by the non-standard use of the term "waiver" to reach situations in which there was no intentional relinquishment of a known right.

Judge Raggi noted that she had encouraged the defense bar to review the published amendment, and that the Committee had received thoughtful extended comments that were extremely helpful. The Reporters then drew the Committee's attention to the various issues raised in the public comments, particularly the concerns raised by the defense bar.

To consider the issues raised in the public comments the Rule 12 Subcommittee met in person in San Francisco and held numerous additional meetings by telephone. Judge Raggi thanked the Subcommittee for its extraordinary efforts, and asked Judge England, the Subcommittee chair, to give an overview of the Subcommittee's proposal for amendment as revised following publication.

Judge England prefaced his presentation by noting that, in contrast to earlier proposals for amendment of Rule 12, which had passed the Subcommittee by divided votes, the proposal he would now present had been approved by the Subcommittee unanimously. The proposed amendment would increase the clarity of guidance provided by Rule 12 to both courts and practitioners by listing the common motions that must be raised before trial and delineating the standard of review for late-raised claims. For claims other than FTSO, the proposed standard

was cause and prejudice. For FTSO, the recommended standard was prejudice alone. The Subcommittee also concluded that the district courts needed to have significant discretion to handle claims in the period before trial, and it added language to make that clearer. Finally, at the urging of Judge Raggi, the Subcommittee reconsidered features of the proposed rule that applied the standards for late-raised claims to appellate courts. The Subcommittee ultimately agreed it was best not to try to tie the hands of the appellate courts. Accordingly, it agreed to delete from the proposed rule the statement that Rule 52 does not apply. This would allow the appellate courts to determine whether to apply the standards specified in Rule 12(c) or the plain error standard specified in Rule 52 when untimely claims are raised for the first time on appeal.

When Judge England completed his presentation of the Subcommittee proposal, Judge Raggi agreed that the proposed rule provides greater clarity in identifying motions that must be filed before trial. She also noted that proposed 12(c)(2) gives district judges the needed flexibility to consider untimely motions and claims raised before jeopardy attaches, which could have the practical advantage of minimizing later claims of ineffective assistance of counsel. The proposed amendments also clarify that if the circumstances giving rise to a claim or defense identified in Rule 12(b)(3) are not known before trial, no pretrial motion is required. At that point, Judge Raggi invited Subcommittee members to add their views.

Speaking individually, Subcommittee members agreed that the proposed amendment reflected compromise. Nevertheless, the proposed rule was a considerable improvement over the current one. A defense representative noted that some features of the proposed rule might not benefit defendants in particular cases, but she voiced strong support for retaining the prejudice-only standard for late-raised FTSO claims and the abundant discretion afforded to trial judges. A judge characterized the Subcommittee proposal as a "delicate but exquisite compromise," and he noted that like Civil Rule 12 it "clears the decks before trial" and affords the trial judge abundant discretion to do substantial justice. Representatives of the Department of Justice noted that they began with a narrow policy-based proposal to require FTSO claims to be raised before trial, so that errors would be raised promptly and rectified. However, if the charging document did not give the defendant notice, and he could show prejudice, the Department has always agreed that relief should be afforded. The current proposal also clarifies what claims must be raised before trial, provides substantial discretion to the district judge before the jury is sworn, eliminates the term "waiver," and bifurcates the standard for late-raised claims, providing for cause and prejudice (a clarification of what the law currently is) for all claims except FTSO, for which prejudice alone is sufficient. In resolving conflicts that had developed in the lower courts, the proposal used terms that had been litigated and defined in the case law.

Judge Raggi noted that the proposal raises two different standard of review questions, because it:

(1) changes "good cause" to "cause and prejudice" in order to reflect the interpretation given by most courts, and

(2) provides a different standard, "prejudice," for late-raised FTSO claims.

Following *Cotton*, many appellate courts are now applying plain error to FTSO claims raised for the first time on appeal, and Judge Raggi said she had urged the Subcommittee to consider whether it was desirable to mandate the prejudice standard for late-raised FTSO claims on appeal.

Judge Raggi then opened the floor for general discussion by all committee members. A member asked the purpose of limiting the motions that must be raised before trial to those where the basis is "*reasonably* available." The Reporters and Subcommittee members explained that "available" appears to be a binary factual concept: information was or was not available. In contrast, "reasonably available" includes both this factual component and a qualitative judgment. For example, if the information necessary to raise the motion was included on one page of a massive data dump only one day before the date for filing pretrial motions, it might be deemed available in a factual sense, but not reasonably available. The requirement that a motion "must" be raised before trial applies only if the basis for the motion was "then reasonably available." This allows the defense to argue that, given the circumstances, it was not reasonable to expect a claim or defense to be raised. If the court determines that the basis for the motion was not reasonably available, then proposed Rule 12(b)(3) does not require the motion to be raised before trial. Therefore a later motion would <u>not</u> be untimely under Rule 12(c), and there would be no need to show good cause.

A defense member expressed a variety of concerns with the proposed amendment. First, he argued, the proposal shifts the burden of proof/burden of production by requiring the defense to raise certain "defenses" before trial. But the law generally permits the defense to remain silent and not to assert defenses before trial. For example, in the Third Circuit a statute of limitations defense is timely whether raised before trial, during trial, or at the time of jury instructions. The defendant can wait until the government rests, and then raise its claim that the government has not proven conduct that occurred within the limitations period. In the member's view, requiring this issue to be raised before trial would be a radical change. It would alert the prosecution to the problem. The proposal may also work a change for other claims or defenses. For example, even if some circuits require venue to be raised before trial, the matter may be open in other circuits. In some cases, it may also be to the advantage of the defense not to raise selective or vindictive prosecution before trial, because the government might change its presentation of the case. The member noted that requiring such defenses to be raised before trial may be efficient, but efficiency is not the concern of the defense. In some cases it might also be problematic for the defense to raise multiplicity before trial. These are not merely procedural issues. They are defenses. A defendant has a constitutional right to remain silent, and the government has the

burden of proof. Finally, he expressed concern about the uncertainty created by the new standard "reasonably available." There will be substantial litigation about what the defendant should have known. What if the defendant gets a gigabyte of data one year before trial? The member proposed as an alternative that claims must be raised before trial only when the defense has "actual knowledge." And even that would not solve the problem with shifting the burden of proof, especially for venue and statute of limitations.

Judge Raggi asked the member who first raised the issue of "reasonably available" if he was satisfied with the explanations. He responded that he now understood the rationale for including the word and the issues it would generate.

Judge Raggi then asked for any other concerns about the rule, so that the Subcommittee could respond to all of the issues. One member asked what kind of error could occur in a preliminary hearing, and given grand jury secrecy, how would a defendant know before trial that an error had occurred. Another participant asked why the Subcommittee proposed to substitute "cause and prejudice" for the traditional "good cause." Judge Raggi noted that Judge Sutton had also raised that issue, and asked him for his comments on the proposed amendment.

Judge Sutton noted that he was relatively new to Rule 12. He thanked the Committee for its extensive work on the proposal and expressed his sense that after eight years it was very important to complete the project. He identified a number of strengths of the proposal. First, it is valuable to clarify what issues must be raised before trial. Second, it is imperative to get rid of the term "waiver" in Rule 12(e). The current language was drafted before the Supreme Court clarified the distinction between waiver and forfeiture, and it makes no sense now. Giving district judges more flexibility before trial is very important. It's becoming clearer that this is a rule addressed to the district courts, which he characterized as positive.

Judge Sutton also provided perspective on the Supreme Court's role in the rulemaking process. Although the Court has the authority to approve rules over the dissent of a justice, under Chief Justice Roberts unanimity has been required. So rules must, in effect, be approved by all nine justices. With that in mind, Judge Sutton agreed that it was appropriate to omit double jeopardy from the non-exhaustive list of claims that must be raised before trial. But given the agreement that the word "waiver" should be eliminated, why not substitute "forfeiture"? Finally, he predicted that there would be a lot of push back on the proposed change from "good cause" to "cause and prejudice." "Good cause" is a well established concept, and it gives the court wide discretion. Prejudice is part of that traditional enquiry. But when you codify a standard, it ordinarily carries with it the meaning it has developed. Because "cause and prejudice" is now the standard in habeas litigation, its meaning in that context (including the exception for actual innocence) could carry over to Rule 12.

Judge Tallman explained that you could say the original rule was drafted, at least in part,

on the erroneous assumption that failure to state an offense was a jurisdictional error.  *Cotton* then made it clear that failure to state an offense is not jurisdictional.  In response to the concerns raised by the defense member, Judge Tallman noted that the proposal does reflect a policy judgment that the rules should discourage sandbagging.  It does attempt to flush out issues that could be dispositive, which from the court's perspective should be raised early for effective case management.  It may require the defense to play a card earlier than it wishes, but it does not require the defense to come forward with evidence.  As an appellate judge, he shared some of the concerns about using "cause and prejudice" in Rule 12 could import some of the habeas case law. But trial judges understand "good cause."  Finally, he noted that all of the issues raised at the meeting had been thoroughly vetted on multiple occasions.  He commended the latest proposal as a very good rule and one that was a significant improvement over current Rule 12.  The Supreme Court has now clarified the distinction between jurisdictional issues and merits claims, and there's no reason to allow sandbagging on non-jurisdictional issues.

Judge Raggi noted that the speakers had raised concerns about four main aspects of the Subcommittee's proposed rule:

(1) "then reasonably available";
(2) items on the enumerated list of claims (particularly statute of limitations);
(3) substituting "forfeiture" for "waiver"; and
(4) substituting "cause and prejudice" for "good cause."

She declared a break in the meeting and asked the Subcommittee to use the time to consider its response to these concerns and report back to the full Committee.

Following the break, Judge England announced the Subcommittee's views on the issues identified by Judge Raggi.  In all cases, the Subcommittee was unanimous.

(1) The Subcommittee reaffirmed its strong support for "then reasonably available."
(2) The Subcommittee agreed that it would be acceptable to remove statute of limitations from the list of claims that must be raised before trial.
(3) The Subcommittee rejected the proposal to substitute "forfeiture" for "waiver" in subdivision (e).
(4) The Subcommittee agreed to retain "good cause" rather than "cause and prejudice."

He noted if the Committee as a whole endorsed this approach, it would be necessary to rework the language to incorporate "good cause."  Members then explained the Subcommittee's views.

(1) "then reasonably available"

The Subcommittee was unanimous in the view that the qualifier "then *reasonably*

available" should be retained. The mandate of the rule (and the potential sanction) should be restricted to cases in which the court finds the basis of the defense was "reasonably" available. This is very important from the defense perspective, and it gives appropriate flexibility to the court.

A question arose as to whether the Committee Note could be used to clarify the meaning of "reasonably" in this context. Professor Coquillette reminded everyone that Committee Notes cannot be used to change the meaning of the rule. Professor Beale noted that as published the proposed Committee Note included the following:

The "then reasonably available" language is intended to ensure that a claim a party could not have raised on time is not subject to the limitation on review imposed by Rule 12(c)(3) and (4). Cf. 28 U.S.C. § 1867(a) & (b) (requiring claims to be raised promptly after they were "discovered or could have been discovered by the exercise of due diligence").

She stated that the Cf. citation had been added only to provide an illustration of the kind of analysis that courts might undertake. Although the note could not properly be used to narrow or restrict the rule itself, there was general agreement that it would be beneficial to delete the Cf. citation.

Discussion focused on the effect of including the word "reasonably." A member stated that even if the word reasonably were omitted courts might nonetheless read in the same concept. Another member responded that it was nonetheless desirable to include the word in the text. Judge England observed that on the facts of any given case courts might disagree about what is reasonable, but that's inevitable. A member commented that judges already disagree about when a witness is "available." On his court, for example, the judges disagree about whether soldiers serving in Afghanistan are "available," depending on their view of the efficacy of video technology. The Reporters noted that inclusion of the "reasonably available" criteria is important because it short circuits the analysis: unless the basis for a late-filed motion was reasonably available, there is no need to show either cause or prejudice. Professor King also pointed out that inclusion of the word "reasonably" had been praised by defense commentators, and its deletion might be understood to make the rule significantly harsher. On this view, deletion might require republication.

A member sought clarification of who bore the burden of establishing that the basis for a motion was reasonably available. Several members expressed the view that the government would have this burden because it would be seeking to bar the claim or defense as untimely. In contrast, if the basis for the motion was reasonably available and the motion was thus untimely, the defense would have the burden of showing good cause. The chair and members discussed the possibility of adding a discussion of this issue to the Committee Note, but no action was taken

on this point.

(2) <u>changes to the list of enumerated claims</u>

Professor King explained the Subcommittee's willingness to delete statute of limitations from the list of claims which must be raised before trial. The Subcommittee had previously agreed to remove double jeopardy from the list, and it agreed to treat statute of limitations in the same way. Professor King noted that the 1944 Committee Note had described both double jeopardy and statute of limitations as defenses that need not be raised before trial. The Subcommittee's preference was to add both to the list of defenses that must be raised before trial with the understanding that other aspects of the rule – the limitation to motions for which the basis was "then reasonably available" which "can be determined without a trial on the merits" – would respond to the relevant concerns. However, the Subcommittee was amenable to deleting statute of limitations from the list of claims. The list is illustrative, not exhaustive. Many but not all courts now treat both double jeopardy and statute of limitations as defects in the indictment or institution of the prosecution that must be raised before trial, and deleting these claims from the rule simply allows the case law to continue to develop. Although the Subcommittee would prefer to clarify the law and bring about uniformity, the members agreed to delete both double jeopardy and statute of limitations in the interest of achieving the broadest support for the proposed amendment.

The member who had previously enquired about the inclusion of errors in the grand jury and preliminary hearing indicated that he was satisfied that there were rare instances in which such claims could be raised and determined before trial.

(3) <u>substitution of "forfeiture" for "waiver"</u>

The Subcommittee unanimously rejected the suggestion to substitute "forfeiture" for "waiver" in subdivision (e). Judge Raggi noted that she had discouraged the use of the term "forfeiture" because it was the language of appellate courts, and the rule was principally directed at the district courts. Looking ahead to the question how this might be viewed by the Supreme Court, she observed that the portion of the rule that included the "waiver" language when the Court decided *Cotton* was being eliminated. The new provisions on relief were part of a comprehensive revision of Rule 12. Judge Sutton stated he was satisfied with the explanation that "forfeiture" was principally an appellate standard, and it was not desirable to import that into the rule. Judge Tallman indicated that the disagreement in the application of forfeiture in the appellate cases was another reason not to import that phrase into the rule. Finally, Judge Raggi noted that forfeiture is generally associated with the plain error standard, not the good cause/cause and prejudice standards.

(4) <u>retention of "good cause"</u>

The Subcommittee also agreed to retain "good cause" (the term in the present rule) rather than "cause and prejudice" (the phrase substituted in the amendment published for public comment). The Subcommittee concluded that retaining the familiar "good cause" standard would assuage concerns that habeas case law would be imported into Rule 12, garner support in the Standing Committee, and avoid problems when the proposal is transmitted to the Supreme Court. Again, in a cost benefit calculus, the benefit of clarification was outweighed by the problems that might be caused. The Subcommittee noted, however, this change would require some additional revisions to the text. Judge Raggi deferred discussion of any changes in the language to accommodate "good cause." If the Committee approved the proposed rule in concept, she suggested, then the Subcommittee could use the lunch hour to draft the necessary language.

In light of the Subcommittee's resolution of the issues that had been raised for discussion, and with no member seeking further discussion, Judge Raggi then called for a vote on the proposed amendment to Rule 12 as modified in the following respects:

(1) eliminating statute of limitations defenses from (b)(3)(A),
(2) specifying that a court may consider an untimely claim if the party shows "good cause," and
(3) deleting the *Cf.* reference in the Committee Note accompanying (b)(3).

*With the understanding that specific language to incorporate "good cause" into (c)(3) would be submitted for review, the Committee voted unanimously to transmit Rule 12, as amended following publication, to the Standing Committee.*

*By voice vote, the Committee also unanimously approved transmitting the conforming amendment to Rule 34.*

Following the lunch break, the Subcommittee presented the following revised language for proposed Rule 12(c)(3):

**(3) *Consequences of Not Making a Timely Motion Under Rule 12(b).*** If a party does not meet the deadline for making a Rule 12(b)(3) motion, the motion is untimely. In such a case, a court may consider the defense, objection, or request if:
    (A) the party shows good cause; or
    (B) for a claim of failure to state an offense, the defendant shows prejudice.

Judge Raggi called for discussion. A member asked why (A) referred to the "party" and (B) to the "defendant." Professor Beale explained that only a defendant can raise a claim of failure to state an offense, but the prosecution as well as the defense may raise other pretrial motions governed by Rule 12.

After time for review of the proposed language, Judge Raggi asked whether there were any further concerns. Hearing none, she declared that the morning vote approving Rule 12 for transmission to the Standing Committee would stand with the inclusion of the new language for Rule 12(c)(3). The Reporters would make the necessary changes to the Committee Note to incorporate the other changes made by the Committee. The revised rule would also be subject to restyling. Judge Raggi assured members that any restyling changes that might be significant would be referred to the Rule 12 Subcommittee and, if necessary, to the Committee.

Judge Sutton asked for the Committee's view on the need for republication. Judge Raggi stated that in her view none of the post-publication changes warranted republication, as they did not change the balance among the parties. Professor Beale observed that certain controversial features supported by the Department of Justice had been deleted, but the Department had agreed to those changes as part of an overall agreement to move the rule forward. No member of the Committee supported republication.

**B.      Proposed Amendments to Rules 5 and 58**

This is the Committee's second effort to amend Rules 5 and 58 to provide for advice concerning consular notification. The first proposed amendments were published for public comment and subsequently approved by the Advisory Committee, the Standing Committee, and the Judicial Conference. However, in April 2012 the Supreme Court returned the Rule 5(d) and Rule 58 amendments to the Advisory Committee for further consideration. In response, the Committee revised the language of the proposed amendments, which were approved for publication by the Standing Committee in August 2012.

Rules 5 and 58 govern the procedure for initial appearances in felony and misdemeanor cases. Both provide, inter alia, that the judge must inform the defendant of various procedural rights (including the right to retain counsel or request that counsel be appointed for him, any right to a preliminary hearing, and the right not to make incriminating statements). Parallel amendments to Rules 5 and 58 were proposed by the Department of Justice to facilitate the United States' compliance with Article 36 of the Vienna Convention on Consular Relations ("the Vienna Convention"), which provides for detained foreign nationals to be advised of the opportunity to contact the consulates of their home country. Various bilateral agreements also contain consular notification provisions.

As published in 2012, the proposed rules require the court to inform non-citizen defendants at their initial appearance that (1) they may request that a consular officer from their country of nationality be notified of their arrest, and (2) in some cases international treaties and agreements require consular notification without a defendant's request. The proposed rules do not, however, address the question whether treaty provisions requiring consular notification may

Draft Minutes
Criminal Rules Meeting
April 25, 2013
Page 12

be invoked by individual defendants in a judicial proceeding and what, if any, remedy may exist for a violation of Article 36 of the Vienna Convention. More particularly, as the Committee note emphasizes, the proposed rules do <u>not</u> themselves create any such rights or remedies.

Opening the discussion, Judge Raggi noted that, in twice proposing amendments to Rules 5 and 58, the Committee had carefully considered the policy question of whether the judiciary should be involved in the executive's efforts to satisfy its consular notification requirements under various treaties. The Committee had answered that question in the affirmative, albeit not unanimously. Further, the Committee's 2012 redrafting of the amendment in response to the Supreme Court's remand had been approved for publication by the Standing Committee. Thus, the immediate issue before the Committee was the comments received in response to publication.

Professor Beale described the public comments, which urged changes in the introductory clause of the proposed rules providing that the advice must be given "if the defendant is held in custody and is not a United States citizen." The Federal Magistrate Judges Association (FMJA) recommended that the quoted language be deleted and that the advice requirement apply to all defendants. Two reasons informed the recommendation. First, the FMJA expressed concern that the amendment could be interpreted to require that the arraigning judge determine whether a defendant is a U.S. citizen before providing the advice regarding consular notification. An inquiry of this nature would be undesirable, because defendants might make incriminating statements. Professor Beale endorsed the FMJA's suggestion that it would be better to rephrase the new provisions to parallel proposed Rule 11(b)(1)(O), which is being transmitted from the Supreme Court to Congress. Proposed Rule 11(b)(1)(O) requires the court to give warnings to <u>all</u> defendants about the possible collateral immigration consequences of a guilty plea. The Committee Note explains:

> The Committee concluded that the most effective and efficient method of conveying this information is to provide it to every defendant, without attempting to determine the defendant's citizenship.

Second, the FMJA submitted that the proposed advice requirement should not be limited to defendants "in custody" at the time of their initial appearance.[1] After consultation with the

[1]
There was some disagreement between the Department of State and the FMJA concerning the scope of the obligation under Article 36, but it was not necessary for the Committee to resolve this disagreement. The FMJA noted that Article 36 of the Vienna Convention covers any national who is "arrested or committed to prison or to custody pending trial or is detained in any other manner." Because all defendants who are brought to the court for an initial appearance are arrestees, the FMJA concludes that the proposed amendment should provide for all

Department of State, the Department of Justice had no objection to removing the "in custody" language in the proposed rule if the Committee considers that appropriate. The National Association of Criminal Defense Attorneys also expressed concern with the "in custody" language, though for other reasons.

Professor Beale noted that the revised language now proposed had been agreed to by the Department of Justice after consultation with the Department of State, and vetted by the Style Consultant.

Judge Raggi stated that the key post-publication change was expanding the notification to all defendants, not only those in custody. Although there is always a concern about adding to the long list of information judges are already required to provide, she explained that in this instance there was a practical reason to provide the required advice to all defendants at their initial appearance. Specifically, a defendant who was not in custody at the time of his first appearance might later be remanded for various reasons, such as violation of the conditions of bail. It would be more efficient to provide the warning to all defendants at the first appearance, rather than try to ensure that advice is given later under the varying circumstances that might occur in individual cases.

Professor Coquillette questioned the inclusion in the Committee Note of a reference to the Code of Federal Regulations governing consular advice by arresting officers. He noted that if the regulations were altered it would not be possible to change the Note to update the citation. The Committee agreed to delete the citation and explanatory parenthetical.

A member asked what the consequence would be if a judge does not provide the advice. The proposed rule does not provide for a right or a remedy. Judge Raggi noted that the

---

defendants to receive advice concerning consular notification irrespective of their custodial status at arraignment.

Although the Department of Justice had no objection to removing the "in custody" language in the proposed rule if the Committee considers that appropriate, as noted in the March 25, 2013 letter from Ms. Felton and Mr. Wroblewski, the Department of State does not agree with the FMJA's reading of the Vienna Convention. As reflected in U.S. DEPARTMENT OF STATE, CONSULAR NOTIFICATION AND ACCESS at 17 (3rd ed. 2010) http://travel.state.gov/pdf/cna/CNA_Manual_3d_Edition.pdf , the Department construes the Vienna Convention to cover only situations in which a foreign national's ability to communicate with or visit consular officers is impeded as a result of actions by government officials limiting the foreign national's freedom. (For example, the Department of State would not consider a "detention" to include a brief traffic stop or similar event in which a foreign national is questioned and then allowed to resume his or her activities.) In light of the magistrates' concern, however, the Department saw no harm in offering this advice to every arrestee at the first appearance if the Committee considers that appropriate.

Departments of State and Justice see value in incorporating this advice into the rules as part of the effort to satisfy our treaty obligations, even absent a remedial provision. Speaking on behalf of the Justice Department, Ms. Felton noted that there is often no record of advice given by arresting officers; providing the warning at the initial appearance would create a record of compliance with treaty obligations. Additionally, the federal rule may provide a model for similar state rules and thus indirectly bring about more widespread compliance with Article 36.

> *By voice vote, the Committee unanimously agreed that Rule 5, as modified after publication, be transmitted to the Standing Committee.*

> *By voice vote, the Committee unanimously agreed that Rule 58, as modified after publication, be transmitted to the Standing Committee.*

## IV.   NEW PROPOSAL FOR DISCUSSION

Judge Raggi asked Mr. Wroblewski to provide an introduction to the Department of Justice proposal to amend Rule 4.

Mr. Wroblewski explained that Rule 4 has become an obstacle to the prosecution of foreign corporations that commit offenses in the United States but cannot be served because they have no known last address or principal place of business in the U.S. Some courts have held that efforts to serve by other means were insufficient even if they would provide notice. He stated that this issue is now coming up with some frequency.

Judge Raggi noted that the next step would be the appointment of a subcommittee, but that some initial discussion might be helpful. She asked how the provision sought by the Department would work in practice. What if the foreign corporation were served, but it entered no appearance. Did the Department contemplate that it would be able to prosecute without an appearance, and, if not, what would be the benefit of the change?

Mr. Wroblewski said he was not prepared to answer all facets of the question, but he drew attention to several points. First, to date foreign corporations have not generally ignored service. They have appeared but contested the adequacy of service. Additionally, even if a corporation has not entered an appearance, effective service would have other beneficial consequences, such as asset forfeiture, regardless of whether the government could proceed with the prosecution.

Judge Raggi noted that these were among the issues to be considered by a Subcommittee. She announced that Judge David Lawson had agreed to chair the Rule 4 Subcommittee, and that Judge Rice, Mr. Siffert, and representatives of the Department of Justice would serve as

members.  She asked the Subcommittee to report at the October meeting.


## V. STATUS REPORT ON CRIMINAL RULES

Mr. Robinson stated that in response to the trial of Senator Ted Stevens, hearings were held in Congress to consider disclosure obligations of Federal Prosecutors.  The Administrative Office worked with Judge Raggi to prepare a voluminous submission that contained all of the Committee's work on Rule 16.  Informally we heard that staff found our materials very helpful.

Ms. Brook stated that she had testified at the hearing as a Federal Defender, not as a member of the Committee.  She provided written testimony, was questioned extensively, and then provided written comments.


## VI.  INFORMATION ITEMS

Judge Raggi reported to the Committee that the FJC's Benchbook Committee had acted on the Criminal Rules Committee's suggestion that a discussion of Brady/Giglio obligations be included in the next edition of the Benchbook.  A copy of the new Benchbook's detailed and comprehensive section on Brady/Giglio was included in the Committee's agenda book.  Judge Raggi expressed her gratitude to the Benchbook Committee for allowing her to participate in its discussions leading to the preparation of this new section.

Judge Lawson, who served as a liaison to the Synonym Subcommittee, was asked to comment on the Subcommittee, whose report was included in the Agenda Book.  He noted that the Subcommittee report includes a chart detailing a very large number of words and phrases that appear in more than one set of rules.  At this point, no action to standardize these many terms is contemplated.

Judge Raggi announced that the Committee's next meeting would be held October 17-18, 2013, in Salt Lake City, where the Committee will be hosted by the University of Utah School of Law.

**THIS PAGE INTENTIONALLY BLANK**

Cited in In re A warrant to Search email account controlled maintained by Microsoft 13Mag2814 Decided 4/25/14 Archived on 5/6/14 This document is protected by copyright. Further reproduction is prohibited without permission.

# TAB 1B

Cited in In re A warrant to Search email account controlled maintained by Microsoft 13Mag2814 Declsed 4/25/14

Archived on 5/6/14

This document is protected by copyright.
Further reproduction is prohibited without permission.

**THIS PAGE INTENTIONALLY BLANK**

Cited in In re A warrant to Search email account controlled maintained by Microsoft 13Mag2814 Decided 4/25/14 Archived on 5/6/14 This document is protected by copyright. Further reproduction is prohibited without permission.

## COMMITTEE ON RULES OF PRACTICE AND PROCEDURE
### Meeting of June 3-4, 2013
### Washington, D.C.

### *Draft Minutes as of September 12, 2013*

### TABLE OF CONTENTS
Attendance............................................................ 1
Introductory Remarks and Recent Developments............ 3
Approval of Minutes of the Last Meeting...................... 4
Reports of the Advisory Committees:
    Civil Rules.................................................... 4
    Evidence Rules............................................. 15
    Criminal Rules............................................. 17
    Appellate Rules............................................ 25
    Bankruptcy Rules......................................... 26
Report of the Administrative Office............................ 39
Next Committee Meeting........................................... 39

### ATTENDANCE

    The spring meeting of the Judicial Conference Committee on Rules of Practice and Procedure ("Standing Committee") was held in Washington, D.C., on Monday and Tuesday, June 3 and 4, 2013. The following members were present:

        Judge Jeffrey S. Sutton, Chair
        Deputy Attorney General James M. Cole
        Dean C. Colson, Esq.
        Roy T. Englert, Jr., Esq.
        Gregory G. Garre, Esq.
        Judge Neil Gorsuch
        Judge Marilyn L. Huff
        Chief Justice Wallace B. Jefferson
        Dean David F. Levi
        Judge Patrick J. Schiltz
        Larry D. Thompson, Esq.
        Judge Richard C. Wesley
        Judge Diane P. Wood
        Judge Jack Zouhary

Cited in In re A warrant to Search email account controlled Maintained by Microsoft Mag2814 Decided on 4/2/14 Archived on 5/6/14 Further reproduction is prohibited without permission. This document is protected by copyright.

Also participating were Professor Geoffrey C. Hazard, Jr., and Professor R. Joseph Kimble, consultants to the Standing Committee; and Peter G. McCabe, Administrative Office Assistant Director for Judges Programs. In addition to the Deputy Attorney General, the Department of Justice was represented at various points by Stuart F. Delery, Esquire, Theodore J. Hirt, Esquire, Christopher Kohn, Esquire, Elizabeth J. Shapiro, Esquire, and Allison Stanton, Esquire. Judge Michael A. Chagares, Chair of the Inter-Committee CM/ECF Subcommittee, also participated.

Providing support to the Standing Committee were:

| | |
|---|---|
| Professor Daniel R. Coquillette | The Standing Committee's Reporter |
| Jonathan C. Rose | The Standing Committee's Secretary and Chief, Rules Committee Support Office |
| Benjamin J. Robinson | Deputy Rules Officer and Counsel to the Rules Committees |
| Julie Wilson | Rules Office Attorney |
| Andrea L. Kuperman | Chief Counsel to the Rules Committees |
| Joe Cecil | Senior Research Associate, Research Division, Federal Judicial Center |
| Scott Myers | Attorney, Bankruptcy Division, AO |
| James Wannamaker | Attorney, Bankruptcy Division, AO |
| Bridget M. Healy | Attorney, Bankruptcy Division, AO |

Representing the advisory committees were:

Advisory Committee on Appellate Rules —
   Judge Steven M. Colloton, Chair
   Professor Catherine T. Struve, Reporter (by telephone)
Advisory Committee on Bankruptcy Rules —
   Judge Eugene R. Wedoff, Chair
   Professor S. Elizabeth Gibson, Reporter
   Professor Troy A. McKenzie, Associate Reporter
Advisory Committee on Civil Rules —
   Judge David G. Campbell, Chair
   Judge Paul W. Grimm, Chair of Discovery Subcommittee (by telephone)
   Judge John G. Koeltl, Chair of Duke Subcommittee (by telephone)
   Professor Edward H. Cooper, Reporter
   Professor Richard L. Marcus, Associate Reporter
Advisory Committee on Criminal Rules —
   Judge Reena Raggi, Chair
   Professor Sara Sun Beale, Reporter
   Professor Nancy King, Associate Reporter

Advisory Committee on Evidence Rules —
Chief Judge Sidney A. Fitzwater, Chair
Professor Daniel J. Capra, Reporter

### INTRODUCTORY REMARKS

Judge Sutton opened the meeting by thanking the chairs, reporters, committee members and staff for their extraordinary work in preparation for this meeting with its heavy agenda.

He reported that in April 2013, the Supreme Court adopted without change and sent to Congress the package of fifteen proposed rule changes previously approved by the Judicial Conference at its September meeting. Rules and Forms to be amended are listed below.

•    Appellate Rules 13, 14, 24, 28, and 28.1, and Form 4
•    Bankruptcy Rules 1007(b)(7), 4004(c)(1), 5009(b), 9006(d), 9013, and 9014
•    Civil Rules 37 and 45
•    Criminal Rule 11
•    Evidence Rule 803(10)

In accordance with the provisions of Sections 2072 and 2075 of Title 28, United States Code, these amendments will take effect on December 1, 2013, if Congress does not enact legislation to reject, modify, or defer them. They will govern in proceedings thereafter commenced and, insofar as just and practicable, all proceedings then pending.

Judge Sutton also stated that the Standing Committee would try this year to advance the timing of its report to the Judicial Conference to have it available by the first week in July. After the Judicial Conference meeting in September, an equivalent effort will be made to have the package of amendments approved by the Conference available to the Supreme Court no later than early October. Under the old schedule, proposed rule changes typically did not arrive at the Court until mid- to late-December after approval by the Judicial Conference at its meeting in September.

This new process will enlarge the time available and increase scheduling flexibility for the Court to address the proposed rule changes while still adhering to the timelines mandated by the Rules Enabling Act.

Judge Sutton also reported that the Chief Justice had made appointments for all Rules Committee vacancies in May 2013 so that the new committee members could be notified in time to attend their respective committee meetings this fall. This represented a tremendous effort on the part of all responsible to expedite the appointment process. Judge Sutton expressed his thanks on behalf of all the Rules Committee chairs to Laura Minor, Judge Hogan, and the Chief Justice.

He further expressed his intention to invite retiring Standing Committee members Judges Huff and Wood to participate as panelists at the January meeting, when their exceptional contributions would be formally recognized.

## APPROVAL OF MINUTES OF THE LAST MEETING

**Action:** **The Standing Committee, by voice vote without objection, approved the minutes of its last meeting, held on January 3–4, 2013, in Cambridge, Massachusetts.**

## REPORT OF THE ADVISORY COMMITTEE ON CIVIL RULES

Judge David G. Campbell, assisted by the advisory committee's two reporters, Professor Edward H. Cooper and Professor Richard L. Marcus, presented the report of the Civil Rules Advisory Committee. The advisory committee sought approval to publish for public comment a number of proposed amendments.

### ACTION ITEMS

**A.      Proposed Action:   Publication of Revised Rules 1, 4, 16, 26, 30, 31, 33, 34, 36, and 37 (the Duke Conference rules package)**

Judge Campbell first presented the advisory committee's recommendation for publication of a series of amendments aimed at improving the pretrial process of civil litigation, which are the product of a conference on civil litigation that the Civil Rules Committee hosted at Duke University School of Law in 2010. The proposed revisions recommended for publication include changes to Rules 1, 4, 16, 26, 30, 31, 33, 34, 36, and 37. These recommendations were little changed in their basic thrust from the proposals that were presented for discussion at the January 2013 meeting of the Standing Committee. However, a number of revisions were made both to the amendments and to the committee notes to address the concerns expressed at the January meeting.

Judge Campbell first explained how the proposed revised rules relate to the three major themes of the Duke Conference. He stressed the primary role of Judge Koeltl and his Duke Conference Subcommittee as well as the advisory committee's two reporters in the development of the package of proposed amendments. These amendments are designed to reduce the costs and delays of civil litigation and to promote the aim of the rules "to assure the just, speedy and inexpensive determination of every action and proceeding."

The three main themes repeatedly stressed at the Duke Conference were: (1) early and active judicial case management, (2) the necessity for proportionality in discovery, and (3) a duty of cooperation in the discovery process by counsel. The conclusion of the Duke Conference was that at present some or all of these elements are too often missing in civil litigation. The proposed rule changes address these three areas.

### *Case Management Proposals*

The case management proposals reflect a perception that the early stages of litigation often take far too long.  The most direct aim at early case management is reflected in proposed amendments to Rules 4(m) and 16(b).  Another important proposal relaxes the Rule 26(d)(1) discovery moratorium to permit early delivery of Rule 34 requests to produce, but sets the time to respond after the first Rule 26(f) conference.

*Rule 4(m): Time to Serve the Summons and Complaint*: Rule 4(m) would be revised to shorten the time to serve the summons and complaint from 120 days to 60 days.  As under the current rule, a judge would retain the ability to extend the time for service for good cause.  The amendment responds to the commonly expressed view that four months to serve the summons and complaint is too long.

A concern raised by the Department of Justice about confusion over the applicability of Rule 4(m) to condemnation actions is addressed by amending the last sentence: "This subdivision (m) does not apply to service in a foreign country under Rule 4(f) or 4(j)(1), or to service of a notice under Rule 71.1(d)(3)(A)."

*Rule 16(b)(2): Time for Scheduling Order*: The proposed amendment to Rule 16(b)(2) would reduce the present requirements for issuing a scheduling order by 30 days to 90 days after any defendant is served or 60 days after any defendant appears.  The addition of a new provision allows the judge to extend the time for a scheduling order on finding good cause for delay.

*Rule 16(b): Actual Conference*: Present Rule 16(b)(1)(B) authorizes issuance of a scheduling order after receiving the parties' Rule 26(f) report or after consulting "at a scheduling conference **by telephone, mail, or other means**."  The proposed amendment would eliminate the bolded language.  Judge Campbell explained that the advisory committee believes that in the absence of a Rule 26(f) report, an actual conference by simultaneous communication among the parties and court is a very valuable case management tool.  A judge would retain the ability to issue a scheduling order based only on the Rule 26(f) report.

*Rules 16(b)(3), 26(f): Additional Subjects*:  The proposals add preservation of electronically stored information (ESI) and agreements under Evidence Rule 502 on waiver of privilege or work product protection to the "permitted contents" of a scheduling order and to the Rule 26(f) discovery plan.  A third proposal would add a new Rule 16(b)(3)(B)(v), permitting a scheduling order to "direct that before moving for an order relating to discovery the movant must request a conference with the court."  A number of courts now have local rules similar to this proposal.  Experience has shown that an informal pre-motion conference with the court often resolves a discovery dispute.

*Rule 26(d)(1): Early Rule 34 Requests*: After considering a variety of proposals that would allow discovery requests to be made before the parties' Rule 26(f) conference in order to enhance its focus and specificity, the advisory committee limited the proposed change to Rule 34 requests to produce by adding a new Rule 26(d)(2) that would permit the delivery of such requests before the scheduling conference.

A corresponding change would be made to Rule 34(b)(2)(A), setting the time to respond to a request delivered under Rule 26(d)(2) within 30 days after the parties' first Rule 26(f) conference. As Rule 34 requests frequently involve heavy discovery burdens, the advisory committee thought that early court consideration of such requests might be useful.

### Proposals to Incorporate Proportionality

Several proposals seek to promote responsible use of discovery proportional to the needs of the case. Some important changes address the scope of discovery directly by amending Rule 26(b)(1) and by requiring clearer responses to Rule 34 requests to produce. Others tighten the presumptive limits on the number and duration of depositions and the number of interrogatories and for the first time add a presumptive limit of 25 to the number of requests for admission other than those that relate to the genuineness of documents. Yet another proposed change explicitly recognizes the district court's existing authority to issue a protective order specifying an allocation of expenses incurred by discovery.

*Rule 26(b)(1): Adopting Rule 26(b)(2)(C)(iii) Cost-Benefit Analysis*: Given the widespread respect for balanced discovery principles embodied in Rule 26(b)(2)(C)(iii), the advisory committee proposed to transfer the analysis required by that rule to become a limit on the scope of discovery permitted by Rule 26(b)(1). Under the new proposed Rule 26(b)(1), "discovery must be proportional to the needs of the case, considering the amount in controversy, the importance of the issues at stake in the action, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."

A corresponding change is made by amending Rule 26(b)(2)(C)(iii) to cross-refer to (b)(1); thus, the court remains under a duty to limit the frequency or extent of discovery that exceeds these limits, on motion or on its own.

Other changes are also made in Rule 26(b)(1). Under the amended rule, all discovery is limited to "matter that is relevant to any party's claim or defense." The ability to extend discovery to "any matter relevant to the subject matter involved in the action" is eliminated. The parties' claims or defenses are those identified in the pleadings.

Rule 26(b)(1) also would be amended by revising the penultimate sentence: "Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Many cases continue to cite the

"reasonably calculated" language as though it defines the scope of discovery, and judges often hear lawyers argue that this sentence sets a broad standard for appropriate discovery. To eliminate this potential for improper expansion of the scope of discovery, this sentence would be revised to read: "Information within this scope of discovery need not be admissible in evidence to be discoverable."

The proposed revision of Rule 26(b)(1) also omits its current specific reference to "the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter." Discovery of such matters is so deeply entrenched in practice that the current reference is superfluous.

Several discovery rules cross-refer to Rule 26(b)(2) as a reminder that it applies to all methods of discovery. Transferring the restrictions of Rule 26(b)(2)(C)(iii) to become part of subdivision (b)(1) makes it appropriate to revise the cross-references to include both (b)(1) and (b)(2).

_Rule 26(c): Allocation of Expenses_. Another proposal adds to Rule 26(c)(1)(B), an explicit recognition of the court's authority to enter a protective order that allocates the expenses of discovery.

_Rules 30, 31, 33, and 36: Presumptive Numerical Limits_: Rules 30 and 31 establish a presumptive limit of 10 depositions by the plaintiffs, or by the defendants, or by third-party defendants. Rule 30(d)(1) establishes a presumptive time limit of one 7-hour day for a deposition by oral examination. Rule 33(a)(1) sets a presumptive limit of "no more than 25 written interrogatories, including all discrete subparts." There are no presumptive numerical limits for Rule 34 requests to produce or for Rule 36 requests to admit. The proposals reduce the limits in Rules 30, 31, and 33. They add to Rule 36, for the first time, presumptive numerical limits.

The proposals would reduce the presumptive limit on the number of depositions from 10 to 5, and would reduce the presumptive duration to 1 day of 6 hours. Rules 30 and 31 continue to provide that the court must grant leave to take more depositions "to the extent consistent with Rule 26(b)(1) and (2)."

The presumptive number of Rule 33 interrogatories under the proposed amendment is reduced to 15. Rule 36 requests to admit under the proposed rule would have a presumptive limit of 25, but the rule would expressly exempt requests to admit the genuineness of documents. After due consideration, a proposal to limit Rule 34 requests to produce was rejected because of a concern that a limit might simply prompt blunderbuss requests.

*Rule 34: Objections and Responses*: Discovery burdens can be pushed out of proportion to the reasonable needs of a case by those asked to respond, not only those who make requests. The proposed amendments to Rule 34 address objections and actual production by adding several specific requirements.

Objections are addressed in two ways. First, Rule 34(b)(2)(B) would require that the grounds for objecting to a request be stated with specificity. Second, Rule 34(b)(2)(C) would require that an objection "state whether any responsive materials are being withheld on the basis of that objection." This provision responds to the common complaint that Rule 34 responses often begin with a "laundry list" of objections, then produce volumes of materials, and finally conclude that the production is made subject to the objections. The requesting party is left uncertain whether anything actually has been withheld.

Actual production is addressed by new language in Rule 34(b)(2)(B) and a corresponding addition to Rule 37(a)(3)(B)(iv). Present Rule 34 recognizes a distinction between permitting inspection of documents, ESI, or tangible things, and actually producing copies. However, if a party elects to produce materials rather than permit inspection, the current rule does not indicate when such production is required to be made. The new provision would direct that a party electing to produce state that copies will be produced, and directs that production be completed no later than the time for inspection stated in the request or a later reasonable time stated in the response. Rule 37 is further amended by adding authority to move for an order to compel production if "a party fails to produce documents."

### Enhancing Cooperation

Reasonable cooperation among adversaries is vitally important to successful use of the resources provided by the Civil Rules. Participants at the Duke Conference regularly pointed to the costs imposed by excessive adversarial behavior and wished for some rule that would enhance cooperation.

*Proposed Addition to Rule 1*: The advisory committee determined that proposals to mandate cooperation would be problematic. Instead, it settled on a more modest proposal – an addition to Rule 1. The parties are made to share responsibility along with the court for achieving the high aspirations expressed in Rule 1: "[T]hese rules should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding."

### Standing Committee Discussion of Proposed Duke Conference Amendments

Following the presentation of Judge Campbell and the advisory committee reporters, Judge Sutton, echoed by every other Standing Committee member who spoke, thanked them, Judge Koeltl, the members of the Duke Conference subcommittee and the full Civil Rules Advisory Committee for the countless hours of painstaking deliberation and work reflected in the careful crafting of these proposals. Professor Cooper then offered to entertain any

questions from the Standing Committee concerning all elements of the Duke Conference amendments package.

One member expressed curiosity about the reasons for a small list of what he suspected were "unnecessary tweaks" in the current rules, which could distract those submitting comments and others from the truly significant and major positive changes to the civil litigation process made by other parts of the Duke Conference amendments package. He commented on his list of tweaks as follows.

He first expressed substantial skepticism as to the wisdom of changing the current text of Rule 1 to emphasize the duty of parties to cooperate. He thought little practical impact would be achieved. Rule 1 as written, he believed, has achieved a certain talismanic quality with the passage of time. Tinkering with its aspirational language seemed to him perilously close to the committee simply talking to itself.

As to the proposals' attempt to limit discovery by refining the definition of its permissible scope, he found that unlikely to succeed. He recalled the various efforts to redefine the scope of discovery over the years first to broaden it, and then later to narrow it. The sequence reminded him of Karl Marx's observations about history repeating itself first as tragedy and then as farce. He thought that the current proposal effectively brought us back to the most constricted definition of the permissible scope of discovery. In his view, all the various changes over time resulted in less practical impact on cases than any of their authors had expected. For the same reasons, he did not think this tweak of accepted discovery scripture would achieve very much, but did not oppose its publication.

Pursuing his list, he agreed with the change of the length of a deposition day from 7 hours to 6 if that had proven to be a more reasonable definition of a deposition day.

Concerning the proposed changes to Rule 16, he found the emphasis on face-to-face or simultaneous communication in a Rule 16 conference to be a distracting and almost counterproductive change. His practical experience as a judge in a far flung, heavy caseload district was that the achievement of simultaneous communication by a judge and opposing counsel was a "big deal, highly time-consuming, and unnecessary in very many cases." He acknowledged that counsel for most parties would love to "shmooze" with the judge, but have no real need to do so. He predicted that the change would just lead to the widespread delegation of discovery issues to magistrate judges.

Judge Campbell responded to several of the foregoing points. First, he observed that there was broad consensus of his committee that increased cooperation by counsel on discovery matters would in fact be helpful. However, any attempt to make it mandatory in the rules would likely just enhance satellite ligation on the issue. The purpose of the Rule 1 change was to emphasize that the duty of cooperation applied to the parties and not solely to the judge. It would also give the Federal Judicial Center ("FJC") a hook on which to hang their instruction to judges about cooperation as an element of best practices in case

management.

There was an even broader consensus on the efficacy of simultaneous communication in Rule 16(f) conferences as a case management tool. A spur to early case involvement by judges was widely thought to be central to speeding things up. Early exposure by the parties to the judge tends to eliminate a lot of collateral motion practice and frivolous delay. Once counsel get a sense of how a judge is likely to rule on a given topic, a lot of delay-causing tactics are simply never tried.

Judge Campbell said he has a 15- or 20-minute Rule 16 scheduling conference in every civil case. He also requires a joint telephone call before the filing of any written discovery motion. Professor Cooper added that there was initial committee sentiment to make a Rule 16 conference mandatory. However, after further examination and the expression of opinion by other judges, the advisory committee realized that in some cases the Rule 26(f) report shows that a Rule 16 conference really is not necessary.

Judge Sutton observed that all of these points were likely to provoke many comments upon publication. The initially skeptical member of the Standing Committee also conceded that he had misunderstood that a Rule 16 conference would simply be encouraged, but not mandatory under the proposed amendment. However, he stressed his thought that the advisory committee was doing a lot. For that very reason, it should want public comments only on the consequential and important changes. The proposed changes to Rule 1 and to the definition of the permissible scope of discovery did not, he thought, come close to the hurdle or threshold of importance for a rule change and thus presented a significant risk of merely distracting people from a focus on the important changes.

Another member praised the package, found no harm in publication of the proposed change to Rule 1, and found the text of the proposed Rule 16 clear enough that a Rule 16 conference was discretionary as opposed to mandatory. Judge Campbell stressed again that proposed Rule 16(b) makes clear that a Rule 26(f) report OR a Rule 16 conference meets the requirements of the proposed rules.

Another participant observed that the package added up to enshrining in the rules a series of practices that a judge may adopt, but doesn't have to. He thought a better approach to these discovery issues might well be an educational strategy implemented by the FJC as opposed to a strategy that relied on these permissive but not mandatory proposed changes in discovery rules.

The Department of Justice representative said that the Department shared virtually all of the concerns raised by the skeptics, but was doing its best to arrive at a timely position on the merits of the proposed changes. In the meantime, it supported publication of the proposed changes and thought the public comments would likely be illuminating and helpful. The representative observed that certain types of litigation by the Department, such as those relating to "pattern and practice," require full discovery, as well as initial time limits both

long enough and sufficiently flexible for the government to get adequate discovery in some of its cases.

A final comment was that the package overall was an "amazing job." This member observed that the committee note should include the rationale for cutting the number of depositions from 10 to 5 and questioned why the proposal contained no limit on requests for production. On the latter point, Judge Campbell responded that the advisory committee's sentiment was that the most useful discovery tool in many cases was a set of targeted production requests under Rule 34. The advisory committee thought that a limit on them might simply provoke blunderbuss production requests. When pressed whether some limit on Rule 34 requests would not help, Judge Campbell replied that in his court he did set a presumptive limit of 25.

Judge Sutton expressed his own concerns about the proposed change to Rule 1. However, he thought it would be anomalous to subtract from publication the only proposed remedial change that addressed one of the three major prongs of concerns expressed at the Duke Conference – cooperation by counsel.

After Judge Campbell expressed agreement with those who thought that an FJC education effort was also important, Judge Sutton called for a vote on publication of the proposed amendments to the rules relating to discovery. Publication of the package of Duke Conference amendments received unanimous support from the Standing Committee with the exception of three members who dissented from the decision to publish the proposed change to Rule 1.

**Action: The Standing Committee, by voice vote, approved publication of the proposed amendments to Rules 1, 4, 16, 26, 30, 31, 33, 34, 36, and 37, with three members objecting to the proposed amendment to Rule 1.**

B.        Proposed Action: Publication of Revised Rule 37(e)

The Duke Conference also addressed the need to focus on the issues of preservation requirements and sanctions with a particular emphasis on electronic discovery.

In January 2013, the Standing Committee preliminarily approved proposed amendments to Rule 37(e) for publication in August 2013, with the understanding that the advisory committee would present at the June 2013 meeting a revised proposal for publication that addressed concerns expressed in January.

The fundamental thrust of the proposal presented for publication remains as presented during the Standing Committee's January 2103 meeting – to amend the rule to address the overly broad preservation many litigants and potential litigants believe they have to undertake to ensure they will not later face sanctions. The proposal grew out of the suggestion made by a panel at the 2010 Duke Conference that the advisory committee

attempt to adopt rule amendments to address preservation and sanctions. The Discovery Subcommittee set to work on developing amendments soon thereafter. The advisory committee hosted a mini-conference in September 2011 to evaluate the various proposed approaches the subcommittee had identified. From that point, the subcommittee refined the approach that was first presented to the Standing Committee in January 2013.

The proposed amendment focuses on sanctions rather than attempting directly to regulate the details of preservation. But it provides guidance for a court by recognizing that a party that adopts reasonable and proportionate preservation measures in anticipation of litigation should not be subject to sanctions. In addition, the amendment provides a uniform national standard for culpability findings to support the imposition of sanctions. Except in exceptional cases in which a party's actions irreparably deprive another party of any meaningful opportunity to present or defend against the claims in the litigation, sanctions may be imposed only on a finding that the party acted willfully or in bad faith and that the conduct caused substantial prejudice. The amendment rejects the view adopted in some cases, such as *Residential Funding Corp. v. DeGeorge Finan. Corp.*, 306 F.3d 99 (2d Cir. 2002), that permits sanctions for negligence in failing to meet preservation obligations.

Judge Campbell gave a short explanation of how the concerns expressed at the January 2013 meeting had been addressed by tweaks in the rule or note language, and also reviewed the five questions specifically posed in the request for public comment. Slight changes in the rule and note text were thought necessary to make clear that a court could order curative measures beyond merely orders to a party to remedy the failure to preserve discoverable information. Similarly, changing the rule text to focus on "the party's actions" rather than simply "the party's failure" would operate to prevent the imposition of sanctions in the absence of willfulness or bad faith only if "the party's actions" as opposed to an "act of God" deprived the opponent of a meaningful opportunity to litigate the case.

Significant efforts were made to refine the rule's attempt to preserve a line of cases that allow the imposition of sanctions in cases of failure to preserve, not involving bad faith or willfulness, where a party's actions "irreparably deprive a party of any meaningful opportunity to present or defend against claims in the litigation." To address a concern that this provision should not apply to the deprivation of opportunity to litigate a minor claim in the case, the advisory committee had tweaked the text and added language to the note that explains that the provision requires an impact on the overall case. The advisory committee also recognized the concern that this provision could swallow the rule's limits on sanctions, but continued to think it necessary to avoid overruling a substantial body of case law. It was thought that public comment would assist in pointing out the need for any additional revisions. Other concerns expressed in January about whether the proposed rule could be construed as relating to sanctions for attorney conduct or as displacing other laws relating to preservation requirements outside the discovery context were eliminated by appropriate revisions in the committee note.

Members of the advisory committee believed that the coverage of the proposed new

Rule 37(e) was coextensive with that provided under the prior version and therefore elimination of the prior version was warranted.

The questions for public comment are:

1.    Should the rule be limited to sanctions for electronically stored information?
2.    Should Rule 37(e)(1)(B)(ii) be retained in the rule?
3.    Should the provisions of the current Rule 37(e) be retained in the rule?
4.    Should there be an additional definition of "substantial prejudice" under Rules 37(e)(1)(B)(i)?  If so, what should be included in that definition?
5.    Should there be an additional definition of willfulness or bad faith under Rule 37(e)(1)(B)(i)?

### _Standing Committee Discussion of Proposed Amendments to Rule 37(e)_

There was a short committee discussion concerning Rule 37(e).  It was observed that electronic discovery is rapidly becoming the most burdensome aspect of discovery and therefore may provoke the most comment.

Judge Campbell answered questions and elaborated on the proposal.  He stressed that one major goal of the amendments to Rule 37(e) was to distinguish between the negligent and intentional loss of evidence.  He also explained that an example of a critical evidentiary loss is the loss of the instrumentality causing injury before the defendant can examine it, and an example of a curative measure would be requiring the restoration of back-up tapes in the case of a loss of evidence.

A Standing Committee member expressed his disappointment that specific safe harbors were not a part of the amendments package.  He said that the ability to preserve something that should have been discoverable in the context of a lawsuit was virtually impossible in a large organization.  He thought that was particularly true with respect to the ever expanding social media.  He asked if drafting some specific safe harbors, particularly for large organizations, should be attempted.

Judge Campbell replied that his committee has tried to address some of these concerns by strengthening the emphasis on the relevance requirements and by adding substantial prejudice as a prerequisite to triggering sanctions for the loss or absence of evidence.  The attempts at a "safe harbor" provision ran into a roadblock of serious dimensions.  No one has any idea what ESI will look like 5-10 years from now.

**Action:  The Standing Committee, by voice vote without objection, approved publication of the proposed amendments to Rule 37(e), as revised after the January 2013 meeting.**

### C.    Proposed Action:  Publication of Proposals to Abrogate Rule 84, Amend Rule 4(d)(1)(D), and Retain Current Forms 4 and 5 as a Part of Rule 4

Judge Campbell presented the recommendation that the Standing Committee approve the publication for comment of proposals that would abrogate Rule 84 and the Official Forms, and amend Rule 4(d)(1)(D) to incorporate present Forms 5 and 6 as official Rule 4 Forms.

A Rule 84 Subcommittee was formed to study Rule 84 and Rule 84 forms.  The subcommittee found that these forms are used very infrequently and there is little indication that they often provide meaningful help to pro se litigants.

In addition, there is an increasing tension between the pleading forms in Rule 84 and emerging pleading standards.  The pleading forms were adopted in 1938 as an important means of educating the bench and bar on the dramatic change in pleading standards effected by Rule 8(a)(2).  They – and all the other forms – were elevated in 1948 from illustrations to a status that "suffice[s] under these rules."  The range of topics covered by the pleading forms omits many of the categories of actions that comprise the bulk of today's federal docket.  Indeed some of the forms are now inadequate, particularly the Form 18 complaint for patent infringement.  Attempting to modernize the existing forms, and perhaps to create new forms to address such claims as those arising under the antitrust laws (*Twombly*) or implicating official immunity (*Iqbal*), would be a time-consuming undertaking.  Such an undertaking might be warranted if in recent years the pleading forms had provided meaningful guidance to the bar in formulating complaints.  However, the subcommittee's work has suggested that few, if any, lawyers consult the forms when drafting complaints.  They either use their own forms, or refer to other sources, such as forms drafted by the Administrative Office's working group on forms.

Two forms require special consideration.  Rule 4(d)(1)(D) requires that a request to waive service of process be made by Form 5.  The Form 6 waiver of service of summons is not required, but is closely tied to Form 5.  The advisory committee has concluded that the best course is to abrogate Rule 84, but preserve Forms 5 and 6 by amending Rule 4(d)(1)(D) to incorporate them recast as Rule 4 Forms attached directly to Rule 4.

#### *Standing Committee Discussion of Proposed Abrogation of Rule 84 and Amendment to Rule 4*

The Standing Committee's discussion was short.  The current Rule 84 forms have become an obsolete appendage.  The discussion of pleading standards in *Twombly* and *Iqbal* cases is simply illustrative of the many potential difficulties generated by the presence of obsolete forms in the Civil Rules.  One member thought those cases should be specifically mentioned in any advisory committee note discussing the abrogation of Rule 84 and its forms.  However, the prevailing view of other members and the reporters was that the Standing Committee should adhere to its practice of not taking a position on particular cases.

A final observation was that unless the Civil Rules Advisory Committee was prepared to undertake a thorough review of all of the civil forms, they should be abolished. It was further observed that the AO forms committee was a more than satisfactory substitute.

**Action: The Standing Committee, by voice vote without objection, approved publication of the proposed amendments to Rules 84 and 4.**

## INFORMATION ITEMS

Judge Campbell agreed with Judge Sutton that the items contained in the information section of the Civil Rules Advisory Committee's report could be read rather than reviewed at this meeting.

## REPORT OF THE ADVISORY COMMITTEE ON EVIDENCE RULES

Chief Judge Sidney A. Fitzwater, assisted by the advisory committee's reporter, Professor Daniel J. Capra, presented the report of the Evidence Rules Committee. The advisory committee sought final Standing Committee approval and transmittal to the Judicial Conference of the United States of four proposals: (1) an amendment to Rule 801(d)(1)(B) – the hearsay exemption for certain prior consistent statements – to provide that prior consistent statements are admissible under the hearsay exemption whenever they would otherwise be admissible to rehabilitate the witness's credibility; and (2) amendments to Rules 803(6)-(8) – the hearsay exceptions for business records, absence of business records, and public records – to eliminate an ambiguity uncovered during the restyling project and to clarify that the opponent has the burden of showing that the proffered record is untrustworthy.

## ACTION ITEMS

**A.     Proposed Action: Transmission to the Judicial Conference of Proposed Amendments to Rule 801(d)(1)(B)**

The advisory committee proposed that Rule 801(d)(1)(B) be amended to provide that prior consistent statements are admissible under the hearsay exemption whenever they would otherwise be admissible to rehabilitate the witness's credibility. The amendment is intended to eliminate confusing jury instructions on the permissible use of prior consistent statements. Judge Fitzwater emphasized that this amendment would preserve the rule of *Tome v. United States*, 513 U.S. 150 (1995). Under that case, a prior consistent statement is not hearsay only if it was made prior to the time when the motive to fabricate arose.

A member of the Standing Committee observed that if a witness was in court and available to be cross-examined, there seemed little reason to exclude prior consistent statements on any basis. The advisory committee's reporter observed that this current

amendment represented a small step in that direction.

    **Action:** **The Standing Committee, by voice vote without objection, approved the proposed amendments to Rule 801(d)(1)(B) for transmission to the Judicial Conference for its approval.**

    **B.**    **Proposed Action: Transmission to the Judicial Conference of Proposed Amendments to Rules 803(6)-(8) (Hearsay Exceptions for Business Records, Absence of Business Records, and Public Records) – Burden of Proof As To Trustworthiness**

    The advisory committee proposed that Rules 803(6)–(8) be amended to address an ambiguity uncovered during restyling, but left unaddressed. Subsequent restyling efforts in Texas revealed the ambiguity could be misinterpreted as placing the burden of proof on a proponent of a proffered record to show that it was trustworthy.

    The proposed amendments clarify that the *opponent* has the burden of showing that the proffered record is untrustworthy. The reasons espoused by the advisory committee for the amendments are: first, to resolve a conflict in the case law by providing uniform rules; second, to clarify a possible ambiguity in the rules as originally adopted and as restyled; and third, to provide a result that makes the most sense, as imposing a burden of proving trustworthiness on the proponent is unjustified given that the proponent must establish that all the other admissibility requirements of these rules are met – requirements that tend to guarantee trustworthiness in the first place.

    **Action:** **The Standing Committee, by voice vote without objection, approved the proposed amendments to Rules 803(6)-(8) for transmission to the Judicial Conference for its approval.**

## INFORMATION ITEMS

    Judge Fitzwater noted as an informational matter that the Evidence Rules Advisory Committee had received a suggestion from a judge in the 9th Circuit to consider an amendment to Rule 902 to include federally recognized Indian tribes on the list of public entities that issue self-authenticating documents. The advisory committee decided not to pursue consideration of such a rule without further guidance from the Standing Committee. It believed that other rules might well impact Indian tribes. Judge Campbell noted that this spring the 9th Circuit had reversed a case of this involving the admission of a tribal document verifying membership in a tribe on the very ground that federally recognized tribes were not included in the Rule 902 list of public entities that can issue self-authenticating documents. Judge Sutton noted that the Appellate Rules Advisory Committee had previously dealt with the ability of Indian tribes to file amicus briefs by deciding to wait for a reasonable period to see if the 9th Circuit adopted a local rule allowing the filing of such briefs. He noted that this particular issue appeared to be one involving considerations of tribal "dignity" – perhaps

an inherently more political area where the Rules Committees should move with caution. However, he placed the practical concerns raised in a case like Judge Campbell's involving self-authentication of tribal documents in a different category. There he believed that some action by the Evidence Rules Advisory Committee might be warranted.

Finally, Judge Fitzwater reminded the Standing Committee of the symposium scheduled at the University of Maine School of Law in Portland this October, which will address the intersection of the Rules of Evidence and emerging technologies. This symposium will present an opportunity to discuss the alternatives to validate electronic signatures currently presented in the proposed amendments to the Bankruptcy Rules.

## REPORT OF THE ADVISORY COMMITTEE ON CRIMINAL RULES

Judge Reena Raggi, assisted by the advisory committee's two reporters, Professor Sara Sun Beale and Professor Nancy King, presented the report of the Criminal Rules Advisory Committee. In summary, the report presented three items for action by the Standing Committee:

1.      Approval to transmit to the Judicial Conference a proposed amendment to Rule 12 (pretrial motions), and a conforming amendment to Rule 34;

2.      Approval to transmit to the Judicial Conference proposed amendments to Rules 5 and 58 (adding consular notification); and

3.      Approval to transmit to the Judicial Conference a technical and conforming amendment to Rule 6 (the Grand Jury).

These recommendations were reviewed at the Standing Committee meeting as follows.

## ACTION ITEMS

### A.      Proposed Action: Transmission to the Judicial Conference of Proposed Amendments to Rules 12 (Pretrial Motions) and 34

These proposed amendments have their origin in a 2006 request from the Department of Justice that "failure to state an offense" be deleted from current Rule 12(b)(3) as a defect that can be raised "at any time" in light of the Supreme Court's decision in *United States v. Cotton*, 535 U.S. 625, 629-31 (2002) (holding that "failure to state an offense" is not a jurisdictional defect).

The advisory committee's efforts to craft such an amendment have sparked extensive and protracted discussions over time within the advisory committee and between the advisory

committee and the Standing Committee regarding various aspects of Rule 12. This interplay has resulted in three separate amendment proposals being presented to the Standing Committee, the third of which was approved for publication in August 2011. In response to the thoughtful public comments received and on its own further review, the advisory committee further revised its third proposal for amendment to Rule 12, but did not believe the revisions require republication. The submitted proposals had the unanimous approval of the advisory committee.

The substantive features of the proposed amendment to Rule 12 (which also restyles this rule) can be summarized as follows:

(1)     By contrast to current Rule 12(b)(1) which now starts with an unexplained cross-reference to Rule 47 (discussing the form, content, and timing of motions), the proposed revised Rule 12(b)(1) would achieve greater clarity by stating the rule's general purpose – to address the filing of pretrial motions (relocated from current Rule 12(b)) – before cross-referencing Rule 47.

(2)     Proposed Rule 12(b)(2) identifies motions that <u>may</u> be made at any time separately from Rule 12(b)(3), which identifies motions that <u>must</u> be made before trial. This provides greater clarity – visually as well as textually. The current Rule 12(b)(3) identifies motions that may be made at any time only in an ellipsis exception to otherwise mandatory motions alleging defects in the indictment or information.

(3)     Proposed Rule 12(b)(2) recognizes lack of jurisdiction as the only motion that may be made "at any time while the case is pending," thus implementing the Justice Department's request not to accord that status to a motion raising the failure to state an offense.

(4)     Proposed Rule 12(b)(3) provides clearer notice with respect to motions that must be made before trial.

(a)     At the start, it clarifies that its motion mandate is dependent on two conditions:

i.      the basis for the motion must be reasonably available before trial, and
ii.     the motion must be capable of resolution before trial.

This ensures that motions are raised pretrial when warranted while safeguarding against a rigid filing requirement that could be unfair to defendants.

(b)     Proposed Rule 12(b)(3)(A)-(B) provides more specific notice of the motions that must be filed pretrial if the just-referenced twin conditions are satisfied. While the general categories of "defect[s] in instituting the prosecution" (current Rule 12(b)(3)(A))

and "defect[s] in the indictment or information (current Rule 12(b)(3)(B)) are retained, they are now clarified with illustrative non-exhaustive lists.

Proposed Rule 12(b)(3)(A) thus lists as defects in instituting the prosecution that must be raised before trial:

      i.      improper venue,
      ii.     preindictment delay,
      iii.    violation of the constitutional right to a speedy trial,
      iv.    selective or vindictive prosecution, and
      v.     error in grand jury or preliminary hearing proceedings.

Proposed Rule 12(b)(3)(B) lists as defects in the indictment or information that must be raised before trial:

      i.      duplicity,
      ii.     multiplicity,
      iii.    lack of specificity,
      iv.    improper joinder, and
      v.     failure to state an offense.

The inclusion of failure to state an offense in Rule 12(b)(3)(B) accomplishes the amendment originally sought by the Department of Justice.

The proposed rule does not include double jeopardy or statute of limitations challenges among required pretrial motions in light of concerns raised in public comments. The advisory committee believes that subjecting such motions to a rule mandate is premature, requiring further consideration as to the appropriate treatment of untimely filings.

(5)     Proposed Rule 12(b)(3)(C)-(E) duplicates the current rule in continuing to require that motions to suppress evidence, to sever charges or defendants, and to seek Rule 16 discovery must be made before trial.

(6)     Proposed Rule 12(c) identifies both the deadlines for filing motions and the consequences of missing those deadlines. Grouping these two subjects together in one section is a visual improvement over the current rule, which discusses deadlines in (c) and consequences in later provision (e). More specifically,

      (a)     Proposed Rule 12(c)(1) tracks the current rule's language in recognizing the discretion afforded district courts to set motion deadlines. Nevertheless, it now adds a default deadline – the start of trial – if the district court fails to set a motion deadline. This affords defendants the maximum time to make mandatory pretrial motions, but it forecloses an argument that, because the district court did not

set a motion deadline, a defendant need not comply with the rule's mandate to file certain motions before trial.

(b)     Proposed Rule 12(c)(2) explicitly acknowledges district court discretion to extend or reset motion deadlines at any time before trial. This discretion, which is implicit in the current rule, permits district courts to entertain late-filed motions at any time before jeopardy attaches as warranted. It also allows district courts to avoid subsequent claims that defense counsel was constitutionally ineffective for failing to meet a filing deadline.

(c)     Proposed Rule 12(c)(3)(A) retains current Rule 12(e)'s standard of "good cause" for review of untimely motions (with the exception of failure to state an offense discussed separately in submitted Rule 12(c)(3)(B)). At the same time, the submitted rule does not employ the word "waiver" as in the current rule because that term, in other contexts, is understood to mean a knowing and affirmative surrender of rights.

With respect to "good cause," the proposed committee note indicates that courts have generally construed those words, as used in current Rule 12(e), to require a showing of both cause and prejudice before an untimely claim may be considered. The published proposed amendment substituted cause and prejudice for good cause, hoping to achieve greater clarity, but after reviewing public comments and further considering the issue, the advisory committee decided to retain the term "good cause," to avoid both any suggestion of a change from the current standard and arguments based on some constructions of "cause and prejudice" in other contexts, notably, the miscarriage of justice exception to this standard in habeas corpus jurisprudence.

The amended rule, like the current one, continues to make no reference to Rule 52 (providing for plain error review of defaulted claims), thereby permitting the courts of appeals to decide if and how to apply Rules 12 and 52 when arguments that should have been the subject of required Rule 12(b)(3) motions are raised for the first time on appeal.

(d)     Insofar as the submitted amendment, at Rule 12(b)(3)(B), would now require a defendant to raise a claim of failure to state an offense before trial, the proposed Rule 12(c)(3)(B) provides that the standard of review when such a claim is untimely is not "good cause" (*i.e.*, cause and prejudice) but simply "prejudice." The advisory committee

Cited in In re A v. ... mant... search...ated ...
account contro...ed ...ta... Decision ..6/14...
13N ...ag... 6/14 Decided 4/2/14
This ... document is searchable ...
Further reproduction prohibited without permission.

thought that this standard provides a sufficient incentive for a defendant to raise such a claim before trial, while also recognizing the fundamental nature of this particular claim and closely approximating current law, which permits review without a showing of "cause."

The committee note to accompany the proposed amendment to Rule 12 has been revised to make clear that the amendment is not intended to disturb the existing broad discretion of the trial judge to set, reset, or decline to reset deadlines for pretrial motions.

A conforming amendment to Rule 34 that omits language requiring a court to arrest judgment if "the indictment or information does not charge an offense" is also presented for publication.

### Standing Committee Discussion of Proposed Amendments to Rule 12

Judge Raggi noted that the default deadline for filing the mandatory pretrial motions specified by Rule 12 would be at the start of trial when the jury is empaneled and jeopardy attaches when the jury is sworn.

Deputy Attorney General James Cole acknowledged that the Department of Justice originally prompted a review of this rule. He expressed the Department's gratitude to the Criminal Rules Advisory Committee and the Standing Committee for their years of hard work. He thought this proposed amendment would provide greater clarity regarding mandatory pretrial motions and therefore strongly supported it.

Another member wondered whether any defendant realistically would ever have "prejudice" resulting in the grant of relief after failing to file a mandatory pretrial motion. He discounted speculation that defense attorneys might try to "game" the system by failing to raise a defective indictment (*e.g.*, missing an element of the crime) until after jeopardy had attached. He pointed out that the attorney would risk the defect being noticed by the judge, and it could be cured by a proper instruction to the jury. Another member responded that a "prejudice" issue would likely arise on a post-trial motion only after jeopardy had attached and a defendant had been convicted. He predicted that district and appellate courts might arrive as to differing conclusions on what amounted to "prejudice" in the context of a new Rule 12.

A final concern was raised about how information protected by grand jury secrecy under Rule 6(e) might be raised in the context of a Rule 12 motion and how such information would relate to the mandatory filing and prejudice issues. The response of the reporters was that such information would be governed by the "reasonably available" standard of the rule. If such information was not "reasonably available" pretrial and was sufficiently important to the motion, a court would have discretion to hear the motion at issue at a later time.

Judge Raggi asked that former advisory committee chair Judge Richard Tallman and

Cited in: A variant to Search email. as of 11/21/14 maintained by Microsoft. 2013 May 30 Decided 4/25/14. This document is protected by copyright. Further reproduction is prohibited without permission.

current subcommittee chair Judge Morrison England be commended for their enormously important contributions to producing this final version of a proposed comprehensive amendment to Rule 12. Judge Sutton added his personal inclusion of Judge Raggi and Professors Sara Sun Beale and Nancy King to the list of those whom the Standing Committee should commend for their outstanding efforts. The members of the Standing Committee unanimously agreed.

Finally, Judge Sutton expressed his personal thanks to the chairs and members of the Criminal Rules Advisory Committee, whose efforts over the years had culminated in such a worthwhile compromise resolving the major prior difficulties and stumbling blocks to amending the rule.

**Action: The Standing Committee, by voice vote without objection, approved the proposed amendments to Rules 12 and 34 for transmission to the Judicial Conference for its approval.**

**B.      Proposed Action: Transmission to the Judicial Conference of Proposed Amendments to Rules 5 and 58 (Consular Notification)**

The advisory committee also recommended approval of its second proposal to amend Rules 5 and 58 to provide for advice concerning consular notification, as amended following publication.

In 2010, the Justice Department, at the urging of the State Department, proposed amendments to Rules 5 and 58, the rules specifying procedures for initial proceedings in felony and misdemeanor cases respectively, to provide notice to defendants of consular notification obligations arising under Article 36 of the multilateral Vienna Convention on Consular Relations ("Vienna Convention"), as well as various bilateral treaties.

The first proposed amendments responding to this request were published for public comment and subsequently approved by the advisory committee, the Standing Committee, and the Judicial Conference. In April 2012, however, the Supreme Court returned the amendments to the advisory committee for further consideration.

At its April 2012 meeting, the advisory committee identified two possible concerns with the returned proposal: (1) perceived intrusion on executive discretion in conducting foreign affairs, both generally and specifically as it pertains to deciding how, or even if, to carry out treaty obligations; and (2) perceived conferral on persons other than the sovereign signatories to treaties – specifically, criminal defendants – of rights to demand compliance

with treaty provisions.[1]

The amendments were redrafted to respond to these concerns. The redrafted amendments were carefully worded to provide notice without any attending suggestion of individual rights or remedies. Indeed, the committee note emphasizes that the proposed rules do not themselves create any such rights or remedies. The Standing Committee approved publication of the redrafted amendments in June 2012.

Upon review of received public comments, as well as its own further consideration, the advisory committee made the following changes to the proposed amendments, none of which requires further publication.

The introductory phrase of submitted Rules 5(d)(1) and 58(b)(2) now provides for the specified advice to be given to all defendants, in contrast to the published rule, which had provided for consular notification to be given "if the defendant is held in custody and is not a United States citizen."

The change was made to avoid any implication that the arraigning judicial officer was required to ascertain a defendant's citizenship, an inquiry that could involve self-incrimination. Providing consular notice to all defendants without such an inquiry parallels Rule 11(b)(1)(O) (which the Supreme Court has now transmitted to Congress), which provides for all defendants to be given notice at the plea proceeding of possible immigration consequences without specific inquiry into their nationality or status in the United States.

As for the "in custody" requirement, interested parties disagreed as to when a defendant was "in custody" or "detained." Providing notice to all defendants at their initial appearance not only avoids the need to resolve this question, it avoids the need to consider a further notice requirement when defendants initially admitted to bail are subsequently remanded. Thus, while the advisory committee is mindful of the need to avoid adding unnecessary notice requirements to rules governing initial appearances, sentences, etc., it concluded, as now stated in the proposed committee note, that "the most effective and efficient method of conveying this [consular notification] information is to provide it to every defendant, without attempting to determine the defendant's citizenship."

---

[1]     Insofar as Article 36 of the Vienna Convention provides for signatory nations to advise detained foreign nationals of other signatory nations of an opportunity to contact their home country's consulate, litigation has not yet resolved whether such a provision gives rise to any individual rights or remedies. *See Sanchez-Llamas v. Oregon,* 548 U.S. 331 (2006) (holding that suppression of evidence was not appropriate remedy for failure to advise foreign national of ability to have consulate notified of arrest and detention regardless of whether Vienna Convention conferred any individual rights). Thus, the advisory committee concluded that the remand of the amendment proposal from the Supreme Court could be understood to suggest that the rule may have gotten ahead of settled law on this matter.

*Standing Committee Discussion of the Proposed Amendments to Rules 5 and 58*

Deputy Attorney General Cole again commended Judge Raggi and her committee for its excellent work in assisting to conform the Criminal Rules with the treaty obligations of the United States.

Another member inquired whether judges would simply read the materials specified in the rule as an advisory notice to the defendant or whether the judge's reading of the notice was intended to provoke a response from the defendant. There was unanimous agreement with the position of the advisory committee that all the amended rule proposals sought to accomplish was simply to give the notification required by the treaty to the defendant of a foreign nation.

Deputy Attorney General Cole observed that treaty violations occur mostly in state court. The amended Rules 5 and 58 thus provide a good model for the states. Professor Beale observed that 47 percent of defendants in the federal courts are not U.S. citizens. This rule provides the basis for the court to make a good record of the notification it has provided.

**Action:   The Standing Committee, by voice vote without objection, approved the proposed amendments to Rules 5 and 58, as amended following publication, for transmission to the Judicial Conference for its approval.**

C.      **Proposed Action:  Transmission to the Judicial Conference of Proposed Technical and Conforming Amendment to Rule 6 (The Grand Jury)**

The Office of the Law Revision Counsel informed the Administrative Office of a reorganization of chapter 15 of Title 50 of the United States Code. This revision has made incorrect a current statutory reference in Rule 6(e)(3)(D) to the code section defining counter-intelligence. The proposed amendment would simply substitute a reference to the correct section of Title 50 for the current one that is now obsolete.

**Action: The Standing Committee, by voice vote without objection, approved the proposed amendment to Rule 6 for transmission to the Judicial Conference for its approval.**

## INFORMATION ITEM

The Department of Justice has urged amendment of Criminal Rule 4 to facilitate service of process on foreign corporations. It submits that the current rule impedes prosecution of foreign corporations that have committed offenses punishable in the United States, but that cannot be served for lack of a last known address or principal place of business in the United States. It argues that this has created a "growing class of organizations, particularly foreign corporations" that have gained "an undue advantage" over the government relating to the initiation of criminal proceedings. The advisory committee

<u>**REPORT OF THE ADVISORY COMMITTEE ON APPELLATE RULES**</u>

Judge Steven M. Colloton, assisted by the advisory committee's reporter, Professor Catherine T. Struve (by telephone), presented the report of the Appellate Rules Advisory Committee. In conjunction with the Bankruptcy Rules Advisory Committee's proposal to amend Part VIII of the Bankruptcy Rules – the rules that govern appeals from bankruptcy court to a district court or bankruptcy appellate panel ("BAP") – the Appellate Rules Advisory Committee sought final approval of a proposed amendment to Appellate Rule 6 (concerning appeals to the court of appeals in a bankruptcy case).

**ACTION ITEM**

**A.     Proposed Action:   Transmission to the Judicial Conference of Proposed Amendments to Appellate Rule 6**

The proposed amendment to Appellate Rule 6 would: (1) update that rule's cross-references to the Bankruptcy Part VIII Rules, (2) amend Rule 6(b)(2)(A)(ii) to remove an ambiguity dating from the 1998 restyling, (3) add a new Rule 6(c) to address permissive direct appeals from the bankruptcy court under 28 U.S.C. § 158(d)(2), and (4) revise Rule 6 to take account of the range of methods available now or in the future for dealing with the record on appeal.

Proposed Appellate Rule 6(c) would treat the record on direct appeals differently than existing Rule 6(b) treats the record on bankruptcy appeals from a district court or BAP. Rule 6(b) contains a streamlined procedure for redesignating and forwarding the record on appeal, because in the appeals covered by Rule 6(b), the appellate record already will have been compiled for purposes of the appeal to the district court or the BAP. In a direct appeal, the record generally will be compiled from scratch. The closest model for the compilation and transmission of the bankruptcy court record is the set of rules chosen by the Bankruptcy Rules Part VIII project for appeals from the bankruptcy court to the district court or the BAP. Thus, proposed Rule 6(c) incorporates the relevant Part VIII rules by reference while making some adjustments to account for the particularities of direct appeals to the court of appeals.

Both the Bankruptcy Rules Part VIII project and the project to revise Appellate Rule 6 have highlighted changes in the treatment of the record. The Appellate Rules were drafted on the assumption that the record on appeal would be available only in paper form. The proposed Part VIII Rules are drafted with a contrary presumption in mind: the default principle under those rules is that the record will be made available in electronic form. In revising Rule 6(b) and in drafting new Rule 6(c), the Appellate Rules Committee adopted language that can accommodate the various ways in which the lower-court record could be made available to the court of appeals – *e.g.*, in paper form, in electronic files that can be sent to the court of appeals, or by means of electronic links.

**Action:** **The Standing Committee, by voice vote without objection, approved the proposed amendments to Appellate Rule 6 for transmission to the Judicial Conference for its approval.**

## INFORMATION ITEMS

Two other matters were briefly discussed during Judge Colloton's presentation. First, a Standing Committee member inquired whether the conversion of page limits to word limits in appellate briefs may not have resulted in the filing of longer appellate briefs. Judge Colloton said a review of the matter would be part of the advisory committee's broader review of other page limits for appellate filings.

Another Standing Committee member prompted a general discussion of whether appellate courts are sufficiently responsive to the need for swift adjudication of proceedings under the Hague Convention on the Civil Aspects of International Child Abduction. While appellate consideration of stay applications is usually prompt, decisions on the merits can sometimes be delayed. The discussion resulted in a preliminary suggestion that a letter from the advisory committee chair to chief judges of the circuits might be appropriate to remind them of the Supreme Court's concern about expediting these cases as expressed in the opinions in *Chafin v. Chafin*, 133 S. Ct. 1017 (2013). Judge Colloton agreed to discuss the matter with Judge Sutton, bearing in mind that letters to chief judges from the committees should be employed sparingly if they are to have the desired effect.

Other members of the Standing Committee were of the view that despite the traditional reluctance of the rules committees to endorse provisions that require the expediting of specific classes of cases, stronger measures than mere exhortation may be required.

## REPORT OF THE ADVISORY COMMITTEE ON BANKRUPTCY RULES

Judge Eugene Wedoff, assisted by the advisory committee's two reporters, Professor Elizabeth Gibson and Professor Troy McKenzie, presented the report of the Bankruptcy Rules Advisory Committee. The advisory committee sought the Standing Committee's final approval and transmission to the Judicial Conference of most of the previously published items: the revision of the Part VIII Rules and amendments to 10 other rules and 5 official forms. Because the advisory committee made significant changes after publication to one set of published forms – the means test forms – it requested that those forms be republished.

The advisory committee also requested publication for public comment of (1) the remaining group of modernized forms for use in individual-debtor bankruptcy cases, and (2) a chapter 13 plan form and implementing rule amendments.

## ACTION ITEMS

In brief, the actions sought from the Standing Committee by Judge Wedoff and his committee were as follows.

1.      Approval for transmission to the Judicial Conference of amendments to Rules 1014, 7004, 7008, 7012, 7016, 7054, 8001-8028, 9023, 9024, 9027, and 9033, and Official Forms 3A, 3B, 6I, and 6J;

2.      Approval for transmission to the Judicial Conference without publication of a conforming amendment to Official Form 23;

3.      Approval for republication in August 2013 of amendments to the means test forms – Official Forms 22A-1, 22A-2, 22B, 22C-1, and 22C-2 – along with the initial publication of Official Form 22A-1Supp; and

4.      Approval for publication in August 2013 of amendments to Rules 2002, 3002, 3007, 3012, 3015, 4003, 5005, 5009, 7001, 9006, and 9009, and Official Forms 101, 101A, 101B, 104, 105, 106Sum, 106A/B, 106C, 106D, 106E/F, 106G, 106H, 106Dec, 107, 112, 113, 119, 121, 318, 423, 427, 17A, 17B, and 17C.

Judge Wedoff first discussed the rules recommended for transmission to the Judicial Conference and the forms sought to be approved by the Judicial Conference with an effective date of December 1, 2013.

### A.      Proposed Action: Transmission to the Judicial Conference of Proposed Amendments to Rules 7008, 7012, 7016, 9027, and 9033

Amendments to Rules 7008, 7012, 7016, 9027, and 9033 are proposed in response to *Stern v. Marshall*, 131 S. Ct. 2594 (2011).  The Bankruptcy Rules follow the Judicial Code's division between core and non-core proceedings.  The current rules contemplate that a bankruptcy judge's adjudicatory authority is more limited in non-core proceedings than in core proceedings.  For example, parties are required to state whether they do or do not consent to final adjudication by the bankruptcy judge in non-core proceedings.  There is no comparable requirement for core proceedings.  *Stern*, which held that a bankruptcy judge did not have authority under Article III of the Constitution to enter final judgment in a proceeding deemed core under the Judicial Code, has introduced the possibility that such a proceeding may nevertheless lie beyond the power of a bankruptcy judge to adjudicate finally.  In other words, a proceeding could be "core" as a statutory matter but "non-core" as a constitutional matter.

The proposals would amend the Bankruptcy Rules in three respects.  First, the terms "core" and "non-core" would be removed from Rules 7008, 7012, 9027, and 9033 to avoid possible confusion in light of *Stern*.  Second, parties in all bankruptcy proceedings (including removed actions) would be required to state whether they do or do not consent to entry of final orders or judgment by the bankruptcy judge.  Third, Rule 7016, which governs pretrial

procedures, would be amended to direct bankruptcy courts to decide the proper treatment of proceedings.

> **Action:** The Standing Committee, by voice vote without objection, approved the proposed amendments to Rules 7008, 7012, 7016, 9027, and 9033 for transmission to the Judicial Conference for its approval.

B.     **Proposed Action: Transmission to the Judicial Conference of Proposed Amendments to Rules 8001-8028 (Part VIII of the Bankruptcy Rules)**

On Tuesday morning, June 4, 2013, the Standing Committee meeting opened with a presentation by Professor Elizabeth Gibson of the comprehensive set of amendments to Part VIII of the bankruptcy appellate rules. These amendments are designed with the goal of making the bankruptcy appellate rules consistent with the Federal Rules of Appellate Procedure. Professor Gibson observed that this project of conforming and restyling the bankruptcy appellate rules, which is now finally approaching conclusion, has been a lengthy one – ongoing since she first became a reporter to the Bankruptcy Rules Advisory Committee.

In summary, she noted that the proposed amendments to Rules 8001-8028 (Part VIII of the Bankruptcy Rules) constitute a comprehensive revision of the rules governing bankruptcy appeals to district courts, bankruptcy appellate panels, and with respect to some procedures, courts of appeals. This multi-year project attempted to bring the bankruptcy appellate rules into closer alignment with the Federal Rules of Appellate Procedure; to incorporate a presumption favoring the electronic transmission, filing, and service of court documents; and to adopt a clearer style. Existing rules have been reorganized and renumbered; some rules have been combined, and provisions of other rules have been moved to new locations. Much of the language of the existing rules has been restyled.

In general, the public comments reflected a positive response to the proposed revision of the Part VIII rules. Thus, the advisory committee unanimously voted to recommend them for final approval to the Standing Committee with the post-publication changes listed by Professor Gibson as follows:

*Rule 8003*. Several comments pointed out that the provision in subdivision (d) directing the clerk of the appellate court to docket an appeal "under the title of the bankruptcy court action" is unclear since "action" might refer to the overall bankruptcy case or to an adversary proceeding within the case. The advisory committee agreed that this was an instance in which the Appellate Rules' language needs to be modified for the bankruptcy context. It voted to change the wording in Rule 8003(d)(2) and the parallel provision in Rule 8004(c)(2) to "under the title of the bankruptcy case and the title of any adversary proceeding."

*Rule 8004*. The clerk of a BAP commented on Rule 8004(c)(3), which directed the dismissal of an appeal if leave to appeal is denied. She stated that appellants sometimes file a motion for leave to appeal when leave is not required and in that situation, although the

motion is denied, dismissal is not appropriate. The advisory committee voted to delete the sentence in question, which is not contained in either the current bankruptcy rule or the appellate rule from which the proposed rule is derived.

*Rule 8005*. Several comments questioned whether an election to have an appeal heard by the district court, rather than the BAP, must still be made by a statement in a separate document. At the spring meeting, the advisory committee approved for publication an amendment to the notice of appeal form, Official Form 17A, that will include a section for making an election under this rule. That form, which if approved will take effect on the same date as the rule, will clarify that the separate-document rule no longer applies.

The advisory committee agreed with one of the comments it received, which recommended that the BAP clerk notify the bankruptcy clerk if an appeal is transferred to the district court, and it voted to add a sentence to that effect in subdivision (b).

*Rule 8007*. The advisory committee agreed that the rule should be clarified to eliminate the possibility of filing a motion for a stay in the appellate court prior to the filing of a notice of appeal.

*Rule 8013*. One comment suggested that district courts be allowed to require a notice of motion in bankruptcy appeals if they otherwise follow that practice in their court. Another comment made a similar suggestion concerning proposed orders. The advisory committee agreed with these comments and added "Unless the court orders otherwise" to subdivision (a)(2)(D)(ii).

*Rule 8016*. Two comments raised questions about subdivision (f), which addressed the consequences of failing to file a brief on time. It was unclear why the provision was located in the rule governing cross-appeals, and it seemed to be inconsistent with a provision in Rule 8018. The advisory committee thought that the comments were well taken, and it voted to delete the subdivision.

*Rule 8018*. The advisory committee voted to reword the provision to clarify that dismissal of an appeal or cross-appeal can occur only upon motion of a party or on the court's own motion, after which the appellant would have an opportunity to respond.

**Action:** The Standing Committee, by voice vote without objection, approved the proposed amendments to Rules 8001-8028 (Part VIII of the Bankruptcy Rules) for transmission to the Judicial Conference for its approval.

C.      **Proposed Action: Transmission to the Judicial Conference of Proposed Amendments to Rule 1014(b)**

Rule 1014(b) governs the procedure for determining where cases will proceed if petitions are filed in different districts by, against, or regarding the same debtor or related debtors. The rule currently provides that, upon motion, the court in which the first-filed petition is pending may determine – in the interest of justice or for the convenience of the parties – the district or districts in which the cases will proceed. Except as otherwise ordered

by that court, proceedings in the cases in the other districts "shall be stayed by the courts in which they have been filed" until the first court makes its determination.

The proposed amendment both clarifies and narrows the scope of the stay provision. The current rule applies a blanket rule that all the later-filed cases are stayed while the first court makes the venue determination. The amended rule would limit the stay to situations in which the first court finds that the rule in fact applies and that a stay is needed.

**Action:   The Standing Committee, by voice vote without objection, approved the proposed amendment to Rule 1014(b) for transmission to the Judicial Conference for its approval.**

D.      **Proposed Action: Transmission to the Judicial Conference of Proposed Amendments to Rules 7004(e)**

Rule 7004(e) governs the time during which a summons is valid after its issuance in an adversary proceeding.  The current rule provides that a summons is valid so long as it is served within 14 days of its issuance.  The advisory committee sought final approval of an amendment to reduce that period from 14 days to 7 days.

**Action:   The Standing Committee, by voice vote without objection, approved the proposed amendment to Rules 7004(e), with a minor technical revision, for transmission to the Judicial Conference for its approval.**

E.      **Proposed Action:  Transmission to the Judicial Conference of Proposed Amendments to Rules 7008 and 7054**

Rules 7008(b) and 7054 would be amended to change the procedure for seeking attorney's fees in bankruptcy proceedings.   The advisory committee proposed the amendments in order to clarify and to promote uniformity in the procedures for seeking an award of attorney's fees.  Rule 7054 would be amended to include much of the substance of Civil Rule 54(d)(2).  Rule 7008(b), which currently addresses attorney's fees, would be deleted.   Just as the procedure for seeking attorney's fees in civil actions is governed exclusively by Civil Rule 54(d), Bankruptcy Rule 7054 would provide the exclusive procedure for seeking an award of attorney's fees in bankruptcy cases, unless the governing substantive law requires the fees to be proved at trial as an element of damages.

**Action:  The Standing Committee, by voice vote without objection, approved the proposed amendments to Rules 7008 and 7054 for transmission to the Judicial Conference for its approval.**

F.      **Proposed Action:  Transmission to the Judicial Conference of Proposed Amendments to Rules 9023 and 9024**

Rule 9023, which governs new trials and amendment of judgments, and Rule 9024, which governs relief from judgments or orders, would be amended to include a cross-reference to proposed Rule 8008, which governs indicative rulings.  The advisory committee

Cited in In re Award, mailed by email dated 4/25/14

20 Mag 281A Decided 03/31/14

Archived on 03/31/14

This document is protected by copyright.

Further reproduction is prohibited without permission.

proposed these amendments in order to call attention at an appropriate place in the rules to that new bankruptcy appellate rule. Rule 8008 prescribes procedures for both the bankruptcy court and the appellate court when an indicative ruling is sought. It therefore incorporates provisions of both Civil Rule 62.1 and Appellate Rule 12.1. Because a litigant filing a post-judgment motion that implicates the indicative-ruling procedure will not encounter a rule similar to Civil Rule 62.1 in either the Part VII or Part IX rules, the advisory committee decided that it would be useful to include a cross-reference to Rule 8008 in the rules governing post-judgment motions.

**Action: The Standing Committee, by voice vote without objection, approved the proposed amendments to Rules 9023 and 9024 for transmission to the Judicial Conference for its approval.**

G.      **Proposed Action: Transmission to the Judicial Conference of Proposed Amendments to Official Forms 3A, 3B, 6I, and 6J**

Official Forms 3A (Application for Individuals to Pay the Filing Fee in Installments), 3B (Application to Have the Chapter 7 Filing Fee Waived), 6I (Schedule I: Your Income), and 6J (Schedule J: Your Expenses) were selected for the initial-implementation stage of the Forms Modernization Project ("FMP") because they make no significant change in substantive content and simply replace existing forms that apply only in individual debtor cases. The restyled forms all involve the debtors' income and expenses, and they are employed by a range of users: the courts, U.S. trustees, and case trustees, for varied purposes. The publication of these forms has already provided valuable feedback on the FMP approach to form design, and, if adopted, their use will provide a helpful gauge of the effectiveness of the FMP approach. Published last August, these forms were recommended by the advisory committee, unanimously, for final approval with some post-publication changes.

**Action: The Standing Committee, by voice vote without objection, approved the proposed amendments to Official Forms 3A, 3B, 6I, and 6J, with the post-publication changes, for transmission to the Judicial Conference for its approval.**

H.      **Proposed Action: Transmission to the Judicial Conference of Proposed Amendments to Official Form 23**

The Supreme Court has approved an amendment to Rule 1007(b)(7), due to go into effect on December 1, 2013, that will relieve individual debtors of the obligation to file Official Form 23 if the provider of an instructional course concerning personal financial management directly notifies the court that the debtor has completed the course. The preface and instructions to Official Form 23 would be amended to reflect that change by stating that a debtor should file the form only if the course provider has not already notified the court of the debtor's completion of the course.

**Action: The Standing Committee, by voice vote without objection, approved the proposed amendments to Official Form 23 for transmission to the Judicial Conference for its approval without publication.**

I.    **Proposed Action:  Republication of Proposed Amendments to Official Forms 22A-1, 22A-2, 22B, 22C-1, and 22C-2, and Publication of Proposed New Official Form 22A-1Supp**

Official Forms 22A-1, 22A-2, 22B, 22C-1, and 22C-2, the restyled means-test forms for individual debtors under chapters 7, 11, and 13, were published for comment in August 2012.  Because it determined that the changes made in response to comments were of sufficient significance to require republication, the advisory committee requested that the newly revised means-test forms be published for public comment in August.  Along with the republication of Official Forms 22A-1, 22A-2, 22B, 22C-1, and 22C-2, the advisory committee requested publication of new Official Form 22A-1Supp, which was created in response to the comments.

**Action:  The Standing Committee, by voice vote without objection, approved for publication the proposed amendments to Official Forms 22A-1, 22A-2, 22B, 22C-1, and 22C-2 as revised and Form 22A-1Supp.**

J.    **Proposed Action: Publication of Rules Related to New Chapter 13 Plan Form**

For the past two years, the advisory committee has studied the creation of a national plan form for chapter 13 cases.  The twin goals of the project have been to bring more uniformity to chapter 13 practice and to simplify the review of chapter 13 plans by debtors, courts, trustees, and creditors.  These goals are consistent with the Supreme Court's decision in *United Student Aid Funds, Inc. v. Espinosa*, 130 S. Ct. 1367 (2010), which held that an order confirming a procedurally improper chapter 13 plan was nevertheless entitled to preclusive effect and that bankruptcy judges must independently review chapter 13 plans for conformity with applicable law.

The advisory committee approved a draft plan and accompanying rule amendments at its April 2013 meeting in New York.  The advisory committee voted unanimously to seek publication of the form and rule amendments related to the new chapter 13 plan.

Professor Troy McKenzie led the following discussion, which summarizes the amendments to the Bankruptcy Rules that the Standing Committee voted to publish with the chapter 13 plan form.

*Rule 2002*.  The Bankruptcy Rules describe categories of events that trigger the obligation to provide notice.  Rule 2002 currently requires 28 days' notice of the time to file objections to confirmation of a chapter 13 plan as well as of the confirmation hearing itself.  An amendment to Rule 3015(f), however, would require that objections to confirmation of a chapter 13 plan be filed at least seven days before the confirmation hearing.

The advisory committee proposed to retain the 28-day period for notice of a chapter 13 confirmation hearing, but to amend Rule 2002 in light of the new time period for

objections to confirmation in Rule 3015(f).  Thus, Rule 2002 would require 21 days' notice of the time to file objections to confirmation.

*Rule 3002*.  Rule 3002(a) would be amended to require a secured creditor, as well as an unsecured creditor, to file a proof of claim in order to have an allowed claim.  In keeping with Code § 506(d), however, the amendment also makes clear that the failure of a secured creditor to file a proof of claim does not render the creditor's lien void.  Second, Rule 3002(c) would be amended to change the calculation of the claims bar date.  Rather than 90 days from the meeting of creditors under Code § 341, the bar date would be 60 days after the petition is filed in a chapter 13 case.  The amended rule includes a provision for an extension of the bar date when the debtor has failed to provide in a timely manner a list of creditors' names and addresses for notice purposes.  In response to concerns raised during a mini-conference held in Chicago, the amended rule would also include a longer bar date for certain supporting documents required for mortgage claims on a debtor's principal residence.  With those claims, the mortgagee would be required to file a proof of claim within the 60-day period but would have an additional 60 days to file a supplement with the supporting documents.

*Rule 3007*.  Objections to claims are governed by Rule 3007.  Because the plan form permits some determinations regarding claims to be made through the plan, the advisory committee proposed an amendment to Rule 3007.  The amended rule would provide an exception to the need to file a claim objection if a determination with respect to that claim is made in connection with plan confirmation under proposed Rule 3012.

*Rule 3012*.  The proposed amendment would provide that the amount of a secured claim under Code § 506(a) may be determined in a proposed plan, subject to objection and resolution at the confirmation hearing.  Current Rule 3012 provides for the valuation of a secured claim by motion only.  The amended rule would also make clear that a chapter 13 plan would not control the amount of a claim entitled to priority treatment or the amount of a secured claim of a governmental unit.

*Rule 3015*.  Rule 3015 governs the filing of a chapter 13 plan as well as plan modifications and objections to confirmation.  The advisory committee proposed extensive amendments to the rule.  They include an amended subdivision (c) requiring use of the official form for chapter 13 plans, a new 7-day deadline in Rule 3015(f) for filing objections to confirmation, and an amended subdivision (g) providing when the plan terms control over contrary proofs of claim.  These amendments dovetail with proposed amendments to Rules 2002, 3007, and 3012.

*Rule 4003*.  Code § 522(f) permits a debtor to avoid certain liens encumbering property that is exempt from the debtor's estate.  Current Rule 4003(d) provides that lien avoidance under this section of the Code requires a motion.  The plan form, however, would include a provision for a debtor to request lien avoidance as permitted by § 522(f).  The advisory committee proposed an amendment to Rule 4003(d) to give effect to that part of the plan form.

*Rule 5009*. The advisory committee has included a procedure in proposed amended Rule 5009(d) for the debtor to obtain an order confirming that a secured claim has been satisfied. The language of the proposed amended rule permits the debtor to request entry of the order but does not specify the requirements for lien satisfaction.

*Rule 7001*. The advisory committee proposed to amend Rule 7001(2) so that determinations of the amount of a secured claim (under amended Rule 3012) and lien avoidance (under amended Rule 4003(d)) through a chapter 12 or chapter 13 plan would not require an adversary proceeding.

*Rule 9009*. In order to ensure use of the chapter 13 plan form without significant alterations, the advisory committee proposed an amendment to Rule 9009. Because greater uniformity is a principal goal of the plan form, proposed amended Rule 9009 would limit the range of permissible changes to forms.

**Action: The Standing Committee, by voice vote without objection, approved for publication the proposed rule amendments related to the proposed new chapter 13 plan.**

**K.      Proposed Action.  Publication of Proposed Amendments to Rule 5005 (electronic signatures)**

Rule 5005 governs the filing and transmittal of papers. The advisory committee sought approval to publish for public comment a proposed amendment to Rule 5005 that would create a national bankruptcy rule permitting the use of electronic signatures of debtors and other individuals who are not registered users of CM/ECF, without requiring the retention of the original document bearing a handwritten signature.

The proposed amendment to Rule 5005 would allow the electronic filing of a scanned signature page bearing the original signature of a debtor or other non-filing user to be treated the same as a handwritten signature without requiring the retention of hard copies of documents. The scanned signature page and the related document would have to be filed as a single docket entry to provide clarity about the document that was being attested to by the non-filing user. The amended rule would also provide that the user name and password of a registered user of the CM/ECF system would be treated as that individual's signature on electronically filed documents. The validity of a signature submitted under the amended rule would still be subject to challenge, just as is true for a handwritten signature.

The proposal incorporates recommendations from the Inter-Committee CM/ECF Subcommittee, which is chaired by Judge Michael A. Chagares and which includes members of the Standing Committee, each of the advisory committees, and the Committee on Court Administration and Case Management. As noted, the amended rule would provide that the scanned signature of a non-filing user, when filed as part of a single filing with an electronic document, serves as a signature to that document – without any requirement that the original be retained. The subcommittee noted that once a non-filing user has a signature scanned, there is no assurance that the signature was to the original document – and that concern is

greater than with a hard copy, as it is less likely that a hard copy signature page would be attached to a number of documents.  The subcommittee suggested publishing two alternative solutions to this issue.  The advisory committee agreed with that suggestion and presented its proposed amendment to the Standing Committee with the suggested alternatives incorporated.

One alternative would be for the rule to state that the filing by the registered user is deemed a certification that the scanned signature was part of the original document.  The second alternative would keep the filing lawyer out of the matter of any attestation about authenticity by using notaries public for that purpose.  The Standing Committee accepted the recommendation of the CM/ECF Subcommittee and the Bankruptcy Rules Advisory Committee that Rule 5005(a)(3)(B) be published with both alternatives.  It was agreed that publication of proposed Rule 5005(a)(3)(B) with both alternatives would allow careful public consideration of the problem of assuring that scanned signatures are a part of the original document.  It would assure input from interested and knowledgeable members of the public on how best to protect against the possible misuse of electronic signatures.

Judges Fitzwater and Sutton again reminded the Standing Committee that the Evidence Rules Advisory Committee is hosting a technology symposium in Portland, Maine in October 2013, which would provide another forum to solicit public comment on alternative methods to verify electronic signatures.

Judge Chagares noted that the CM/ECF Subcommittee will examine whether there are other technology issues related to the Next Generation of CM/ECF that should be addressed across all the sets of rules.  Professor Capra, the reporter to the subcommittee, will work with the advisory committee reporters to identify rules affected by electronic filing and CM/ECF.  If common issues arise across the different sets of rules, a model might be developed for the sake of uniformity.

**Action:  The Standing Committee, by voice vote without objection, approved publication of the proposed amendment to Rule 5005, including an invitation for comment on the proposed alternative methods for assuring that a signature is part of the original document.**

**L.      Proposed Action: Publication of Proposed Amendments to Rule 9006(f)**

Rule 9006(f), which is modeled on Civil Rule 6(d), provides three additional days for a party to act "after service" if service is made by mail or under Civil Rule 5(b)(2)(D), (E), or (F).  At the January 2013 meeting, the Standing Committee approved for publication a proposed amendment to Civil Rule 6(d) that would clarify that only the party that is served by mail or under the specified provisions of Civil Rule 5 – and not the party making service – is permitted to add three days to any prescribed period for taking action after service is made.  Because Rule 9006(f) contains the same potential ambiguity as current Civil Rule 6(d), the advisory committee requested approval to publish a parallel amendment of the bankruptcy rule.

**Action**:  The Standing Committee, by voice vote without objection, approved publication of the proposed amendments to Rule 9006(f).

M.        **Proposed Action:   Publication of Official Form 113 (new national Chapter 13 form)**

The advisory committee recommended publication for public comment of a national plan form for chapter 13 cases.  As described above in Item J, the plan form is the product of more than two years of study and consultation by the advisory committee.

The plan form includes ten parts.  Beginning with a notice to interested parties (Part 1), the plan form covers:  the amount, source, and length of the debtor's plan payments (Part 2); the treatment of secured claims (Part 3); the treatment of the trustee's fees, administrative claims, and other priority claims (Part 4); the treatment of unsecured claims not entitled to priority (Part 5); the treatment of executory contracts and unexpired leases (Part 6); the order of distribution of payments by the trustee (Part 7); the revesting of property of the estate with the debtor (Part 8); and nonstandard plan terms (Part 9).  Part 10 is the signature box.

The plan form contains a number of significant features.  First, it permits a debtor to propose to limit the amount of a secured claim (Part 3, § 3.2), to avoid certain liens as provided by the Bankruptcy Code (Part 3, § 3.4), and to include nonstandard terms that are not part of – or that deviate from – the official form (Part 9).  In order to make any of these particular terms effective, however, the debtor must clearly indicate in Part 1 that the plan includes one or more of them by marking the appropriate checkbox.  Thus, the face of the document will put the court, the trustee, and creditors on notice that the plan contains terms that may require additional scrutiny.  Second, the plan form makes clear when it will control over a creditor's contrary proof of claim.  For example, a debtor may propose to limit the amount of a nongovernmental secured claim under Code § 506(a) because the collateral securing it is worth less than the claim.  The proposed amount of the secured claim would be binding, subject to a creditor's objection to the plan and a final determination of the issue in connection with plan confirmation.  Otherwise, a creditor's proof of claim will control the amount and treatment of the claim, subject to a claim objection.

The treatment of nonstandard plan provisions has been a concern during the process of drafting the plan.  As described earlier, Part 1 requires the debtor to indicate whether the plan includes nonstandard terms.  In order to give further assurance that the debtor has filed a plan form that otherwise adheres to the official form, the plan's signature box includes a certification to that effect.  Thus, the plan form requires that the debtor's attorney (or the debtor, if pro se) must certify by signing the plan that all of its provisions are identical to the official form, except for nonstandard provisions located in Part 9.

**Action**:  The Standing Committee, by voice vote without objection, approved publication of Official Form 113 (new national chapter 13 plan form).

**N.    Proposed Action:  Publication of Individual Debtor Forms**

The advisory committee requested publication of the following individual debtor forms to be effective December 2015:

| 101 | Voluntary Petition for Individuals Filing for Bankruptcy |
|---|---|
| 101A | Initial Statement About an Eviction Judgment Against You |
| 101B | Statement About Payment of an Eviction Judgment Against You |
| 104 | List in Individual Chapter 11 Cases of Creditors Who Have the 20 Largest Unsecured Claims Against You and Are Not Insiders |
| 105 | Involuntary Petition Against an Individual |
| 106Sum | Summary of Your Assets and Liabilities and Certain Statistical Information |
| 106A/B | Schedule A/B: Property |
| 106C | Schedule C: The Property You Claim as Exempt |
| 106D | Schedule D: Creditors Who Hold Claims Secured by Property |
| 106E/F | Schedule E/F: Creditors Who Have Unsecured Claims |
| 106G | Schedule G: Executory Contracts and Unexpired Leases |
| 106H | Schedule H: Your Codebtors |
| 106Dec | Declaration About an Individual Debtor's Schedules |
| 107 | Statement of Financial Affairs for Individuals Filing for Bankruptcy |
| 112 | Statement of Intention for Individuals Filing Under Chapter 7 |
| 119 | Bankruptcy Petition Preparer's Notice, Declaration, and Signature |
| 121 | Statement About Your Social Security Numbers |
| 318 | Order of Discharge |
| 423 | Certification About a Financial Management Course |
| 427 | Cover Sheet for Reaffirmation Agreement |

The advisory committee also requested approval to publish for comment an instruction booklet for individuals.

Although the normal effective date for official bankruptcy forms published in 2013 would be December 1, 2014, Judge Wedoff noted that the effective date for the restyled individual-debtor forms that will be initially published this summer will be delayed at least until December 1, 2015, in order to permit them to go into effect at the same time as the restyled forms for non-individual cases.

**Action: The Standing Committee, by voice vote without objection, approved publication of the Individual Debtor Forms, along with an instruction booklet for individuals.**

O.    **Proposed Action:  Publication of Official Forms 17A, 17B, and 17C**

The advisory committee proposed publishing Official Forms 17A, 17B, and 17C, in connection with the revision of Part VIII of the Bankruptcy Rules, which govern bankruptcy appeals. Form 17A would be an amended and renumbered notice-of-appeal form, and Forms 17B and 17C would be new.

Proposed Form 17A would include in the Notice of Appeal a section for the appellant's optional statement of election to have the appeal heard by the district court rather than by the bankruptcy appellate panel.  It would only be applicable in districts for which appeals to a bankruptcy appellate panel have been authorized.

New Form 17B – the Optional Appellee Statement of Election to Proceed in the District Court – would be the form that an appellee would file if it wanted the appeal to be heard by the district court and the appellant or another appellee did not make that election.

New Form 17C – Certificate of Compliance with Rule 8015(a)(7)(B) or 8016(d)(2) – would provide a means for a party to certify compliance with the provisions of the bankruptcy appellate rules that prescribe limitations on brief length based on number of words or lines of text (the "type-volume limitation").  It is based on Appellate Form 6, which implements the parallel provisions of Appellate Rule 32(a)(7)(B).

The advisory committee sought approval for publication this summer so that the proposed amendments would be scheduled to take effect December 1, 2014, the same effective date as is anticipated for the revised Part VIII rules.

**Action:  The Standing Committee, by voice vote without objection, approved publication of Official Forms 17A, 17B, and 17C.**

## REPORT OF THE ADMINISTRATIVE OFFICE

Benjamin Robinson gave a short report on recent activity by the Rules Committee Support Office (RCSO) to deal with the expected flood of public comments arising from the publication of the proposed amendments to the Civil Rules and Bankruptcy Rules in August 2013. He stated that 250 public comments had been received after the January 2013 meeting of the Standing Committee and were being held for filing during the comment period. These showed some earmarks of an organized letter writing campaign and more were expected.

After consulting with the Administrative Conference of the United States and others heavily involved in rule-making activities, Mr. Robinson worked with the webmasters and designers of regulations.gov – a website currently used by more than 30 departments and 150 agencies for their rulemaking activities. As a result of these efforts, on August 15, 2013, the RCSO will activate a website on regulations.gov that will allow the electronic filing and docketing of comments on proposed rules. This new system should add to the transparency and realtime accessibility of public comments to the committees, their reporters, and the general public.

## CONCLUDING REMARKS

Judge Sutton confirmed with Judge Campbell that one of the public hearings on the proposed Civil Rules would take place on Thursday, January 9, 2014. Attendance by members of the Standing Committee is encouraged but not required. Mr. Robinson noted that the RCSO would attempt to make the hearing available in courthouses through video conference and otherwise by teleconference. Judge Sutton confirmed that the Standing Committee will meet on Friday, January 10. The Standing Committee dinner will be Thursday evening, January 9. Judge Sutton then thanked everyone for the productive meeting and declared it adjourned.

## NEXT MEETING

The Standing Committee will hold its next meeting in Phoenix, Arizona on January 9 and 10, 2014.

**THIS PAGE INTENTIONALLY BLANK**

Cited in In re A warrant to Search email account controlled maintained by Microsoft 13Mag2814 Decided 4/25/14

Archived on 5/6/14

This document is protected by copyright. Further reproduction is prohibited without permission.

# TAB 2

Cited in In re A warrant to Search email account controlled maintained by Microsoft 13Mag2814 Decision 4/25/14

Archived on 5/6/14

This document is protected by copyright. Further reproduction is prohibited without permission.

**THIS PAGE INTENTIONALLY BLANK**

Cited in In re A warrant to Search email account controlled maintained by Microsoft 13Mag2814 Decided 4/25/14 Archived on 5/6/14 This document is protected by copyright. Further reproduction is prohibited without permission.

# TAB 2A

Cited in In re A warrant to Search email account controlled maintained by Microsoft 13Mag2814 Declied on 4/25/14 Archived on 5/6/14 This document is protected by copyright. Further reproduction is prohibited without permission.

**THIS PAGE INTENTIONALLY BLANK**

Cited in In re A warrant to Search email account controlled maintained by Microsoft 13Mag2814 Decided 4/25/14

Archived on 5/6/14

This document is protected by copyright.
Further reproduction is prohibited without permission.

Cited in In re A warrant to Search email account controlled & maintained by Microsoft 13Mag2814 Decided 4/25/14 Archived on 3/6/14 This document is protected by copyright. Further reproduction is prohibited without permission.

**PROPOSED AMENDMENTS TO THE FEDERAL
RULES OF CRIMINAL PROCEDURE**

1    **Rule 11.  Pleas**

2                           * * * * *

3    **(b)   Considering and Accepting a Guilty or Nolo**

4          **Contendere Plea**

5          **(1)   *Advising and Questioning the Defendant*.** Before

6                the court accepts a plea of guilty or nolo

7                contendere, the defendant may be placed under

8                oath, and the court must address the defendant

9                personally in open court.  During this address, the

10               court must inform the defendant of, and determine

11               that the defendant understands, the following:

12                          * * * * *

13               (M)  in determining a sentence, the court's

---

\* New material is underlined; matter to be omitted is lined
through.

14          obligation to calculate the applicable

15          sentencing-guideline range and to consider

16          that range, possible departures under the

17          Sentencing Guidelines, and other sentencing

18          factors under 18 U.S.C. § 3553(a); and

19     (N)  the terms of any plea-agreement provision

20          waiving the right to appeal or to collaterally

21          attack the sentence; and.

22     (O)  that, if convicted, a defendant who is not a

23          United States citizen may be removed from

24          the United States, denied citizenship, and

25          denied admission to the United States in the

26          future.

27                         * * * * *

**Committee Note**

**Subdivision (b)(1)(O).**  The amendment requires the court to include a general statement that there may be immigration consequences of conviction in the advice provided to the defendant before the court accepts a plea of guilty or nolo contendere.

For a defendant who is not a citizen of the United States, a criminal conviction may lead to removal, exclusion, and the inability to become a citizen. In *Padilla v. Kentucky*, 130 S. Ct. 1473 (2010), the Supreme Court held that a defense attorney's failure to advise the defendant concerning the risk of deportation fell below the objective standard of reasonable professional assistance guaranteed by the Sixth Amendment.

The amendment mandates a generic warning, not specific advice concerning the defendant's individual situation. Judges in many districts already include a warning about immigration consequences in the plea colloquy, and the amendment adopts this practice as good policy.    The Committee concluded that the most effective and efficient method of conveying this information is to provide it to every defendant, without attempting to determine the defendant's citizenship.

---

**Changes Made After Publication and Comment**

The Committee Note was revised to make it clear that the court is to give a general statement that there may be immigration consequences, not specific advice concerning a defendant's individual situation.

Cited in In re A warrant to Search email account controlled maintained for Microsoft 13Mag2814 Decided 4/25/14 Archived on 5/6/14 This document is protected by copyright. Further reproduction is prohibited without permission.

# TAB 2B

Cited in In re A warrant to Search email account controlled maintained by Microsoft 13Mag2814 Decloced 4/25/14

Archived on 5/6/14

This document is protected by copyright. Further reproduction is prohibited without permission.

**THIS PAGE INTENTIONALLY BLANK**

Cited in In re A warrant to Search email account controlled maintained by Microsoft 13Mag2814 Decided 4/25/14

Archived on 5/6/14

This document is protected by copyright. Further reproduction is prohibited without permission.

**PROPOSED AMENDMENTS TO THE FEDERAL
RULES OF CRIMINAL PROCEDURE**[*]

1    **Rule 5.   Initial Appearance**

2                                    * * * * *

3    **(d) Procedure in a Felony Case.**

4         **(1)** *Advice.*  If the defendant is charged with a felony,

5              the judge must inform the defendant of the

6              following:

7                                    * * * * *

8         (D)  any right to a preliminary hearing; and

9         (E)  the defendant's right not to make a statement,

10             and that any statement made may be used

11             against the defendant.; and

12        (F)  that a defendant who is not a United States

13             citizen may request that an attorney for the

---

[*]    New material is underlined; matter to be omitted is lined
through.

Cited in In re A warrant to Search email account controlled and maintained by Microsoft 13Mag2814 Decided 4/25/14 Archived on 5/6/14 This document is protected by copyright. Further reproduction is prohibited without permission.

14          government or a federal law enforcement

15          official notify a consular officer from the

16          defendant's country of nationality that the

17          defendant has been arrested — but that even

18          without the defendant's request, a treaty or

19          other international agreement may require

20          consular notification.

21                      * * * * *

### Committee Note

**Rule 5(d)(1)(F).** Article 36 of the Vienna Convention on Consular Relations provides that detained foreign nationals shall be advised that they may have the consulate of their home country notified of their arrest and detention, and bilateral agreements with numerous countries require consular notification whether or not the detained foreign national requests it. Article 36 requires consular notification advice to be given "without delay," and arresting officers are primarily responsible for providing this advice.

Providing this advice at the initial appearance is designed, not to relieve law enforcement officers of that responsibility, but to provide additional assurance that U.S.

treaty obligations are fulfilled, and to create a judicial record of that action. The Committee concluded that the most effective and efficient method of conveying this information is to provide it to every defendant, without attempting to determine the defendant's citizenship.

At the time of this amendment, many questions remain unresolved by the courts concerning Article 36, including whether it creates individual rights that may be invoked in a judicial proceeding and what if any, remedy may exist for a violation of Article 36. *Sanchez-Llamas v. Oregon*, 548 U.S. 331 (2006). This amendment does not address those questions. More particularly, it does not create any such rights or remedies.

---

**Changes Made After Publication and Comment**

In response to public comments the amendment was rephrased to state that the information regarding consular notification should be provided to all defendants who are arraigned. Although it is anticipated that ordinarily only defendants who are held in custody will ask the government to notify a consular official of their arrest, it is appropriate to provide this information to all defendants at their initial appearance. The new phrasing also makes it clear that the advice should be provided to every defendant, without any attempt to determine the defendant's citizenship. A conforming change was made to the Committee Note.

**THIS PAGE INTENTIONALLY BLANK**

Cited in In re A warrant to Search email account controlled maintained by Microsoft 13Mag2814 Decided 4/25/14 Archived on 5/6/14 This document is protected by copyright. Further reproduction is prohibited without permission.

1    **Rule 6.   The Grand Jury**

2                          \* \* \* \* \*

3    **(e)   Recording and Disclosing the Proceedings.**

4                          \* \* \* \* \*

5         **(3)   *Exceptions.***

6                          \* \* \* \* \*

7              (D)   An attorney for the government may

8              disclose any grand-jury matter involving

9              foreign intelligence, counterintelligence (as

10             defined in 50 U.S.C. § ~~401a~~3003), or

11             foreign intelligence information (as defined

12             in Rule 6(e)(3)(D)(iii)) to any federal law

13             enforcement, intelligence, protective,

14             immigration, national defense, or national

15             security official to assist the official

16             receiving the information in the

17          performance of that official's duties. An

18          attorney for the government may also

19          disclose any grand-jury matter involving,

20          within the United States or elsewhere, a

21          threat of attack or other grave hostile acts of

22          a foreign power or its agent, a threat of

23          domestic or international sabotage or

24          terrorism, or clandestine intelligence

25          gathering activities by an intelligence

26          service or network of a foreign power or by

27          its agent, to any appropriate federal, state,

28          state subdivision, Indian tribal, or foreign

29          government official, for the purpose of

30          preventing or responding to such threat or

31          activities.

32                      * * * * *

**Committee Note**

**Rule 6(e)(3)(D)**.  This technical and conforming amendment updates a citation affected by the editorial reclassification of chapter 15 of title 50, United States Code.  The amendment replaces the citation to 50 U.S.C. § 401a with a citation to 50 U.S.C. § 3003.  No substantive change is intended.

**THIS PAGE INTENTIONALLY BLANK**

Cited in In re A warrant to Search email account controlled maintained by Microsoft 13Mag2814 Decided 4/25/14 Archived on 5/6/14 This document is protected by copyright. Further reproduction is prohibited without permission.

1    **Rule 12.   Pleadings and Pretrial Motions**

2                                    * * * * *

3    **(b)   Pretrial Motions.**

4              **(1)   *In General.*** A party may raise by pretrial motion

5                     any defense, objection, or request that the court

6                     can determine without a trial on the merits.

7                     Rule 47 applies to a pretrial motion.

8              ~~**(2)   *Motions That May Be Made Before Trial.* A**~~

9                     ~~party may raise by pretrial motion any defense,~~

10                    ~~objection, or request that the court can determine~~

11                    ~~without a trial of the general issue.~~**_Motions That_**

12                    **_May Be Made at Any Time._** A motion that the

13                    court lacks jurisdiction may be made at any time

14                    while the case is pending.

15             **(3)   *Motions That Must Be Made Before Trial*.** The

16                    following defenses, objections, and requests must

17        be raised <u>by pretrial motion</u> <s>before trial</s><u>if the</u>

18        <u>basis for the motion is then reasonably available</u>

19        <u>and the motion can be determined without a trial</u>

20        <u>on the merits</u>:

21        (A)   <s>a motion alleging</s> a defect in instituting the

22                prosecution, <u>including</u>:

23                <u>(i)    improper venue;</u>

24                <u>(ii)   preindictment delay;</u>

25                <u>(iii) a violation of the constitutional right to</u>

26                    <u>a speedy trial;</u>

27                <u>(iv)  selective or vindictive prosecution; and</u>

28                <u>(v)   an error in the grand-jury proceeding</u>

29                    <u>or preliminary hearing;</u>

30        (B)   <s>a motion alleging</s> a defect in the indictment

31                or information<u>, including</u>:

32             (i)   joining two or more offenses in the

33             same count (duplicity);

34             (ii)  charging the same offense in more than

35             one count (multiplicity);

36             (iii) lack of specificity;

37             (iv) improper joinder; and

38             (v)   failure to state an offense;

39         - but at any time while the case is pending,

40         the court may hear a claim that the

41         indictment or information fails to invoke the

42         court's jurisdiction or to state an offense;

43      (C)   a motion to suppression of evidence;

44      (D)   a Rule 14 motion to severseverance of

45            charges or defendants under Rule 14; and

46      (E)   a Rule 16 motion for discovery under

47            Rule 16.

48      **(4)** *Notice of the Government's Intent to Use*

49            *Evidence.*

50            (A) *At the Government's Discretion.*   At the

51                  arraignment or as soon afterward as

52                  practicable, the government may notify the

53                  defendant of its intent to use specified

54                  evidence at trial in order to afford the

55                  defendant an opportunity to object before

56                  trial under Rule 12(b)(3)(C).

57            (B) *At the Defendant's Request.*   At the

58                  arraignment or as soon afterward as

59                  practicable the defendant may, in order to

60                  have an opportunity to move to suppress

61                  evidence under Rule 12(b)(3)(C), request

62                  notice of the government's intent to use (in

63                  its evidence-in-chief at trial) any evidence

Cited in In re A warrant to Search email account controlled and maintained by Microsoft 13Mag2814 Decided 4/25/14 Archived on 5/6/14 This document is protected by copyright. Further reproduction is prohibited without permission.

64              that the defendant may be entitled to

65              discover under Rule 16.

66  **(c)** ~~**Motion Deadline.**~~ **Deadline for a Pretrial Motion;**

67      **Consequences of Not Making a Timely Motion.**

68      **(1)** ***Setting the Deadline .*** The court may, at the

69          arraignment or as soon afterward as practicable,

70          set a deadline for the parties to make pretrial

71          motions and may also schedule a motion hearing.

72          If the court does not set one, the deadline is the

73          start of trial.

74      **(2)** ***Extending or Resetting the Deadline.*** At any

75          time before trial, the court may extend or reset

76          the deadline for pretrial motions.

77      **(3)** ***Consequences of Not Making a Timely Motion***

78          ***Under Rule 12(b)(3).*** If a party does not meet

79          the deadline for making a Rule 12(b)(3) motion,

80        the motion is untimely.  But a court may consider

81        the defense, objection, or request if:

82        (A)   the party shows good cause; or

83        (B)   for a claim of failure to state an offense, the

84        defendant shows prejudice.

85    **(d)**   **Ruling on a Motion.**  The court must decide every

86        pretrial motion before trial unless it finds good cause

87        to defer a ruling.  The court must not defer ruling on a

88        pretrial motion if the deferral will adversely affect a

89        party's right to appeal.  When factual issues are

90        involved in deciding a motion, the court must state its

91        essential findings on the record.

92    **(e)**   **[Reserved]**~~**Waiver of a Defense, Objection, or**~~

93        ~~**Request.**  A party waives any Rule 12(b)(3) defense,~~

94        ~~objection, or request not raised by the deadline the~~

95        ~~court sets under Rule 12(c) or by any extension the~~

Cited in In re A warrant to Search email account controlled maintained by Microsoft 13Mag2814 Decided 4/25/14 Archived on 5/6/14 This document is protected by copyright. Further reproduction is prohibited without permission.

96          ~~court provides.  For good cause, the court may grant~~

97          ~~relief from the waiver.~~

98                          * * * * *

## Committee Note

**Rule 12(b)(1).** The language formerly in (b)(2), which provided that "any defense, objection, or request that the court can determine without trial of the general issue" may be raised by motion before trial, has been relocated here. The more modern phrase "trial on the merits" is substituted for the more archaic phrase "trial of the general issue." No change in meaning is intended.

**Rule 12(b)(2).** As revised, subdivision (b)(2) states that lack of jurisdiction may be raised at any time the case is pending.  This provision was relocated from its previous placement at the end of subsection (b)(3)(B) and restyled. No change in meaning is intended.

**Rule 12(b)(3).**     The amendment clarifies which motions must be raised before trial.

The introductory language includes two important limitations.    The basis for the motion must be one that is "reasonably available" and the motion must be one that the court can determine "without trial on the merits."    The types of claims subject to Rule 12(b)(3) generally will be available before trial and they can – and should – be resolved then.  The Committee recognized, however, that in

some cases, a party may not have access to the information needed to raise particular claims that fall within the general categories subject to Rule 12(b)(3) prior to trial. The "then reasonably available" language is intended to ensure that a claim a party could not have raised on time is not subject to the limitation on review imposed by Rule 12(c)(3). Additionally, only those issues that can be determined "without a trial on the merits" need be raised by motion before trial. Just as in (b)(1), the more modern phrase "trial on the merits" is substituted for the more archaic phrase "trial of the general issue." No change in meaning is intended.

The rule's command that motions alleging "a defect in instituting the prosecution" and "errors in the indictment or information" must be made before trial is unchanged. The amendment adds a nonexclusive list of commonly raised claims under each category to help ensure that such claims are not overlooked. The Rule is not intended to and does not affect or supersede statutory provisions that establish the time to make specific motions, such as motions under the Jury Selection and Service Act, 18 U.S.C. § 1867(a).

Rule 12(b)(3)(B) has also been amended to remove language that allowed the court at any time while the case is pending to hear a claim that the "indictment or information fails . . . to state an offense." This specific charging error was previously considered fatal whenever raised and was excluded from the general requirement that charging deficiencies be raised prior to trial. The Supreme Court abandoned any jurisdictional justification for the exception in *United States v. Cotton,* 535 U.S. 625, 629-31

(2002) (overruling *Ex parte Bain*, 121 U.S. 1 (1887), "[i]nsofar as it held that a defective indictment deprives a court of jurisdiction").

**Rule 12(c).**  As revised, subdivision (c) governs both the deadline for making pretrial motions and the consequences of failing to meet the deadline for motions that must be made before trial under Rule 12(b)(3).

As amended, subdivision (c) contains three paragraphs. Paragraph (c)(1) retains the existing provisions for establishing the time when pretrial motions must be made, and adds a sentence stating that unless the court sets a deadline, the deadline for pretrial motions is the start of trial, so that motions may be ruled upon before jeopardy attaches.  Subdivision (e) of the present rule contains the language "or by any extension the court provides," which anticipates that a district court has broad discretion to extend, reset, or decline to extend or reset, the deadline for pretrial motions.  New paragraph (c)(2) recognizes this discretion explicitly and relocates the Rule's mention of it to a more logical place – after the provision concerning setting the deadline and before the provision concerning the consequences of not meeting the deadline.  No change in meaning is intended.

New paragraph (c)(3) governs the review of untimely claims, previously addressed in Rule 12(e).  Rule 12(e) provided that a party "waives" a defense not raised within the time set under Rule 12(c).  Although the term waiver in the context of a criminal case ordinarily refers to the intentional relinquishment of a known right, Rule 12(e) has

never required any determination that a party who failed to make a timely motion intended to relinquish a defense, objection, or request that was not raised in a timely fashion. Accordingly, to avoid possible confusion the Committee decided not to employ the term "waiver" in new paragraph (c)(3).

The standard for review of untimely claims under new paragraph 12(c)(3) depends on the nature of the defense, objection, or request. The general standard for claims that must be raised before trial under Rule 12(b)(3) is stated in (c)(3)(A), which – like the present rule – requires that the party seeking relief show "good cause" for failure to raise a claim by the deadline. The Supreme Court and lower federal courts have interpreted the "good cause" standard under Rule 12(e) to require both (1) "cause" for the failure to raise the claim on time, and (2) "prejudice" resulting from the error. *Davis v. United States*, 411 U.S. 233, 242 (1973); *Shotwell Mfg. Co. v. United States*, 371 U.S. 341, 363 (1963).

New subparagraph (c)(3)(B) provides a different standard for one specific claim: the failure of the charging document to state an offense. The Committee concluded that judicial review of these claims, which go to adequacy of the notice afforded to the defendant, and the power to bring a defendant to trial or to impose punishment, should be available without a showing of "good cause." Rather, review should be available whenever a defendant shows prejudice from the failure to state a claim. Accordingly, subparagraph (c)(3)(B) provides that the court can consider these claims if the party "shows prejudice." Unlike plain

error review under Rule 52(b), the standard under Rule (12)(c)(3)(B) does not require a showing that the error was "plain" or that the error "seriously affects the fairness, integrity, or public reputation of judicial proceedings." Nevertheless, it will not always be possible for a defendant to make the required showing of prejudice. For example, in some cases in which the charging document omitted an element of the offense, the defendant may have admitted the element as part of a guilty plea after having been afforded timely notice by other means.

**Rule 12(e).** The effect of failure to raise issues by a pretrial motion has been relocated from (e) to (c)(3).

---

## Changes Made After Publication and Comment

Language that had been deleted from Rule 12(b)(2) as unnecessary was restored and relocated in (b)(1). The change begins the Rule's treatment of pretrial motions with an appropriate general statement and responds to concerns that the deletion might have been perceived as unintentionally restricting the district courts' authority to rule on pretrial motions. The references to "double jeopardy" and "statute of limitations" were dropped from the nonexclusive list in (b)(3)(A) to permit further debate over the treatment of such claims. New paragraph (c)(2) was added to state explicitly the district court's authority to extend or reset the deadline for pretrial motions; this authority had been recognized implicitly in language being deleted from Rule 12(e). In subdivision (c), the

cross reference to Rule 52 was omitted as unnecessarily controversial.    In subparagraph (c)(3)(A), the current language "good cause" was retained.   In subparagraph (c)(3)(B), the reference to "double jeopardy" was omitted to mirror the omission from (b)(3)(A), and the word "only" was deleted from the phrase "prejudice only" because it was superfluous.  Finally, the Committee Note was amended to reflect these post-publication changes and to state explicitly that the rule is not intended to change or supersede statutory deadlines under provisions such as the Jury Selection and Service Act.

1  **Rule 34.   Arresting Judgment**

2  **(a)   In General.**   Upon the defendant's motion or on its

3         own, the court must arrest judgment if the court does

4         not have jurisdiction of the charged offense.if:

5         (1)   the indictment or information does not charge an

6               offense; or

7         (2)   the court does not have jurisdiction of the

8               charged offense.

9                            * * * * *

### Committee Note

   **Rule 34**(a).   This amendment conforms Rule 34 to
Rule 12(b) which has been amended to remove language
that the court at any time while the case is pending may
hear a claim that the "indictment or information fails . . . to
state an offense."   The amended Rule 12 instead requires
that such a defect be raised before trial.

_____

### Changes Made After Publication and Comment

   No changes were made after publication and comment.

**THIS PAGE INTENTIONALLY BLANK**

Cited in In re A warrant to Search email account controlled maintained by Microsoft 13Mag2814 Decided 4/25/14

Archived on 5/6/14

This document is protected by copyright. Further reproduction is prohibited without permission.

1    **Rule 58.  Petty Offenses and Other Misdemeanors**

2                    \* \* \* \* \*

3    **(b)    Pretrial Procedure.**

4                    \* \* \* \* \*

5        **(2)  *Initial Appearance.*** At the defendant's initial

6            appearance on a petty offense or other

7            misdemeanor charge, the magistrate judge must

8            inform the defendant of the following:

9                    \* \* \* \* \*

10            (F)  the right to a jury trial before either a

11                magistrate judge or a district judge – unless

12                the charge is a petty offense; and

13            (G)  any right to a preliminary hearing under

14                Rule 5.1, and the general circumstances, if

15                any, under which the defendant may secure

16                pretrial release.; and

17      (H)   that a defendant who is not a United States

18            citizen may request that an attorney for the

19            government or a federal law enforcement

20            official notify a consular officer from the

21            defendant's country of nationality that the

22            defendant has been arrested — but that even

23            without the defendant's request, a treaty or

24            other international agreement may require

25            consular notification.

26                          * * * * *

### Committee Note

**Rule 58(b)(2)(H).** Article 36 of the Vienna Convention on Consular Relations provides that detained foreign nationals shall be advised that they may have the consulate of their home country notified of their arrest and detention, and bilateral agreements with numerous countries require consular notification whether or not the detained foreign national requests it. Article 36 requires consular notification advice to be given "without delay," and arresting officers are primarily responsible for providing this advice.

Providing this advice at the initial appearance is designed, not to relieve law enforcement officers of that responsibility, but to provide additional assurance that U.S. treaty obligations are fulfilled, and to create a judicial record of that action. The Committee concluded that the most effective and efficient method of conveying this information is to provide it to every defendant, without attempting to determine the defendant's citizenship.

At the time of this amendment, many questions remain unresolved by the courts concerning Article 36, including whether it creates individual rights that may be invoked in a judicial proceeding and what, if any, remedy may exist for a violation of Article 36. *Sanchez-Llamas v. Oregon*, 548 U.S. 331 (2006). This amendment does not address those questions. More particularly it does not create any such rights or remedies.

_____

**Changes Made After Publication and Comment**

In response to public comments the amendment was rephrased to state that the information regarding consular notification should be provided to all defendants who are arraigned. Although it is anticipated that ordinarily only defendants who are held in custody will ask the government to notify a consular official of their arrest, it is appropriate to provide this information to all defendants at the initial appearance. The new phrasing also makes it clear that the advice should be provided to every defendant, without any attempt to determine the defendant's

citizenship.    A conforming change was made to the Committee Note.

Cited in In re A warrant to Search email account controlled maintained by Microsoft 13Mag2814 Decided 4/25/14 Archived on 5/6/14 This document is protected by copyright. Further reproduction is prohibited without permission.

# TAB 3

Cited in In re A warrant to Search email
account controlled maintained by Microsoft
13Mag2814 Decided 4/25/14
Archived on 5/6/14
This document is protected by copyright.
Further reproduction is prohibited without permission.

**THIS PAGE INTENTIONALLY BLANK**

Cited in In re A warrant to Search email account controlled maintained by Microsoft 13Mag2814 Decided 4/25/14

Archived on 5/6/14

This document is protected by copyright. Further reproduction is prohibited without permission.

# TAB 3A

Cited in In re A warrant to Search email
account controlled maintained by Microsoft
13Mag2814 Decided 4/25/14
Archived on 5/6/14
This document is protected by copyright.
Further reproduction is prohibited without permission.

**THIS PAGE INTENTIONALLY BLANK**

Cited in In re A warrant to Search email account controlled maintained by Microsoft 13Mag2814 Decided 4/25/14

Archived on 5/6/14

This document is protected by copyright.
Further reproduction is prohibited without permission.

**MEMO TO:   Members, Criminal Rules Advisory Committee**

**FROM:        Professors Sara Sun Beale and Nancy King, Reporters**

**RE:             Rule 4**

**DATE:         September 24, 2013**

## I. Introduction

As explained in detail in an October 2012 letter from Assistant Attorney General Lanny Breuer (included infra), the Department of Justice believes that Rule 4 of the Federal Rules of Criminal Procedure now poses an obstacle to the prosecution of foreign corporations that have committed offenses that may be punished in the United States, but that cannot be served because they have no last known address or principal place of business in the United States. General Breuer's letter brings to the Committee's attention a "new reality": the truly global economy reliant on electronic communications, in which organizations without an office or agent in the United States can readily conduct both real and virtual activities here. General Breuer argues that this new reality has created a "growing class of organizations, particularly foreign corporations" that have gained "'an undue advantage" over the government relating to the initiation of criminal proceedings."

To address this problem, the Department of Justice recommended amendments to Rule 4 that would (1) remove the requirement that a copy of the summons be sent to the organization's last known mailing address within the district or principal place of business within the United States, and (2) designate the means to serve a summons upon an organization located outside the United States.

After a brief discussion of the Department's proposal at the Committee's April meeting, Judge Raggi appointed a subcommittee to study the proposal and report at the October meeting. Judge David Lawson chairs the Rule 4 Subcommittee, and Judge Rice, Mr. Siffert, and representatives of the Department of Justice serve as members.

## II. The Subcommittee's Deliberations and Recommendations

The Subcommittee held three teleconferences to discuss the Department's proposal, and it unanimously recommends that Rule 4 be amended. The Subcommittee's proposal makes the following changes:

(1) The proposed amendment specifies that the court may take any action authorized by law if an organizational defendant fails to appear in response to a summons, filling a gap in the current rule.

1

(2) For service of a summons on an organization within the United States, the proposed amendment:

- eliminates the requirement of a separate mailing to an organizational defendant when delivery has been made to an officer or to a managing or general agent, but

- requires mailing when delivery has been made on an agent authorized by statute, if the statute itself requires mailing to the organization, but the mailing need not be to an address within a judicial district.

(3) The amendment also authorizes service on an organization at a place not within a judicial district of the United States, prescribing a non-exclusive list of methods for service.

This memorandum discusses the key elements of the Subcommittee's proposal.

The text of the amendment and note appear at the end of the report,[1] followed by the original proposal from the Department of Justice.

## III. The Elements of the Subcommittee's Proposal

### A. Authorizing the court to impose sanctions if an organizational defendant fails to appear

As a preliminary matter, the Subcommittee identified a gap in the current rule; its proposal remedies that gap. Rule 4(a) presently provides that both individual and organizational defendants may be served with a summons. Although the rule provides for the issuance of an arrest warrant if an individual defendant fails to appear in response to a summons, it is silent on the procedure to be followed if an organizational defendant fails to appear. The Subcommittee concluded that this omission should be addressed, and it proposes that the following sentence be added to the end of paragraph (a):

If an organizational defendant fails to appear in response to a summons, a judge may take any action authorized by law.

There is little precedent defining the actions that a court may take if an organizational defendant fails to appear. The Department of Justice emphasized that such cases have rarely arisen,

---

[1]As discussed on the last page of this memo, style changes were recommended between the time the Subcommittee approved the proposed change to the text of the rule and the preparation of this report. The Subcommittee did not have a chance to discuss whether those recommended changes were substantive or merely stylistic. Therefore two versions of the proposed amendment appear at the end of the report - with and without style changes.

2

and it anticipates that would continue to be the case if the proposed amendment is adopted. Foreign as well as domestic corporations have many incentives to appear and resolve criminal charges once service is made.

Responding to concerns about whether any action could be taken against a foreign organization that failed to appear after service, the Department of Justice also provided the Subcommittee with a memorandum[2] in which it identified limited authority for the following steps that a court might take if an entity failed to appear after service of a summons:

- a contempt order that might subject an organizational defendant to fines, forfeitures or other penalties;

- injunctive relief (such as an order preventing further disclosure of a trade secret);

- appointment of counsel who would then appear for the organization; and

- the imposition of penalties on the organization in a parallel civil action.

Additionally, the Department cited authority for various extrajudicial actions that might be taken by the executive against an entity that had been served but failed to appear. These include suspension or debarment from eligibility for government contracts or federally funded programs, assertion of the fugitive disentitlement doctrine in civil forfeiture proceedings, and imposition of economic and trade sanctions.[3]

Given the paucity of available authority, the Subcommittee concluded it would be premature to attempt any determination of the scope of the courts' authority to employ the sanctions identified by the government. The Subcommittee's proposal does not depend upon or endorse the various sanctions identified by the Department of Justice. By stating that the court has the authority to "take any action authorized by law" the amendment provides a framework for the courts to evaluate the scope of that authority if and when cases arise in which organizational defendants fail to appear after being served.

B. Restricting the Mailing Requirement When Delivery Is Made in the United States

The Department's original memorandum identified the current mailing requirement in Rule

---

[2]See Memorandum from Jonathan J. Wroblewski and Kathleen A. Felton to Judge David M. Lawson, August 23, 2013, at 3-5. This memorandum is reprinted infra, following the October 2012 Letter from Assistant Attorney General Lanny Breuer.

[3]Memorandum from Jonathan J. Wroblewski and Kathleen A. Felton to Judge David M. Lawson, August 23, 2013, at 5-6.

3

4(c)(3)(C) as a major impediment to prosecution of foreign entities, and the Subcommittee agreed that the current requirement is unnecessarily overbroad. At present, in every case involving an organizational defendant, the rule requires not only service on an agent but also mailing to the entity which must be made "to the organization's last known address within the district or its principal place of business elsewhere in the United States." Accordingly, it is not possible to serve a foreign entity – even one that conducts both real and virtual business within the United States – that has neither a principal place of business nor a known address within the district of prosecution.

In contrast, the mailing requirement in Civil Rule 4(h) is much more limited. Mailing is not required if service is made on an officer or a managing or general agent. Mailing is required if service is made on an agent authorized by statute to receive service, but only if the authorizing statute itself requires mailing. Finally, when mailing is required, the civil rule does not include the restriction that the mailing may be made only to a principal place of business within the United States or a known address within the district.

The Subcommittee's proposed amendment follows the approach of the Civil Rules: it restricts the mailing requirement to cases in which service has been made on a statutorily appointed agent when the statute itself requires a mailing as well as personal service. Moreover, the proposed amendment does not restrict the address to which the mailing may be made.

C. Providing for Service of Organizational Defendants Outside the United States

At present, the Federal Rules of Criminal Procedure provides for service only within a judicial district of the United States. Fed. R. Crim. P. 4(c)(2), which governs the location of service, states that a summons may be served "within the jurisdiction of the United States." In contrast, Fed. R. Civ. P. 4(f) authorizes service on individual defendants in a foreign country, and Fed. R. Civ. P. 4(h)(2) allows service on organizational defendants as provided by Rule 4(f).[4]

Given the increasing number of criminal prosecutions involving foreign entities, the Subcommittee agreed that it would be appropriate for the Federal Rules of Criminal Procedure to provide a mechanism for foreign service on an organization, and it proposes the following addition to Rule 4(c)(2), which governs the location of service:

A summons may also be served at a place not within a judicial district of the United States [under subdivision (c)(D)].[5]

---

[4]Fed. R. Civ. P. 4(h)(2) provides, however, that service on an entity may not be made under Rule 4(f)(2)(c)(i) (delivery "to the individual personally").

[5]In preparing this report, the Reporters noted that the language adopted by the Subcommittee might be read to apply to service on individual defendants under (c)(3)(B). If the Committee shares this concern, the bracketed language could be added to avoid that possibility.

4

This general provision is implemented in the Subcommittee's proposed amendment to Rule 4(c)(3), which governs the manner of service.

The Subcommittee's proposal – like Fed. R. Civ. P. 4 – enumerates a variety of methods of proper service but also provides a more general provision authorizing other methods. In drafting the proposal, the Subcommittee was mindful of several overriding principles. First, the function of rules governing service is providing notice, which is a fundamental requirement of Due Process. Accordingly, the means of service authorized by the rule must be "reasonably calculated to give notice."[6] Second, the public has an interest in the enforcement of the criminal laws, and rules governing service should provide an efficient and effective means for initiating criminal proceedings. Procedural rules imposing unnecessary restrictions on service of process may frustrate the public's interest in the enforcement of the federal criminal laws. Finally, service of process outside the United States requires consideration of both the principles of international law and the respective roles of the executive and judicial branches. As discussed below, the proposed amendment was crafted with these considerations in mind.

<u>1. Enumerated examples of authorized means of service</u>

Proposed subdivision (c)(3)(D) authorizes several forms of service "on an organization not within a judicial district of the United States":

Three forms of service are listed in (c)(3)(D)(i) and (ii)(a) and (b):

● service pursuant to the law of the foreign jurisdiction by delivery of a copy of the summons to "an officer, to a managing or general agent, or to another agent appointed or legally authorized to receive service of process";

● service by stipulated means; and

● service undertaken by a foreign authority "in response to a letter rogatory, a letter of request, or a request submitted under an applicable international agreement."

_____

[6] This phrase, which appears in Fed. R. Civ. P. 4(f)(1) and (2), is drawn from the Supreme Court's analysis in Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 318 (1950).

[7] Fed. R. Civ. P. 4(h) provides for service on a corporation "at a place not within any judicial district of the United States," but the Subcommittee deliberately omitted the reference to service *at a place* outside a judicial district of the United States. Thus the new provision authorizes additional means of service on *organizations* that are not within a judicial district of the United States. Although the authorized means for such service would generally occur outside any U.S. judicial district, in some cases service by stipulation or service under the general catch-all provision might occur within a U.S. judicial district.

5

The Subcommittee viewed these three methods as uncontroversial. They are designed to provide notice to the organizational defendant, they are not unduly burdensome, they pose no special concerns under the principles of international law, and they raise no special issues of institutional competence or separation of powers.

Proposed (c)(3)(D)(i) allowing service authorized by the law of the foreign jurisdiction on an officer, managing or general agent, or an agent appointed or recognized by law to receive service of process parallels the existing provision, Fed. R. Crim. P. 4(c)(3)(C) permitting domestic service on the officers or specified agent of the entity. The remaining means of service are introduced by the express requirement in (c)(3)(D)(ii) that they must "give notice." Service by stipulation under subdivision (c)(3)(D)(ii)(a) would guarantee notice to the entity. Subdivision (c)(3)(D)(ii)(b) authorizes service undertaken by the foreign authority in response to letters rogatory, letters of request, and requests submitted under an applicable international agreement. Using these well-developed procedures should ordinarily provide notice to an organizational defendant. However, if notice has not been afforded in an individual case, the Committee Note recognizes that the defendant may later choose to raise a challenge on this basis.

Finally, the Subcommittee concluded that the listed means of service posed neither concerns under the principles of international law nor institutional concerns. Service in a manner authorized by the foreign jurisdiction's law is respectful of that nation's sovereignty. The same is true of service that the foreign sovereign itself undertakes in response to the various types of requests identified in proposed subdivision (c)(3)(D)(ii)(b). Moreover, as described more fully in memoranda prepared for the Subcommittee by the Department of Justice, the Criminal Division's Office of International Affairs will be involved in assisting individual prosecutors in determining which means of service will be most effective in individual cases, and in consulting with the Department of State regarding any special concerns.

### 2. Other forms of service not prohibited by an applicable international agreement

In addition to the three enumerated means of service in proposed (c)(3)(D)(i) and (ii)(a) and (b), the proposal contains an open-ended provision in (c)(3)(D)(ii)(c) that allows service by other means that give notice and are not prohibited by an applicable international agreement. This provision provides flexibility for cases in which service cannot be made (or made without undue difficulty) by the enumerated means.[8] It imposes only two criteria: the means chosen must (1) give notice to the defendant and (2) not be prohibited by an applicable international agreement. (As explained in the Committee note, this refers to an agreement that has been ratified by the United

---

[8]The Subcommittee considered and rejected a requirement that would permit service under (D)(ii)(c) only when service in a manner authorized by the foreign jurisdiction's law, undertaken by the foreign authority, or by stipulation was unavailable. The Subcommittee concluded that it would be unnecessarily burdensome to require the government to demonstrate that it had tried and failed to effect service in these ways.

6

States and the foreign jurisdiction and is in force.)

The Subcommittee drew this language from Fed. R. Civ. P. 4(f)(3), which provides for foreign service on an organization, but rejected an approach that would have more closely tracked that provision word for word. Civil Rule 4(f)(3) authorizes service "by other means not prohibited by international agreement, <u>as the court orders</u>."(emphasis added). Although there might be advantages to requiring judicial approval before service of a criminal summons could be made in a foreign country by other unspecified means, the Subcommittee concluded that this procedure raised difficult questions of international law and the institutional roles of the courts and the executive branch.

These issues would be raised most starkly by a request for judicial approval of service of criminal process in a foreign country without its consent or cooperation, and in violation of its laws. Fed. R. Civ. P. 4(f)(3) appears to permit such a request.[9] Although the records of the approval of that provision are sparse, it appeared to have generated significant concern for that reason. The Committee Note accompanying the change makes an oblique reference to the issue. It states (emphasis added):

> Inasmuch as our Constitution requires that reasonable notice be given, an earnest effort should be made to devise a method of communication that is consistent with due process <u>and minimizes offense to foreign law.</u>

Service of a criminal summons in the territory of another nation without its consent risks not only offense to the law of that nation, but also a violation of international law. It is "a general rule" of international law that "states do not seek to exercise civil or criminal jurisdiction over foreign nationals in foreign states."[10] States may proscribe extraterritorial conduct in certain instances, such as when they prohibit conduct that targets or substantially affects the legislating state.[11] But when it comes to enforcement of the law, "a State may not act within the territory of another State."[12]

---

[9]Where there is no internationally agreed means of service prescribed, Fed. R. Civ. P. 4(f)(2) then authorizes service by various means and Fed. R. Civ. P. 4(f)(3) provides for service by "any other means not prohibited by international agreement, as the court orders." Although Fed. R. Civ. P. (f)(2)(C) precludes service "prohibited by the foreign country's law," that restriction is absent from Fed. R. Civ. P. 4(f)(3).

[10]1 OPPENHEIM'S INTERNATIONAL LAW § 139, at 466 (Sir Robert Jennings & Sir Arthur Watts eds., 9th ed. 1996) ("OPPENHEIM").

[11]See D.P. CONNELL, INTERNATIONAL LAW 658-59 (1965) ("O'CONNELL"); <u>see generally</u> OPPENHEIM § § 136-40, at 456-79.

[12]O'CONNELL at 659.

7

Thus, "[s]o long as they avoid falling within the territorial jurisdiction of the prescribing State," foreign nationals "remain immune from its enforcement measures."[13] Professor Brownlie of Oxford, in his treatise on international law, states that the international law prohibition on extraterritorial enforcement is broad and it reaches the precise action at issue here: the service of a summons in a foreign country. "Persons may not be arrested, a summons may not be served, police or tax investigations may not be mounted, orders for production of documents may not be executed, on the territory of another state, except under the terms of a treaty or other consent given." IAN BROWNLIE, PRINCIPLES OF PUBLIC INTERNATIONAL LAW 306 (6th ed. 2003) (emphasis added). In context, the concluding reference to a "treaty" and "consent" appears to mean a treaty entered into or consent given by the foreign jurisdiction.

The Department of Justice noted that any request for approval of service in a foreign nation without its cooperation or consent would be sought only as a last resort, and only after the Criminal Division's Office of International Affairs and representatives of the Department of State had considered the foreign policy and reciprocity implications of such an action. The Department also stressed the Executive Branch's primacy in foreign relations and its obligation to ensure that the laws are faithfully executed. Finally, the Department noted that the federal courts are not deprived of jurisdiction to try a defendant whose presence before the court was procured by illegal means. This principle was reaffirmed in United States v. Alvarez-Machain, 504 U.S. 655 (1992) (holding that abduction of defendant in Mexico in violation of extradition treaty did not deprive court of jurisdiction).

The Subcommittee noted that in cases such as Alvarez-Machain the defendant has been brought before the court by the executive without any prior approval by the judiciary. Under a rule tracking Fed. R. Civ. P. 4(f)(3) in contrast, a court might be asked to give advance approval of service contrary to the law of another state and in violation of international law. Subcommittee members expressed concern that it was inappropriate to place the court in this position, and also questioned whether a rule expressly authorizing an act that arguably violates international law and the law of a foreign country might go beyond the authority granted by the Rules Enabling Act.

Recognizing that Civil Rule 4(f)(3) authorizes the court to order service that may violate the law of a foreign country as long as it is not prohibited by international agreement, the Subcommittee nevertheless decided to omit a requirement of prior judicial approval from its proposed amendment to Criminal Rule 4. In cases that fall under proposed Fed. R. Crim. P. 4(c)(3)(D)(ii)(c), the executive alone will make the determination whether this is the rare case in which the public interest in prosecution outweighs the costs of violating provisions of foreign law or general principles of international law. This provides both notice and the necessary flexibility to achieve service in an efficient and effective manner while respecting the respective institutional roles of the courts and the executive branch.

---

[13]Id.; see OPPENHEIM at 467 ("states cannot, of course, exercise [criminal] jurisdiction as long as the foreigner concerned remains outside their territory").

8

The Subcommittee noted that eliminating a requirement for prior judicial approval may also be preferable from the defense perspective. A member of the Subcommittee noted that prior judicial approval would place a defendant later challenging the effectiveness of the notice provided in a difficult position. In effect, the defendant would be asking the judge who approved the service to change her mind, rather than to consider a question of first impression.

During the discussion of the possibility that service might be made in another country without its consent, some members of the Subcommittee expressed support for a procedure that would require prior approval of the Attorney General or the Deputy Attorney General. Although it might be desirable for review to occur at the highest levels of the Department of Justice, it is doubtful whether that requirement could be imposed by the Federal Rules of Criminal Procedure. A similar issue was raised during the consideration of the amendment to Rule 15(c)(3) permitting depositions to be taken in foreign countries without the defendant being physically present. In that instance, the Committee concluded that although Congress may require the approval of designated officials, the Rules of Criminal Procedure could not dictate the internal approval process within the Department of Justice.

Style changes to the proposed amendment were received after the Subcommittee completed its deliberations. Professor Kimble recommended omitting the word "applicable" from the phrase "applicable international agreement" in proposed (c)(3)(D)(ii)(c). The reporters believe this change is substantive and therefore have left the word "applicable" in both versions of the proposed amendment attached. The remaining style recommendations affecting (c)(3)(D)(ii) are raised for full Committee discussion. To facilitate consideration of whether the remaining style recommendations would change the meaning of the proposed amendment, two versions of the proposed amendment are provided, one that incorporates these recommended style changes, and an alternative version that does not.

9

**THIS PAGE INTENTIONALLY BLANK**

Cited in In re A warrant to Search email account controlled maintained by Microsoft 13Mag2814 Decided 4/25/14

Archived on 5/6/14

This document is protected by copyright. Further reproduction is prohibited without permission.

# TAB 3B

Cited in In re A warrant to Search email account controlled maintained by Microsoft 13Mag2814 Declassified 4/25/14 Archived on 5/6/14 This document is protected by copyright. Further reproduction is prohibited without permission.

**THIS PAGE INTENTIONALLY BLANK**

Cited in In re A warrant to Search email account controlled maintained by Microsoft 13Mag2814 Decided 4/25/14

Archived on 5/6/14

This document is protected by copyright. Further reproduction is prohibited without permission.

## Rule 4.  Arrest Warrant or Summons on a Complaint

1      **(a) Issuance.** If the complaint or one or more affidavits filed with the complaint
2      establish probable cause to believe that an offense has been committed and that the
3      defendant committed it, the judge must issue an arrest warrant to an officer
4      authorized to execute it. At the request of an attorney for the government, the judge
5      must issue a summons, instead of a warrant, to a person authorized to serve it. A
6      judge may issue more than one warrant or summons on the same complaint. If an
7      individual defendant fails to appear in response to a summons, a judge may, and
8      upon request of an attorney for the government must, issue a warrant.  If an
9      organizational defendant fails to appear in response to a summons, a judge may take
10     any action authorized by law.
11                                              * * *
12     **(c) Execution or Service, and Return.**
13     **(1) *By Whom.*** Only a marshal or other authorized officer may execute a
14     warrant.  Any person authorized to serve a summons in a federal civil action
15     may serve a summons.
16     **(2) *Location.*** A warrant may be executed, or a summons served, within the
17     jurisdiction of the United States or anywhere else a federal statute authorizes
18     an arrest.  A summons may also be served at a place not within a judicial
19     district of the United States [under subdivision (c)(D)].[1]
20     **(3) Manner.**
21          (A) A warrant is executed by arresting the defendant.  Upon arrest, an
22          officer possessing the original or a duplicate original warrant must show it
23          to the defendant.  If the officer does not possess the warrant, the officer
24          must inform the defendant of the warrant's existence and of the offense
25          charged and, at the defendant's request, must show the original or a
26          duplicate original warrant to the defendant as soon as possible.
27          (B) A summons is served on an individual defendant:
28               (i) by delivering a copy to the defendant personally; or
29               (ii) by leaving a copy at the defendant's residence or usual place of abode
30               with a person of suitable age and discretion residing at that location and
31               by mailing a copy to the defendant's last known address.
32          (C) A summons is served on an organization in a judicial district of the
33          United States by delivering a copy to an officer, to a managing or general
34          agent, or to another agent appointed or legally authorized to receive service
35          of process.  A copy If the agent is one authorized by statute and the statute so
36          requires, a copy must also be mailed to the organization organization's last

---

[1]The Subcommittee has not considered the bracketed language here or in the Committee
Note. In preparing this report, the Reporters noted that the language approved by the
Subcommittee might be read to permit service on individual defendants outside of the United
States under (c)(3)(B).  If the Committee shares this concern, the bracketed language would
address it.

| | |
|---|---|
| 37 | known address within the district or to its principal place of business |
| 38 | elsewhere in the United States. |
| 39 | (D) A summons is served on an organization not within a judicial district |
| 40 | of the United States: |
| 41 | (i) by delivering a copy, in a manner authorized by the foreign |
| 42 | jurisdiction's law, to an officer, to a managing or general agent, or to |
| 43 | another agent appointed or legally authorized to receive service of |
| 44 | process; or |
| 45 | (ii) by any other means that gives notice, including one [a means]: |
| 46 | (a) that the parties stipulate to; |
| 47 | (b) that a foreign authority undertakes in response to a letter rogatory, a |
| 48 | letter of request, or a request submitted under an applicable international |
| 49 | agreement; or |
| 50 | (c) that is not prohibited by an applicable international agreement. |

## COMMITTEE NOTE

**Subdivision (a).** The amendment addresses a gap in the current rule, which makes no provision for organizational defendants who fail to appear in response to a criminal summons. The amendment explicitly limits the issuance of a warrant to individual defendants who fail to appear, and provides that the judge may take whatever action is authorized by law when an organizational defendant fails to appear. The rule does not attempt to specify the remedial actions a court may take when an organizational defendant fails to appear.

**Subdivision (c)(2).** The amendment authorizes service of a criminal summons [on an organization] outside a judicial district of the United States.

**Subdivision (c)(3)(C).** The amendment makes two changes to subdivision (c)(3)(C) governing service of a summons on an organization. First, like Civil Rule 4(h), the amended provision does not require a separate mailing to the organization when delivery has been made in the United States to an officer or to a managing or general agent. Service of process on an officer, managing, or general agent is in effect service on the principal. Mailing is required when delivery has been made on an agent authorized by statute, if the statute itself requires mailing to the entity.

Second, also like Civil Rule 4(h), the amendment recognizes that service outside the United States requires separate consideration, and it restricts Rule 4(c)(3)(C) and its modified mailing requirement to service on organizations within the United States. Service upon organizations outside the United States is governed by new subdivision (c)(3)(D).

These two modifications of the mailing requirement remove an unnecessary impediment to the initiation of criminal proceedings against organizations that commit domestic offenses but have no place of business and mailing address within the United States. Given the realities of today's global economy, electronic communication, and federal criminal practice, the mailing requirement should not shield a defendant organization when the Rule's core objective — notice of pending criminal proceedings — is accomplished.

**Subdivision (c)(3)(D).** This new subdivision states that a criminal summons may be served on an organizational defendant outside the United States and enumerates a non-exhaustive list of permissible means of service that provide notice to that defendant.

Although it is presumed that the enumerated means will provide notice, whether notice has been provided may be challenged in an individual case.

**Subdivision (c)(3)(D)(i).** Subdivision (i) notes that a foreign jurisdiction's law may authorize delivery of a copy of the criminal summons to an officer, to a managing or general agent. This is a permissible means of serving an organization outside of the United States, just as it is for organizations within the United States. The subdivision also recognizes that a foreign jurisdiction's law may provide for service of a criminal summons by delivery to an appointed or legally authorized agent in a manner that provides notice to the entity, and states that this is an acceptable means of service.

**Subdivision (c)(3)(D)(ii).** Subdivision (ii) provides a non-exhaustive list of other permissible means of giving service on organizations outside the United States, all of which must be carried out in a manner that "give[s] notice."

Paragraph (a) allows service by a means stipulated by the parties.

Paragraph (b) authorizes service by the diplomatic methods of letters rogatory and letters of request, and the last clause of the paragraph provides for service under international agreements that obligate the parties to provide broad measures of assistance, including the service of judicial documents. These include crime-specific multilateral agreements (e.g., the United Nations Convention Against Corruption (UNCAC), S. Treaty Doc. No. 109-6 (2003)), regional agreements (e.g., the Inter-American Convention on Mutual Assistance in Criminal Matters (OAS MLAT), S. Treaty Doc. No. 105-25 (1995)), and bilateral agreements.

Paragraph (c) recognizes that other means of service that provide notice and are not prohibited by an applicable international agreement are also acceptable when serving organizations outside the United States.

As used in this rule, the phrase "applicable international agreement" refers to an agreement that has been ratified by the U.S. and the foreign jurisdiction and is in force.

Cited in In re A warrant to Search email account controlled maintained by Microsoft 13Mag2814 Decided 4/25/14 Archived on 5/6/14 This document is protected by copyright. Further reproduction is prohibited without permission.

# TAB 3C

Cited in In re A warrant to Search email
account controlled maintained by Microsoft
13Mag2814 Declared 4/25/14
Archived on 5/6/14
This document is protected by copyright.
Further reproduction is prohibited without permission.

**THIS PAGE INTENTIONALLY BLANK**

**[Version rejecting style changes to (D)(ii)]**
**Rule 4.   Arrest Warrant or Summons on a Complaint**

1        * * *

2            (D) A summons is served on an organization not within a judicial district
3        of the United States:
4            (i) by delivering a copy, in a manner authorized by the foreign
5        jurisdiction's law, to an officer, to a managing or general agent, or to
6        another agent appointed or legally authorized to receive service of
7        process; or
8            (ii) by other means that give notice, including:
9                (a)  a stipulation between the parties;
10               (b)  a means that a foreign authority undertakes in response to a letter
11           rogatory, a letter of request, or a request submitted under an applicable
12           international agreement; or
13               (c) a means not prohibited by an applicable international agreement.

Cited in In re A warrant  maintained by Microsoft account controlled  to Samsung email 13Mag2814 Decided 4/25/14 Archived on 5/6/14 This document is protected by copyright. Further reproduction is prohibited without permission.

**THIS PAGE INTENTIONALLY BLANK**

Cited in In re A warrant to Search email account controlled maintained by Microsoft 13Mag2814 Decided 4/25/14 Archived on 5/6/14 This document is protected by copyright. Further reproduction is prohibited without permission.

# TAB 3D

Cited in In re A warrant to Search email
account controlled maintained by Microsoft
13Mag2814 Decided 4/25/14
Archived on 5/6/14
This document is protected by copyright.
Further reproduction is prohibited without permission.

**THIS PAGE INTENTIONALLY BLANK**

Cited in In re A warrant to Search email account controlled maintained by Microsoft 13Mag2814 Decided 4/25/14 Archived on 5/6/14 This document is protected by copyright. Further reproduction is prohibited without permission.



**U.S. Department of Justice**

Criminal Division

*Office of the Assistant Attorney General*          *Washington, D.C. 20530*

October 25, 2012

The Honorable Reena Raggi
Chair, Advisory Committee on the Criminal Rules
704S United States Courthouse
225 Cadman Plaza East
Brooklyn, NY 11201-1818

Dear Judge Raggi,

The Department of Justice recommends amendments to Rule 4 of the Federal Rules of Criminal Procedure to permit the effective service of a summons on a foreign organization that has no agent or principal place of business within the United States. We view the proposed amendments to be necessary in order to effectively prosecute foreign organizations that engage in violations of domestic criminal law.

First, we recommend that Rule 4 be amended to remove the requirement that a copy of the summons be sent to the organization's last known mailing address within the district or principal place of business within the United States. Second, we recommend that Rule 4 be amended to provide the means to serve a summons upon an organization located outside the United States. The proposed amendments are necessary to ensure that organizations that commit domestic offenses are not able to avoid liability through the simple expedients of declining to maintain an agent, place of business and mailing address within the United States.

When a person located abroad violates the laws of the United States, that person may be held criminally liable despite the fact the person has never set foot in the United States. *Ford v. United States*, 273 U.S. 593, 623 (1927) (exercising jurisdiction and affirming convictions of British citizens for conspiring to import liquor into United States, where some conspirators had not entered the United States), *Laker Airways Ltd. v. Sabena, Belgian World Airlines*, 731 F.2d 909, 922 (D.C. Cir. 1974) ("[W]hen a malefactor in State *A* shoots a victim across the border in State *B*, State *B* can proscribe the harmful conduct.").

Organizations, such as foreign corporations, are not excepted from this principle. *See, e.g., United States v. Philip Morris USA, Inc.*, 566 F.3d 1095, 1130-31 (D.C. Cir. 2009) (tobacco company conducted secret nicotine research abroad and participated in international organizations instrumental to perpetuation of wide-scale fraud within the United States);

*United States v. Inco Bank & Trust Corp.*, 845 F.2d 919, 920-21 (11th Cir. 1988) (citing *Ford*). *See also* Restatement (Second) of Conflict of Laws § 50 (1971) ("A state has power to exercise judicial jurisdiction over a foreign corporation which causes effects in the state by an act done elsewhere with respect to any cause of action arising from these effects unless the nature of these effects and of the corporation's relationship to the state makes the exercise of such jurisdiction unreasonable."). Nor is there any good reason to create such an exception; organizations, by their very nature, may facilitate collective criminal action among individuals, thereby posing a greater threat than a lone actor. Indeed, the Supreme Court has explained that there is a compelling need to punish the sort of collective criminal action an organization may foster:

> [C]ollective criminal agreement – partnership in crime – presents a greater potential threat to the public than individual delicts. Concerted action both increases the likelihood that the criminal object will be successfully attained and decreases the probability that the individuals involved will depart from their path of criminality. Group association for criminal purposes often, if not normally, makes possible the attainment of ends more complex than those which one criminal could accomplish. Nor is the danger of a conspiratorial group limited to the particular end toward which it has embarked. Combination in crime makes more likely the commission of crimes unrelated to the original purpose for which the group was formed.

*Callanan v. United States*, 364 U.S. 587, 593-94 (1961).

When the Federal Rules of Criminal Procedure entered into force in March 1946, organizations, including corporations, were rarely charged as defendants in and of themselves. Organizations, such as domestic corporations, were established, conducted activities, and expectedly maintained a presence in the United States. Organizational leadership generally included an officer, a managing or general agent, or another agent appointed or legally authorized to receive service of process. Use of mail was ordinary. Rule 4(c) – former Rule 9(c) – regarding serving a summons on an organization reflected these realities and imposed a duty on the government to serve the summons on an individual, such as an officer or agent – the delivery requirement – and to mail the summons to the organization's last known address within the district or its principal place of business in the United States – the mailing requirement. In practice, neither the accused nor the government received "an undue advantage over the other" with the inclusion of the delivery and mailing requirements. New York University School of Law Institute, *Federal Rules of Criminal Procedure, With Notes and Proceedings*, at iv (1946).

The environment that influenced the original drafters of the Federal Rules of Criminal Procedure no longer exists. The economy is global. Electronic communications continue to displace ordinary mail. Organizations can maintain no office or agent in the United States, yet

conduct both real and virtual activities here. This new reality has affected federal criminal practice fundamentally. Indeed, court decisions show that a growing class of organizations, particularly foreign corporations, has gained "an undue advantage" over the government relating to the initiation of criminal proceedings.

While foreign corporations and other organizations may be punished for violations of United States law, even if they have not established a formal presence in the United States, Rule 4 repeatedly has been construed to substantially impair prosecution of foreign organizations – simply because they do not have an agent or maintain a mailing address within the United States. For example, in *United States v. Johnson Matthey Plc*, No. 2:06-CR-169 DB, 2007 WL 2254676, at *1 (D. Utah, Aug. 2, 2007), the defendant organization, Johnson Matthey Plc, was charged with, among other things, conspiring with others to discharge contaminated wastewater at a Salt Lake City facility and concealing this illegal activity.[1] The defendant organization was incorporated under the laws of England and Wales, with a principal place of business in London. *Id.*

In assessing the government's efforts to serve a summons on the defendant organization, the court explained that Rule 4(c)(3)(C) contains two requirements: first, that the summons be served on an officer or agent – a service requirement – and second, that a copy of the summons be mailed to the organization's last known address within the district or its principal place of business in the United States – a mailing requirement. *Johnson Matthey Plc*, 2007 WL 2254676 at *1. The government initially attempted to satisfy the latter requirement by sending the summons to two locations: a refinery as well as an office operated by a U.S.-based wholly-owned subsidiary of the defendant (Johnson Matthey, Inc.). *Id.*

The court decided that the mailing of the summons to both locations was insufficient to satisfy Rule 4 because under established law, service of a summons on a subsidiary does not constitute service on the parent corporation. *Johnson Matthey Plc*, 2007 WL 2254676 at *1.[2] Thereafter, the government renewed its efforts to comply with the summons requirement by, among other things, sending a copy of the summons via Federal Express to defendant Johnson Matthey Plc's legal department in London. *Id.* at *2. Although the government argued that the defendant had "ample notice" that proceedings had been initiated against it, the court explained that "ample notice" simply was not sufficient:

---

[1] *See Johnson Matthey Plc*, No. 2:06-CR-169 (D. Utah) [Docket #47].

[2] Several courts have ruled that service of process on a subsidiary is insufficient to constitute service on the parent, if corporate formalities are observed. *E.g., Davies v. Jobs & Adverts Online Gmbh*, 94 F. Supp. 2d 719, 722-23 (E.D. Va. 2000) ("[S]ervice of process on a foreign defendant's wholly owned subsidiary is not sufficient to effect service on the foreign parent so long as the parent and the subsidiary maintain separate corporate identities.").

> While the government has served Johnson Matthey's Salt Lake
> Refinery; Johnson Matthey, Inc. in Wayne, PA; and to Johnson
> Matthey PLC's legal department in London, none of those
> locations qualify under the rule as "the organization's last known
> address within the district or to its principal place of business
> elsewhere in the United States." JM Plc has not been shown to be
> present in the District of Utah and does not now have, nor has it
> ever had, an address in the District, or a place of business within
> the United States.

*Id.* Accordingly, the court granted the defendant's motion to quash the summons. In doing so,
the court suggested that service might be accomplished by resorting to the Mutual Legal
Assistance Treaty between the United States and the United Kingdom, *id.,* but did not explain
how the treaty would enable the United States to comply with Rule 4's requirement that the
organization be served at its principal place of business within the United States.[3]

Recently, another court, relying in part upon the reasoning of *Johnson Matthey,* granted a
foreign organization's motion to quash a summons. In *United States v. Pangang Group Co., Ltd.*,
No. CR 11-00573 JSW, 2012 WL 3010958, at *1 (N.D. Cal., July 23, 2012), four foreign
organizations, one of them a state-owned enterprise of the People's Republic of China
(collectively, the "Pangang Defendants"), were charged with participating in a conspiracy to
commit economic espionage, conspiracy to commit theft of trade secrets, and attempted
economic espionage. As in *Johnson Matthey,* the Pangang Defendants appeared specially to
challenge the government's service of summons on them. The government attempted to
establish, through the submission of various affidavits, that its service of the summons on a
United States subsidiary of the Pangang Defendants was sufficient for purposes of Rule 4's first
requirement that the summons be served on an authorized agent of the organization. *Id.* at *1-9.[4]
However, for all but one defendant, the court found that the government had not proven that the
United States subsidiary was, in fact, a general agent of the Pangang Defendants, and therefore
the court quashed the summons as to three of the four foreign organizations. *Id.*

Furthermore, the court concluded that the summons as to all Pangang Defendants could
be quashed on grounds that the government had failed to comply with Rule 4's mailing

---

[3] In a different context, the Third Circuit has rejected an attempt to effectuate service of process via an international
treaty when the applicable rule required service to occur within the "forum state." *See DeJames v. Magnifience
Carriers, Inc.*, 654 F.2d 280, 287-90 (3d Cir. 1981).

[4] Among other things, the government pointed to evidence demonstrating that the Pangang Defendants (i) used the
United States subsidiary to conduct their operations in the United States; (ii) sent employees from China to staff the
operations of the United States subsidiary; and (iii) paid the legal fees of employees who became subjects of the
government's investigation in the United States. *See United States v. Pangang Group Co., Ltd.*, No. CR 11-0573
JSW (N.D. Cal. Apr. 19, 2012) [Docket #122 at 3-13].

Copyright © [illegible] Warranted to Search Engine [illegible] Microsoft [illegible] document [illegible] copyright. [illegible] without permission. [illegible] Reproduction [illegible] permission.

requirement. *Id.* at *9-14. Although the government argued that mailing the summons to a foreign organization's general agent located in the United States was sufficient to comply with Rule 4, in that the foreign organization had ample notice of the legal proceedings, the court rejected this argument because it was "not persuasively supported" by criminal cases considering the application of Rule 4. *Id.* at *10 (citing *Johnson Matthey*). While the court allowed for the possibility that the mailing requirement of Rule 4 might be satisfied by sending the summons to a foreign organization's general agent in the United States, if the general agent was nothing more than the "alter ego" of the foreign organization, the court concluded that the government had not made that showing. *Id.* at *11-13.[5] Similarly unavailing was the government's argument that it could not effectuate service through its Mutual Legal Assistance Agreement with China, based on the government's considered view that China would not effectuate service on any Pangang Defendant pursuant to the terms of the international agreement. *Id.* at *14.[6]

We are concerned that other courts will adopt the reasoning of *Johnson Matthey*, *Pangang Group* and similar cases – reasoning we believe is contrary to sound public policy and the purpose of the rules. Rule 4 can be and has been read to preclude jurisdiction in criminal cases against criminal organizations, even when they are provided with ample notice of the proceedings, merely because the criminal organizations do not have an agent or a postbox in the United States. Indeed, Rule 4 may act as an impediment to prosecution despite the fact that a defendant organization maintains extensive contacts with the United States. In *Johnson Matthey*, the defendant organization conspired to discharge contaminated wastewater in the United States; in *Pangang Group*, the foreign organizations conducted business in the United States through their subsidiary, which they staffed with their own employees. Accordingly, the United States may be faced with the anomalous result that a private civil litigant will be able to pursue an action against an organization while the government remains helpless to vindicate the laws of the United States through a corresponding criminal proceeding.[7]

---

[5] The government attempted to rely on the same "alter ego" theory to overcome the hurdles posed by Rule 4 in another case, *United States v. Alfred L. Wolff GmbH*, No. 08 CR 417, 2011 WL 4471383, at *4-8 (N.D. Ill. Sept. 26, 2011), but similarly failed to persuade the court that a United States co-defendant was merely an alter ego of several foreign organizations. Piercing the corporate veil is challenging because courts have required the government to carry the "heavy burden" of proving that the corporate form is a sham and merely exists as a vehicle for perpetrating a fraud. *Id.* at *4-5 (citations omitted).

[6] The court did not consider whether service of the summons pursuant to this agreement would satisfy Rule 4 in any event. *See* note 3, *supra*.

[7] Another example is provided by a pending case, *United States v. Dotcom*, No. 1:12-CR-3 (E.D. Va. 2012). A grand jury returned an indictment against foreign organization Megaupload Limited and other defendants on racketeering, copyright infringement and money laundering charges. In response, Megaupload Limited – a foreign organization that has an extensive presence in the United States (it allegedly leased more than 1,000 servers in the United States, facilitated the distribution of illegally reproduced works throughout the United States, and has caused damages in excess of $500 million to victims) – has specially appeared and argued that it is immune from prosecution in the United States simply because it does not have an agent or mailing address in the United States: "Megaupload does not have an office in the United States, nor has it had one previously. Service of a criminal

From the Department's perspective, Rule 4(c) should be amended to ensure that the means of service reflects the realities of today's global economy, electronic communication, and federal criminal practice. A defendant organization should no longer find refuge in the mailing requirement, when the Rule's core objective – notice of pending criminal proceedings – is established.

The Department examined the service provisions of the Federal Rules of Civil Procedure to determine to what extent one or more of the provisions might enhance, if at all, federal criminal practice. The Department reviewed the proceedings of the Institute that reviewed the initial set of the Federal Rules of Criminal Procedure, along with myriad civil and criminal cases concerning service. In fashioning the proposed amendments, we decided that elements of the Federal Rules of Civil Procedure could provide a basis for the proposed amendments, but disfavored direct incorporation of those rules. The greater public aims of criminal process – condemnation of specific acts and deterrence – are distinct from those in civil process – private damages. This distinction justifies a higher burden on the government for serving a criminal defendant.

For that reason, the Department continues to favor personal delivery on "an officer, to a managing or general agent, or to another agent appointed or legally authorized to receive service of process" to put an organization – domestic or foreign – on notice that criminal charges have been filed. We propose, however, removing the mailing requirement from the rule. If delivery is not possible on "an officer, to a managing or general agent, or to another agent appointed or legally authorized to receive service of process" of a foreign organization, then our proposal provides five additional options reasonably calculated to give notice to that foreign organization.

Accordingly, we recommend the following changes to Rule 4:

**Rule 4. Arrest Warrant or Summons on a Complaint**

* * *

(c) EXECUTION OR SERVICE, AND RETURN.

(1) *By Whom.* Only a marshal or other authorized officer may execute a warrant. Any person authorized to serve a summons in a federal civil action may serve a summons.

---

summons on Megaupload is therefore impossible, which forecloses the government from prosecuting Megaupload." *United States v. Dotcom*, No. 1:12-CR-3 (E.D. Va. 2012) [Docket #115 at 1, 6] (citing *Johnson Matthey*, 2007 WL 2254676, at *2). A similar defense is not available under Rule 4 of the Federal Rules of Civil Procedure.

(2) *Location.* A warrant may be executed, or a summons served, within the jurisdiction of the United States or anywhere else a federal statute authorizes an arrest.  <u>A summons may also be served at a place not within a judicial district of the United States.</u>

(3) *Manner.*

(A) A warrant is executed by arresting the defendant.  Upon arrest, an officer possessing the original or a duplicate original warrant must show it to the defendant.  If the officer does not possess the warrant, the officer must inform the defendant of the warrant's existence and of the offense charged and, at the defendant's request, must show the original or a duplicate original warrant to the defendant as soon as possible.

(B) A summons is served on an individual defendant:

(i) by delivering a copy to the defendant personally; or

(ii) by leaving a copy at the defendant's residence or usual place of abode with a person of suitable age and discretion residing at that location and by mailing a copy to the defendant's last known address.

(C) A summons is served on an organization <u>at a place within a judicial district of the United States</u> by delivering a copy to an officer, to a managing or general agent, or to another agent appointed or legally authorized to receive service of process. ~~A copy must also be mailed to the organization's last known address within the district or to its principal place of business elsewhere in the United States.~~

(D) <u>A summons is served on an organization at a place not within a judicial district of the United States:</u>

(i) <u>by delivering a copy to an officer, to a managing or general agent, or to another agent appointed or legally authorized to receive service of process, in a manner authorized under the laws of the foreign jurisdiction where the officer or agent to be served is located, or</u>

(ii) <u>by other means reasonably calculated to give notice, including</u>

<u>a) a stipulated means of service;</u>

<u>b) a means that a foreign authority undertakes in response to a letter rogatory or letter of request;</u>

<u>(c) a means that a foreign authority undertakes in response to a request submitted under an applicable international agreement;</u>

<u>(d) a means otherwise permitted under an applicable international agreement; or</u>

<u>(e) other means upon request of an attorney for the government, as the court orders.</u>

Rule 4(c)(2) would be amended to allow service of a summons outside the United States. In particular, with the amendment, organizations could now be served in the United States or "at

a place not within a judicial district of the United States." This language follows the language for jurisdiction set forth in the Federal Rules of Civil Procedure.

Rule 4(c)(3)(C) would be amended to focus exclusively on an organization at a place within a judicial district of the United States. As noted above, the Department suggests mirroring this jurisdictional language of the Federal Rules of Civil Procedure. Under the amended language, notice involving domestic organization would still require personal service. The amendment would remove the mailing requirement for service of a summons on a domestic organization.

Delivery of the summons on an organization outside the United States – at a place not within a judicial district of the United States – would now be addressed in a new Rule 4(c)(3)(D). The new subsection (D)(i) would provide that a copy of the summons must be delivered to an officer, a managing or general agent, or another agent appointed or legally authorized to receive service of process. Our aim is to preserve personal service to meet notice obligations, if possible. As a result, subsection (D)(i) mirrors the language concerning personal service as expressed in (C), but places an additional obligation to provide service in a "manner authorized under the laws of the foreign jurisdiction" where the individual to be served is located.

The new subsection (D)(ii) would provide five distinct alternatives that are reasonably calculated to provide notice. Subsection (D)(ii)(a) acknowledges that the government and the defendant corporation can stipulate to the means of service. An assumption of the Federal Rules of Civil Procedure is that parties are expected to stipulate to the terms of service, given the presumption of waiver. The Department thinks organizational defendants should have the option to stipulate to service, and therefore we include this option in the proposed amendment. Subsection (D)(ii)(b) focuses on those instances when the United States government may not have an applicable treaty with the country where the defendant corporation is located or conducts business. In those instances, the government may ask the court to issue a letter rogatory or the government may send a letter of request to the foreign government. Subsection (D)(ii)(c) focuses on those instances when the government may have a treaty relationship with the foreign government where the defendant corporation is located or conducts business and the treaty provides for service of process. In either case – (D)(ii)(b) or (c) – it is important to note that the foreign government might in fact provide personal service, the Department's preferred method of service.

Subsection (D)(ii)(d) encompasses those instances when an applicable international agreement may not articulate a basis for service, though a means the government proposes is otherwise permissible under the agreement. As an example, a mutual legal assistance treaty often includes a provision concerning service, though specific modes of service are not identified. These treaties permit the requesting state to propose a mode of service in conformity with its domestic law and, by the terms of the treaty, often obligate the requested state to execute a request as presented unless following the requesting state's law would violate the requested

state's law.  This provision is also prospective, acknowledging that future agreements may also permit service.

The final subsection (D)(ii)(e) is intended to permit the government to fashion a mode of service that is reasonably calculated to provide notice and seek the court's endorsement of the mode proposed.

- - -

These amendments to Rule 4 are designed to ensure that foreign organizations do not avoid criminal prosecution in the United States merely because the organization chooses not to keep an agent and mailing address in the United States.  Moreover, in those instances where foreign organizations cannot be served within a judicial district, the amendment provides a mechanism for alternate service.  These alternate means of service are already available to civil litigants under Rule 4 of the Federal Rules of Civil Procedure.  *See* Fed. R. Civ. P. 4(f), (h)(2).[8]  Accordingly, we believe these procedures are sufficient to give defendant organizations reasonable notice of criminal actions pending against them.

We appreciate your assistance with this proposal and I look forward to working with the Committee on this issue.

Sincerely,

Lanny A. Breuer
Assistant Attorney General

cc:     Professor Sara Sun Beale, Reporter
        Professor Nancy J. King, Reporter

---

[8] The proposed amendment to Rule 4 would thus update the Federal Rules of Criminal Procedure so that the summons provision once again resembles the summons provision found in the Federal Rules of Civil Procedure. *See* Fed. R. Crim. P. 4 (advisory committee note, 1944 adoption) ("Service of summons under the rule is substantially the same as in civil actions under Federal Rules of Civil Procedure, Rule 4(d)(1) . . . .").

Cited in In re Award of each email account controlled by Microsoft 13Mag2814 Decided on 5/8/14 Archived on 5/8/14 This document is protected by copyright. Under reproduction is prohibited without permission.

**THIS PAGE INTENTIONALLY BLANK**

Cited in In re A warrant to Search email account controlled maintained by Microsoft 13Mag2814 Decided 4/25/14 Archived on 5/6/14 This document is protected by copyright. Further reproduction is prohibited without permission.

# TAB 3E

Cited in In re A warrant to Search email account controlled maintained by Microsoft 13Mag2814 Declared 4/25/14 Archived on 5/6/14 This document is protected by copyright. Further reproduction is prohibited without permission.

**THIS PAGE INTENTIONALLY BLANK**

Cited in In re A warrant to Search email account controlled maintained by Microsoft 13Mag2814 Decided 4/25/14

Archived on 5/6/14

This document is protected by copyright. Further reproduction is prohibited without permission.



**U.S. Department of Justice**

Criminal Division

---

*Office of the Assistant Attorney General*                    *Washington, D.C. 20530*

August 23, 2013

**MEMORANDUM**

**TO:**        Judge David M. Lawson
              Chair, Subcommittee on Rule 4

**FROM:**      Jonathan J. Wroblewski, Director
              Office of Policy and Legislation

              Kathleen A. Felton
              Deputy Chief, Appellate Section

**SUBJECT:**   Proposed Amendments to Rule 4

I.  Introduction

    This memorandum responds to the discussion on our August 19th conference call and also to your specific request to address four issues raised by the Subcommittee on the call.  You asked us to

1.  Provide a description of what the Department of Justice's approval process would be for the alternate means of service pursuant to Rule 4(c)(3)(D)(ii)(d);

2.  Provide a statement for the record that the Departments of Justice and State have considered reciprocity concerns should Rule 4 be amended to permit service of a U.S. summons in a manner that could contravene foreign law;

3.  Describe the practical consequences of service pursuant to Rule 4(c)(3)(D)(ii)(d); and

4.  Lay out the options that are available to a court when a summons is served on a foreign entity that ignores the order to appear.

    After the August 19th conference call, we consulted extensively with our colleagues within the Department of Justice and at the Department of State.  We considered further the Subcommittee's latest draft amendment, the proposed addition to Rule 4(c)(3)(D)(ii)(d) to

Cited in re A Warrant to Search email account controlled or maintained by Microsoft. 13-mag2814 Decided 4/25/14

Archived on 5/6/14

This document is protected by copyright. Further reproduction is prohibited without permission.

authorize other means of service *not prohibited by international agreement*, and the other concerns raised on the call.

We would very much like to develop consensus in the Subcommittee for the proposed amendment. In that spirit, we now are prepared to accept the additional language – "not prohibited by international agreement." We believe the language can work to effectuate service, notwithstanding the concerns we expressed on the call, and will also address the concerns raised by other members of the Subcommittee. However, we think two modifications are needed: first, that the language be amended to read "not prohibited by an applicable international agreement," consistent with the language used in Rule 4(c)(3)(D)(ii)(b) and (c); and second, we think it is important to add Committee Note language to address some of the scenarios we discussed on our call. The note language we suggest, modeled on similar note language accompanying Civil Rule 4(f), spells out in greater detail when alternate means of service might be appropriate.

> Paragraph (d) authorizes the court to approve other means of service not prohibited by an applicable international agreement. Some international agreements authorize other unspecified means of service in cases of urgency, when conventional methods will not permit service within the time required by the circumstances. Other means of service may also be justified by the failure of the foreign country's Central Authority to effect service pursuant to a bilateral or multilateral agreement, when there is no international agreement applicable, or when an agreement does not specify the type of legal assistance that can be sought or does not specify the means for serving a judicial document, such as a criminal summons. In such cases, the court, at the request of the attorney for the government, may direct a special means of service not explicitly authorized by international agreement if such means is not prohibited by any valid agreement ratified and in force.

We also believe one additional change to the draft is warranted to effectuate the Subcommittee's intent. Rule 4(c)(3)(D) should be amended to eliminate the phrase "at a place". The provision would then read: "A summons is served on an organization ~~at a place~~ not within a judicial district of the United States by any of the following means that is reasonably calculated to give notice:". In our prior discussions, the Subcommittee has contemplated that the alternate means of service under Rule 4(c)(3)(D)(ii) could take place within the United States, even though the organization is not within the United States. If the phrase "at a place" remains, the possibility of alternative service within the U.S. would arguably be eliminated.

We hope the Subcommittee will find this language acceptable. We look forward to discussing this further with you on our September 3rd conference call.

II. <u>DOJ's Approval Process for the Alternate Means of Service Pursuant to Rule 4(c)(3)(D)(ii)(d)</u>

As we have previously discussed, within the Department of Justice, the Criminal Division's Office of International Affairs (OIA) serves as the Central Authority and clearinghouse for all international criminal matters. Regardless of whether there is a treaty

relationship between the United States and the relevant foreign state, OIA ensures that the necessary steps are taken to effectuate service of a criminal summons on an appropriate representative or agent of that organization in accordance with U.S. and international law and consistent with U.S. foreign policy. OIA is staffed with specialists whose experience and training enable them to assess what process both complies with domestic and international law and will best effectuate service, and they will confer as needed with the State Department.

The U.S. Attorney's Manual and Departmental policy guidance instruct prosecutors on when and how to make a request for approval and assistance from OIA. *See* U.S. Attorneys' Manual, 9-13.500, *available at* http://www.justice.gov/usao/eousa/foia_reading_room/usam/title9/13mcrm.htm#9-13.500 (last visited August 20, 2013). Department policy requires prosecutors to seek approval from OIA when seeking any assistance abroad or taking "any act outside the United States relating to a criminal investigation or prosecution." *Id.*

OIA works with the Executive Office of United States Attorneys to ensure that the U.S. Attorney's Manual captures the Department's expectations about a prosecutor's need to work with and through OIA for all forms of assistance sought and in cases implicating foreign policy, including serving a criminal summons on a foreign organization. The Department is prepared to further amend the U.S. Attorney's Manual to make absolutely clear the need to obtain the approval of OIA before seeking any means of service outside the U.S. or otherwise involving a foreign organization under Rule 4.

III. <u>Reciprocity Concerns if the Rule were Amended to Permit U.S. Service in a Manner that Could Contravene Foreign Law</u>

When serving a criminal summons on a foreign organization at a place not within a judicial district of the United States pursuant to subsection (c)(3)(D) of the proposal, the United States will generally seek to ascertain and comply with the law of the place where service is to be made. The proposed inclusion of subsection (c)(3)(D)(ii)(d) would permit service by a means that "the court orders on request by an attorney for the government," as a last resort when other means are unavailable, which in some cases could result in a manner of service that could be deemed inconsistent with foreign law. However, such service would only proceed after consultations between the Criminal Division's Office of International Affairs and the Department of State. In light of this, Criminal Division Deputy Assistant Attorney General for International Affairs Bruce Swartz, the Criminal Division's Office of International Affairs and representatives of the Department of the State consider this proposal to provide an appropriate opportunity for potential reciprocity or foreign policy implications to be taken into account in the context of particular cases and believe the amendment proposal should proceed.

IV. <u>The Practical Steps that a Court and the Executive Branch Can Take When an Organization Fails to Appear in Response to a Validly Served Summons</u>

As we have discussed with the Subcommittee, we have found little case law addressing the consequences of an organization failing to appear in response to a validly served summons. We believe this is because in most cases, when a summons is properly served, organizations do

appear and have a very strong financial incentive to appear. Interestingly, in recent criminal cases involving foreign corporations contesting service of process under Rule 4, those corporations paid U.S. counsel to "specially appear" and make the argument that service was invalid. *See, e.g. United States v. Kolon Industries, Inc.*--- F.Supp.2d ----, 2013 WL 682896 (E.D.Va., February 22, 2013), *United States v. Dotcom,* 2012 WL 4788433 (E.D. Va., Oct. 5, 2012); *United States v. Pangang Group, Ltd*., 879 F. Supp. 2d 1052 (N.D. Ca. 2012). These corporations could have simply ignored the criminal case and not paid anyone to appear. Whether it was a concern for the company's international reputation, management's fear of being arrested when attending an overseas business meeting, the desire not to be perceived as a fugitive, or a desire to maintain a sense of honor, these companies all decided it was better to contest service than have the corporation labeled a fugitive.

Anytime an organization has assets in the U.S, or intends to continue doing business in the U.S., there will be a very strong incentive for the organization to appear and address the criminal allegations, for the pending criminal charges could result in actions that would impact the assets or continuing operations. If the organization does not appear, though, there are a number of practical steps that a court and the Executive Branch could take. They include:

Contempt Orders: In response to a foreign organization's decision not to appear following properly initiated criminal charges, a court could enter a contempt order (e.g., under 18 U.S.C. § 401(3)), possibly resulting in significant fines, forfeitures, and/or other penalties. These penalties may be enforced through the imposition of daily fines. *See, e.g., United States v. Darwin Const. Co., Inc.,* 873 F.2d 750 (4th Cir. 1989) (in civil contempt action, corporation found in contempt for failure to comply with IRS summons was subject to a daily fine of $5,000); *Perfect Fit Indus., Inc. v. Acme Quilting Co., Inc.,* 673 F.2d 53 (2d Cir. 1982) (civil contempt).

The ability to obtain a contempt order is further enhanced by the Committee Note to proposed subsection (a), which states that "The amendment explicitly limits the issuance of a warrant to individual defendants who fail to appear, and provides that the judge may take whatever action is authorized by law when an organizational defendant fails to appear."

Injunctive Relief: A foreign organization's decision not to appear in response to properly initiated criminal charges would be a factor weighing in favor of granting the United States injunctive relief against the foreign organization. Such relief is permitted under various criminal statutes, including the Economic Espionage Act, 18 U.S.C. § 1836, which authorizes the government to file a civil action to "obtain appropriate injunctive relief against any violation of this chapter." Prosecutors commonly seek injunctive relief to prevent further disclosure of a trade secret by the defendant or third parties during a criminal investigation, or as part of the judgment at the end of the case. Depending upon its terms, such an injunction could also limit a foreign corporation's ability to do business in the United States and be used by victims or third-parties to obtain relief abroad.

Appointment of Counsel: There is some authority for the proposition that, in certain circumstances, a court may appoint counsel for a corporation that fails to appear after being properly served, and may proceed with a criminal trial. *See United States v. Rivera,* 912 F. Supp.

- 4 -

634, 638-39 (D. Puerto Rico 1996) (appointing counsel to a corporate defendant that failed to appear at two initial hearings and holding that "[i]nasmuch as a defendant's right to retain counsel of his choice may not interfere with the efficient administration of justice, when confronted with a recalcitrant defendant who refuses to . . . submit to the jurisdiction of the Court, the Court in its discretion may appoint counsel"; fees and expenses to be paid from corporate assets and properties); *United States v. Crosby*, 24 F.R.D. 15, 16 (S.D.N.Y. 1959) (observing that "a corporation may not appear except by counsel" and holding that "[i]t would be idle to provide for summoning a corporation if the court, after so doing, could not render a judgment against it. The court must, therefore, have power to appoint one of its attorneys and officers to appear for the corporation.").

Parallel Proceedings:  There is also some authority for the proposition that, in certain circumstances, a court may sanction a party that fails to comply with orders in a criminal action through penalties in a parallel civil action.  *See, e.g., United States v. Crawford Enterprises Inc.*, 643 F. Supp. 370, 380 (S.D. Tex. 1986) (court finds a foreign oil company in criminal and civil contempt and holds that the oil company's civil action against a corporation that was a defendant in a separate criminal case should be dismissed for the oil company's failure to comply with the corporation's *subpoena duces tecum* in the criminal case).

Seizure/Forfeiture:  A foreign organization's decision not to appear in response to properly initiated criminal charges can result in seizure and forfeiture of the organization's assets, including assets in foreign countries that honor U.S. forfeiture orders, and any assets located in the United States.  Under the Civil Asset Forfeiture Reform Act, Congress reinstated what is commonly known as the "fugitive disentitlement doctrine."  *See* 28 U.S.C. § 2466. Under the doctrine, a court where a civil forfeiture action is pending may disallow any challenge to the forfeiture if the Government establishes that a related criminal case was initiated against the claimant; that the claimant was notified and has knowledge of the criminal case; and that the claimant deliberately avoided prosecution by leaving or declining to "enter or reenter" the U.S. or was otherwise evading the jurisdiction of the court where the criminal case is pending. Congress has included within the scope of the statute not only claims filed by fugitive individuals, but also claims filed by corporations.  *See United States v. $6,976,934.65 Plus Interest*, 478 F. Supp. 2d 30, 43 (D.D.C. 2007) (section 2466(b) creates a presumption that the disentitlement doctrine applies if a fugitive is the corporate claimant's majority shareholder, but even without the presumption, the fugitive's disentitlement may be imputed to the corporation if the court pierces the corporate veil and finds that the corporation is the fugitive's alter ego), *rev'd on other grounds*, 554 F.3d 123 (D.C. Cir. 2009).

Office of Foreign Asset Control:  The President has the ability to issue executive orders directing the Treasury Department to administer and enforce economic and trade sanctions based on U.S. foreign policy and national security goals.  These sanctions may prevent a foreign corporation from doing business in the United States or through a U.S. bank.  The Department of Justice can seek such OFAC sanctions against foreign corporations where certain criteria are met.  One factor favoring OFAC sanctions would be a foreign corporation's decision not to appear in response to a properly initiated criminal lawsuit.

- 5 -

Listing and Diplomatic Consequences: Executive Branch agencies such as the Department of Commerce maintain public lists of foreign corporate entities that are being sanctioned because of misconduct. In addition, the fact that a particular country or countries have engaged in a pattern of harboring fugitive corporations may also be an important factor forming or modifying diplomatic, trade or other relationships. For example, a number of recent cases in which Rule 4 process was challenged involve intellectual property issues. A country's pattern of harboring fugitive corporations in that context could be one factor in determining whether to include a country in United States Trade Representative's "Special 301" Report, an annual review of the state of intellectual property rights protection and enforcement in trading partners around world, which the Office of the United States Trade Representative conducts pursuant to section 182 of the Trade Act of 1974 (as amended by the Omnibus Trade and Competitiveness Act of 1988 and the Uruguay Round Agreements Act). The May 2013 report can be found at:

http://www.ustr.gov/sites/default/files/05012013%202013%20Special%20301%20Report.pdf.

Debarment: The Government may impose other non-penal sanctions that may accompany a criminal charge, such as suspension or debarment from eligibility for government contracts or federally funded programs. Determining whether or not such sanctions are appropriate or required in a particular case is the responsibility of the relevant agency, and is a decision that is made based on the applicable statutes, regulations, and policies. The Federal Acquisition Regulations System codifies these policies as well as applicable procedures for imposing suspension and debarment. The Federal Acquisition Regulation (FAR), *Subpart 9.4— Debarment, Suspension, and Ineligibility,* permits a contracting official to suspend or debar a contractor once charged with a criminal offense. However, there are procedural protections that go along with suspension and debarment, including notice. Such notice would be evidenced in part by service of process in the criminal case.

V. Conclusion

We hope this memorandum and our suggested revisions to the draft amendment and Committee Note are helpful. As we stated earlier, our ultimate objective is to facilitate the efforts of the U.S. Government to hold organizations accountable for criminal conduct, obtain restitution, and otherwise vindicate the interests of the people of the United States. Our specific objective underlying our rule proposal is to amend Rule 4 to authorize the service of process in manners that provide notice to the defendant organization while not placing unnecessary obstacles to the initiation of criminal proceedings.

We look forward to discussing all of this with the Subcommittee soon. Please let us know if there is any further information we can provide to you.

# TAB 4

Cited in In re A warrant to Search email
account controlled maintained by Microsoft
13Mag2814 Decision 4/25/14
Archived on 5/6/14
This document is protected by copyright.
Further reproduction is prohibited without permission.

**THIS PAGE INTENTIONALLY BLANK**

Cited in In re A warrant to Search email account controlled maintained by Microsoft 13Mag2814 Decided 4/25/14

Archived on 5/6/14

This document is protected by copyright. Further reproduction is prohibited without permission.



**U.S. Department of Justice**

Criminal Division

---

*Assistant Attorney General*                    *Washington, D.C. 20530*

September 18, 2013

The Honorable Reena Raggi
Chair, Advisory Committee on the Criminal Rules
704S United States Courthouse
225 Cadman Plaza East
Brooklyn, NY 11201-1818

Dear Judge Raggi:

The Department of Justice recommends an amendment to Rule 41 of the Federal Rules of Criminal Procedure to update the provisions relating to the territorial limits for searches of electronic storage media. The amendment would establish a court-supervised framework through which law enforcement can successfully investigate and prosecute sophisticated Internet crimes, by authorizing a court in a district where activities related to a crime have occurred to issue a warrant – to be executed via remote access – for electronic storage media and electronically stored information located within or outside that district. The proposed amendment would better enable law enforcement to investigate and prosecute botnets and crimes involving Internet anonymizing technologies, both which pose substantial threats to members of the public.

**Background**

Rule 41(b) of the Federal Rules of Criminal Procedure authorizes magistrate judges to issue search warrants. In most circumstances, search warrants issue for property that is located within the judge's district. Currently, Rule 41(b) authorizes out-of-district search warrants for: (1) property in the district when the warrant is issued that might be moved outside the district before the warrant is executed; (2) tracking devices, which may be monitored outside the district if installed within the district; (3) investigations of domestic or international terrorism; and (4) property located in a United States territory or a United States diplomatic or consular mission.

Rule 41(b) does not directly address the special circumstances that arise when officers execute search warrants, via remote access, over modern communications networks such as the Internet. Rule 41 should be amended to address two increasingly common situations: (1) where the warrant sufficiently describes the computer to be searched but the district within which that computer is located is unknown, and (2) where the investigation requires law enforcement to coordinate searches of numerous computers in numerous districts.

The first of these circumstances – where investigators can identify the target computer, but not the district in which it is located – is occurring with greater frequency in recent years. Criminals are increasingly using sophisticated anonymizing technologies when they engage in crime over the Internet. For example, a fraudster exchanging email with an intended victim or a child abuser sharing child pornography over the Internet may use proxy services designed to hide his or her true IP address. Proxy services function as intermediaries for internet communications: when one communicates through an anonymizing proxy service, the communications pass through the proxy, and the recipient of the communications receives the proxy's IP address, rather than the originator's true IP address. There is a substantial public interest in catching and prosecuting criminals who use anonymizing technologies, but locating them can be impossible for law enforcement absent the ability to conduct a remote search of the criminal's computer. Law enforcement may in some circumstances employ software that enables it through a remote search to determine the true IP address or other identifying information associated with the criminal's computer.

Yet even when investigators can satisfy the Fourth Amendment's threshold for obtaining a warrant for the remote search – by describing the computer to be searched with particularity and demonstrating probable cause to believe that the evidence sought via the remote search will aid in a particular apprehension or conviction for a particular offense – a magistrate judge may decline to issue the requested warrant. For example, in a fraud investigation, one magistrate judge recently ruled that an application for a warrant for a remote search did not satisfy the territorial jurisdiction requirements of Rule 41. *See In re Warrant to Search a Target Computer at Premises Unknown*, ___ F. Supp. 2d ___, 2013 WL 1729765 (S.D. Tex. Apr. 22, 2013) (noting that "there may well be a good reason to update the territorial limits of that rule in light of advancing computer search technology").

Second, criminals are using multiple computers in many districts simultaneously as part of complex criminal schemes, and effective investigation and disruption of these schemes often requires remote access to Internet-connected computers in many different districts. For example, thefts in one district may be facilitated by sophisticated attacks launched from computers in multiple other districts. An increasingly common form of online crime involves the surreptitious infection of multiple computers with malicious software that makes them part of a "botnet" – a collection of compromised computers under the remote command and control of a criminal. Botnets may range in size from hundreds to millions of compromised computers, including home, business, and government systems. Botnets are a significant threat to the public: they are used to conduct large-scale denial of service attacks, steal personal and financial data, and distribute malware designed to invade the privacy of users of the host computers.

Effective investigations of these sophisticated crimes often require law enforcement to act in many judicial districts simultaneously. Under the current Rule 41, however, except in cases of domestic or international terrorism, investigators may need to coordinate with agents,

prosecutors, and magistrate judges in every judicial district in which the computers are known to be located to obtain warrants authorizing the remote access of those computers. For example, a large botnet investigation is likely to require action in all 94 districts, but coordinating 94 simultaneous warrants in the 94 districts would be impossible as a practical matter. At a minimum, requiring so many magistrate judges to review virtually identical probable cause affidavits wastes judicial and investigative resources and creates delays that may have adverse consequences for the investigation. Authorizing a court in a district where activities related to a crime have occurred to issue a warrant for electronic storage media within or outside the district would better align Rule 41 with the extent of constitutionally permissible warrants and remove an unnecessary obstruction currently impairing the ability of law enforcement to investigate botnets and other multi-district Internet crimes.

Thus, while the Fourth Amendment permits warrants to issue for remote access to electronic storage media or electronically stored information, Rule 41's language does not anticipate those types of warrants in all cases. Amendment is necessary to clarify the procedural rules that the government should follow when it wishes to apply for these types of warrant.

**Language of Proposed Amendment**

Our proposed amendment includes two parts. First, we propose adding the following language at the end of subsection (b):

> and (6) a magistrate judge with authority in any district where activities related to a crime may have occurred has authority to issue a warrant, to be executed via remote access, for electronic storage media or electronically stored information located within or outside that district.

Second, we propose adding the following language at the end of subsection (f)(1)(C):

> In a case involving a warrant for remote access to electronic storage media or electronically stored information, the officer executing the warrant must make reasonable efforts to serve a copy of the warrant on an owner or operator of the storage media. Service may be accomplished by any means, including electronic means, reasonably calculated to reach the owner or operator of the storage media. Upon request of the government, the magistrate judge may delay notice as provided in Rule 41(f)(3).

**Discussion of Proposed Amendment**

The proposed amendment authorizes a court with jurisdiction over the offense being investigated to issue a warrant to remotely search a computer if activities related to the crime under investigation have occurred in the court's district. In other circumstances, the Rules or federal law recognize that it can be appropriate to give magistrate judges nationwide authority to issue search warrants. For example, in terrorism investigations, the current Rule 41(b)(3) allows a magistrate judge "in any district in which activities related to the terrorism may have occurred" to issue a warrant "for a person or property within or outside that district." This approach is also similar to the current rule for a warrant requiring communication service providers to disclose electronic communications: a court with "jurisdiction over the offense being investigated" can issue such a warrant. *See* 18 U.S.C. §§ 2703(a) & 2711(3)(A)(I); *United States v. Bansal,* 663 F.3d 634, 662 (3d Cir. 2011); *United States v. Berkos,* 543 F.3d 392, 397-98 (7th Cir. 2008). Mobile tracking device warrants may authorize the use of tracking devices outside the jurisdiction of the court, so long as the device was installed in that jurisdiction. Fed. R. Crim. P. 41(b)(4); 18 U.S.C. § 3117(a). In the proposed amendment, the phrase "any district where activities related to a crime may have occurred" is the same as the language setting out the jurisdictional scope of Rule 41(b)(3).

The amendment provides that notice of the warrant may be accomplished by any means reasonably calculated to reach an owner or operator of the computer or – as stated in the amendment, which uses existing Rule 41 language – the "storage media or electronically stored information." In many cases, notice is likely to be accomplished electronically; law enforcement may not have a computer owner's name and street address to provide notice through traditional mechanisms. The amendment also requires that the executing officer make reasonable efforts to provide notice. This standard recognizes that in unusual cases, such as where the officer cannot reasonably determine the identity or whereabouts of the owner of the storage media, the officer may be unable to provide notice of the warrant. *Cf.* 18 U.S.C. § 3771(c)(1) (officers "shall make their best efforts to see that the crime victims are notified of … the rights described in subsection (a)").

In light of the presumption against international extraterritorial application, and consistent with the existing language of Rule 41(b)(3), this amendment does not purport to authorize courts to issue warrants that authorize the search of electronic storage media located in a foreign country or countries. The Fourth Amendment does not apply to searches of the property of non-United States persons outside the United States, *see United States v. Verdugo-Urquidez*, 494 U.S. 259, 261 (1990), and the Fourth Amendment's warrant requirement does not apply to searches of United States persons outside the United States. *See United States v. Stokes,* ___ F.3d ___, 2013 WL 3948949 at *8-*9 (7th Cir. Aug. 1, 2013); *In re Terrorist Bombings,* 552 F.3d 157, 170-71 (2d Cir. 2008). Instead, extraterritorial searches of United States persons are subject to the Fourth Amendment's "basic requirement of reasonableness." *Stokes,* 2013 WL 3948949 at

*9; *see also In re Terrorist Bombings*, 552 F.3d at 170 n.7. Under this proposed amendment, law enforcement could seek a warrant either where the electronic media to be searched are within the United States or where the location of the electronic media is unknown. In the latter case, should the media searched prove to be outside the United States, the warrant would have no extraterritorial effect, but the existence of the warrant would support the reasonableness of the search.

* * *

We believe that timely and thorough consideration of this proposed amendment by the Advisory Committee is appropriate. We therefore ask that the Committee act at its November meeting to establish a subcommittee to examine this important issue. Criminals are increasingly using sophisticated technologies that pose technical challenges to law enforcement, and remote searches of computers are often essential to the successful investigation of botnets and crimes involving Internet anonymizing technologies. Moreover, this proposal would ensure a court-supervised framework through which law enforcement could successfully investigate and prosecute such crimes.

We look forward to discussing this with you and the Committee.

Sincerely,

Mythili Raman
Acting Assistant Attorney General

cc:   Professor Sara Sun Beale, Reporter
      Professor Nancy J. King, Reporter

**THIS PAGE INTENTIONALLY BLANK**

Cited in In re A warrant to Search email account controlled maintained by Microsoft 13Mag2814 Decided 4/25/14 Archived on 5/6/14 This document is protected by copyright. Further reproduction is prohibited without permission.

# TAB 5

Cited in In re A warrant to Search email
account controlled maintained by Microsoft
13Mag2814 Decision 4/25/14
Archived on 5/6/14
This document is protected by copyright.
Further reproduction is prohibited without permission.

**THIS PAGE INTENTIONALLY BLANK**

Cited in In re A warrant to Search email account controlled maintained by Microsoft 13Mag2814 Decided 4/25/14

Archived on 5/6/14

This document is protected by copyright. Further reproduction is prohibited without permission.

# TAB 5A

Cited in In re A warrant to Search email
account controlled maintained by Microsoft
13Mag2814 Declose d 4/25/14
Archived on 5/6/14
This document is protected by copyright.
Further reproduction is prohibited without permission.

**THIS PAGE INTENTIONALLY BLANK**

**MEMO TO:   Members, Criminal Rules Advisory Committee**

**FROM:      Professor Sara Sun Beale, Reporter**

**RE:          Rule 45**

**DATE:      September 19, 2013**


The proposed amendment of Rule 45 would abrogate the 3 day rule for electronic service.  It is presented at this time as an information item.  Parallel amendments to the civil, criminal, bankruptcy and appellate rules have been drafted.  To the extent possible, the rule changes and notes are the same across the sets of rules.

The project is being coordinated by the CM/ECF Subcommittee, chaired by Judge Michael Chagares, and the work of the reporters is being coordinated by Professor Dan Capra.

6

1         **Rule 45. Computing and Extending Time; Time for**

2         **Motion Papers**

3                            \* \* \*

4         **(c) Additional Time After Certain Kinds of Service.**

5         Whenever a party must or may act within a specified time

6         after service and service is made under Federal Rule of Civil

7         Procedure 5(b)(2)(C) <u>(mailing)</u>, (D) <u>(leaving with the clerk)</u>,

8         ~~(E)~~, or (F) <u>(other means consented to)</u>, 3 days are added after

9         the period would otherwise expire under subdivision (a).

### Committee Note

    **Subdivision (c).** Rule 45(c) and Rule 6(d) of the Federal Rules of Civil Procedure contain parallel provisions providing additional time for actions after certain modes of service, identifying those modes by reference to Civil Rule 5(b)(2). Rule 45(c) – like Civil Rule 6(d) – is amended to remove service by electronic means under Rule 5(b)(2)(E) from the forms of service that allow 3 added days to act after being served. The amendment also adds clarifying parentheticals identifying the forms of service for which 3 days will still be added.

    Civil Rule 5 was amended in 2001 to allow service by electronic means with the consent of the person served, and a parallel amendment to Rule 45(c) was adopted in 2002. Although electronic transmission seemed virtually instantaneous even then, electronic service was included in the modes of service that allow 3 added days to act after being served. There were concerns that the transmission might be delayed for some time, and particular concerns that incompatible systems might make it difficult or impossible to open attachments. Those concerns have been substantially alleviated by advances in technology and in widespread skill in using electronic transmission.

7

A parallel reason for allowing the 3 added days was that electronic service was authorized only with the consent of the person to be served. Concerns about the reliability of electronic transmission might have led to refusals of consent; the 3 added days were calculated to alleviate these concerns. Diminution of the concerns that prompted the decision to allow the 3 added days for electronic transmission is not the only reason for discarding this indulgence. Many rules have been changed to ease the task of computing time by adopting 7-, 14-, 21-, and 28-day periods that allow "day-of-the-week" counting. Adding 3 days at the end complicated the counting, and increased the occasions for further complication by invoking the provisions that apply when the last day is a Saturday, Sunday, or legal holiday.

8

Cited in In re A warrant to Search a certain account controlled maintained by Microsoft 13Mag2814 Decided 4/25/14 Archived on 5/6/14 This document is protected by copyright. Further reproduction is prohibited without permission.

**THIS PAGE INTENTIONALLY BLANK**

Cited in In re A warrant to Search email account controlled maintained by Microsoft 13Mag2814 Decided 4/25/14

Archived on 5/6/14

This document is protected by copyright. Further reproduction is prohibited without permission.

# TAB 5B

This document is protected by copyright. Further reproduction is prohibited without permission.

**THIS PAGE INTENTIONALLY BLANK**

Cited in In re A warrant to Search email account controlled maintained by Microsoft 13Mag2814 Decided 4/25/14 Archived on 5/6/14 This document is protected by copyright. Further reproduction is prohibited without permission.

**To:**      **The CM/ECF Subcommittee**

**From:**   **Professors Sara Sun Beale and Nancy King**

**Re:**      **Possible Amendments to Federal Rules of Criminal Procedure to accommodate CM/ECF**

**Date:**   **July 5, 2013**


This memo discusses the Criminal Rules that might be affected by CM/ECF (and technology more generally), and it provides comments and suggestions on whether any amendment is necessary or advisable. However, our analysis at this stage is necessarily preliminary and general because of the uncertainty about how CM/ECF may change. Because of the large number of rules that might conceivably be affected, we provide the full text only for selected rules, giving a brief description of others.

In the sections that follow, we discuss:

I. Rules referring to "recording," "the record," actions and events that must occur "on the record," handing of or access to recordings, etc.
II. Rules requiring that a document or record be signed
III. Rules requiring writing
IV. Rules governing filing
V. Rules requiring sending and return of files or grand jury material to another district
VI. Rules requiring mailing
VII. Rules requiring the entry of information on documents, and the entry of orders
VIII. Rules requiring the preservation records or testimony
IX. Rules governing service

This memo does not discuss the Rules Governing Actions Under Sections 2254 and 2255, which pose distinctive issues.


# I.  Rules referring to "recording," "the record," actions and events that must occur "on the record," handing of or access to recordings, etc.

The Criminal Rules contain a myriad of references to "the record," to "recording," to events or actions that must occur or be made "on the record," to the making and handling of recordings. Because of the large number of rules involved, we have grouped the rules, describe each briefly (rather than providing the relevant text), and provide comments about the various categories of record-related rules.

9

**A. Rules referring to "recording" or a "recording device" or "recorded statement"**

Rule 4.1. authorizes a number of different options for recording the testimony taken during an application for warrant by electronic means, including recording the conversation by an "electronic recording device," but all recordings must be transcribed, certified, and filed.

Rule 5.1(g) requires that the preliminary hearing be recorded "by a court reporter or by a suitable recording device"; a copy of both the recording of the preliminary hearing and the transcript "may" be provided to any party upon request for the fee specified by the Judicial Conference.

Rule 6(e) states that grand jury proceedings (except deliberations and voting) "must be recorded by a court reporter or by a suitable recording device," and that the government will ordinarily retain control of "the recording, the reporter's notes, and any transcript prepared from those notes."

Rules 11(g) and 12(f) requires plea and motion hearing proceedings to be recorded by a court reporter or a "suitable recording device" and say nothing about a transcript.

Rule 26(f) defines statement, includes "recorded recital" of statement contained in any "recording" or transcription of "recording."

Rule 32.1 requires preliminary hearings in revocations to be recorded by reporter or suitable device as well and says nothing about transcripts.

Rule 41(d)(2) requires testimony in support of a warrant application to be recorded by reporter or suitable device, and requires the judge to file the transcript or recording with the clerk.

Rule 58(e) states proceedings under Rule 58 must be recorded by "a court reporter or a suitable recording device."

Rule 58(g)(2)(C) defines the record for an appeal from a magistrate judge's order as "the original papers and exhibits in the case; any transcript, tape, or other recording of the proceedings; and a certified copy of the docket entries." It also requires that "a copy of the record or proceedings" must be made available to a defendant who establishes his inability to pay.

# Reporters' Comments

If audio or video recordings are ever accepted in place of written transcripts (see discussion in Professor Struve's CM/ECF report on the Appellate Rules), the Criminal Rules that reference transcripts of recordings may warrant a second look. Also, to the extent recordings are conditioned upon payment of a fee, if technology changes allow linking the recordings to the file, the cost of providing a "copy" of the recording could be eliminated for those with access. Those without access to CM/ECF or equipment to play an electronic recording (pro se defendants and petitioners) would presumably require a written transcript. Rule 58(g)(2)(C) so provides in the particular situation of an appeal from magistrate's order.

**B. Rules referencing actions or events or statements that must be made or appear in "the record"**

10

Cited in re warrant to seize e-mail account controlled by Microsoft, decided 4/25/14 — this document is retained by Microsoft — access to controlled/filed document is prohibited by copyright. Further reproduction is prohibited without permission.

Rule 6(b) and (c) state that the foreperson or another designated juror must record how many qualified grand jurors concurred in an indictment in the record.

Rule 11(c)(5) states that if the court rejects certain plea agreements it must provide certain advice to the defendant "on the record and in open court (or, for good cause, in camera)." Rule 11(g) requires the proceedings in which the defendant enters a plea to be "recorded by a court reporter or by a suitable recording device," and states that "the record" must include the plea colloquy.

Rule 12(d) requires the court to state factual findings "on the record" when deciding pretrial motions.

Rule 26(c) requires the court to "preserve the entire statement" if redacted, "under seal, as part of the record."

Rule 26(e) requires the court to strike testimony "from the record."

Rule 32(c) requires the submission of a presentence report unless the court finds "information in the record" sufficient to meaningfully exercise sentencing authority and "explains its finding on the record."

Rule 32.2(d) bars transfer of property interest without defendant's consent "on the record" or in writing.

Rule 58(b)(3)(A) allows magistrates to take a plea only if defendant consents "either in writing or on the record."

Rule 59(b)(1) requires magistrate judge to "enter on the record" an oral or written order in nondispositive matters, make "[a] record" of any evidentiary proceedings, and "enter on the record" any recommendation and proposed findings.

Rule 60(a)(2) requires a court to state reason for excluding a crime victim "on the record."

## Reporters' Comments

If CM/ECF changes how items are made part of the record – by filing or ensuring that it is part of a recording or transcript of a proceeding – all of these rules, or at least the practice under these rules, may be affected. If a change in CM/ECF affects how items are placed under seal or how items are removed from the record, these rules may have to be addressed as well. More information is needed about any changes in CM/ECF to determine whether any rules changes would be desirable.

11

<u>**C. Rules addressing access to or handling of "the record" or "recording"**</u>

Rule 6(d) and (e) refer to the "operator of a recording device" as an authorized person in a grand jury session, and require "all proceedings" to be "recorded by a court reporter or by a suitable recording device."

Rule 6(c) states that "the record" of number of jurors concurring in every indictment may not be made public without court order.

Rule 6(e) notes that unless the court orders otherwise, the government must retain the recording, notes, and any transcript of grand jury proceedings, and that the person who operates a recording device or transcribes recorded testimony is bound to secrecy. It also requires the "records" "relating to grand jury proceedings" to be kept under seal.

Rule 16(a)(3) exempts grand jury's recorded proceedings from discovery, except as noted.

Rule 26.2(c) states that if a witness's prior testimony is redacted before being produced, the court must "preserve the entire statement with the excised portion indicated, under seal, as part of the record."

Rule 25(a) requires a judge to certify "familiarity with the trial record" before substituting in a jury trial

Rule 36 allows court to "correct a clerical error in a judgment, order, or other part of the record, or correct an error in the record arising from oversight or omission."

Rule 49.1(d) allows "filing under seal without redaction and provides for later unsealing or filing of a redacted version "for the public record" and Rule 49.1(f) requires court to retain unredacted copies "as part of the record."

Rule 55 requires the clerk to "keep records of criminal proceedings" and enter in "the records" every order or judgment and date of entry.

# Reporters' Comments

There are many records in criminal cases that are filed under seal or to which access is limited. Grand jury records and presentence reports are always secret. Plea agreements are also unavailable electronically on PACER in many districts, in part because of concerns about retaliation against cooperators. There will be an ongoing future to limit access to some documents that are part of the public record, even as the court's own record itself becomes digitized.

Rule 49.1 seems to be the only Criminal Rule that refers to the "public record" separately from "the record."

**D. Rules referencing records or recordings or transcripts to be produced by parties**

Rule 15 states that a court may order a deponent to produce a "record, or recording" at a deposition. It says nothing about what is done with the material so produced.

Rule 16(a) requires the government to disclose records, recorded statements, and recorded testimony to the defendant.

Rule 49(a) says a party must serve every other party the "designation of the record on appeal."

Rule 59 says "the objecting party" must arrange for "transcribing the record, or whatever portions of it the parties agree to or the magistrate judge considers sufficient."

## Reporters' Comment

We are uncertain whether proposed changes in CM/ECF will change the way discovery is conducted. Is it envisioned that the material that is produced will be electronically stored?

# II.   Rules requiring that a document or record be signed

Thirteen Criminal Rules require that one or more documents or records be signed or make some reference to signatures or signing. The most important of these rules is Rule 49(e), which provides for local rules permitting the use of electronic signatures, and thus provides a basis for the application of local rules to the specific Criminal Rules requiring signing and signatures. It provides:

**Rule 49. Serving and Filing Papers**

> \* \* \* \* \*

> **(e) Electronic Service and Filing. A court may, by local rule, allow papers to be** filed, **signed, or verified by electronic means** that are consistent with any technical standards established by the Judicial Conference of the United States. **A local rule may require electronic filing only if reasonable exceptions are allowed. A paper filed electronically in compliance with a local rule is written or in writing under these rules.**

The remaining rules requiring signatures are summarized below, grouped according to whose signature is required: the judge, the clerk, the attorney for the government, the defendant (and his counsel), a detained material witness, or the grand jury foreperson. We provide a brief description of the rules falling within these categories. Because the categories do generally raise distinctive issues, our comments refer to all.

13

**A. Rules requiring the judge's signature on a warrant, summons, the judgment, or a contempt order**

Rule 4(b)(1)(D) requires a warrant to be signed by a judge, and (b)(2)(B)(iii) requires that a judge who considers both materials by reliable electronic means and other testimony or exhibits to sign any other record and verify its accuracy.

Rule 4.1(b)(2)(6) requires the judge issuing a warrant or summons to sign the original documents or direct the applicant to sign the judge's name on the duplicate original.

Rule 32(k) requires the judge to sign the judgment.

Rule 42(b) requires the judge to sign a contempt order.

**B. Rules requiring the clerk's signature**

Rule 9(b)(1) requires the clerk to sign an arrest warrant or summons.

Rule 17(c) requires the clerk to sign and seal blank subpoenas provided to the parties.[1]

**C. Rules requiring the signature of the defendant and defendant's counsel where the defendant is waiving a right**

Rule 10(b)(2) requires both the defendant and defense counsel to sign a waiver of the defendant's presence at arraignment.

Rule 17.1 provides that the government may use a statement made at a pretrial conference only if the statement was in writing and signed by the defendant and defendant's attorney.

Rule 26.2(f) defines a statement for purposes of that rule, inter alia, as a written statement the defendant makes or signs.

**D. Other rules requiring a signature**

Three other rules require the signature on particular documents of the grand jury foreperson, an attorney for the government, or a detained material witness:

Rule 6(c) requires the foreperson or deputy foreperson to sign all indictments.

Rule 7(c) requires an attorney for the government to sign the indictment or information.

Rule 15 requires a detained material witness who has been deposed at the witness's request to sign a transcript of the deposition under oath before the witness is discharged.

---

[1]Rule 17(c) requires the clerk to "issue a blank subpoena–signed and sealed–to the party requesting it." We interpret this to mean that the clerk must sign the subpoena.

14

## Reporters' Comments

Digital records, electronic filings, and digital signatures are now ubiquitous, and the rules need to take account of that fact. Concerns of that nature prompted the current proposal to amend the Bankruptcy Rule 5005(3)(B) to provide for electronic signatures by persons other than registered users of the court's electronic filing system.

The Criminal Rules now have in place a general mechanism to accommodate electronic signatures. Rule 49 allows local rules to provide for electronic signatures, and when local rules provide for electronic signatures Rule 49(e) allows the substitution of an electronic signature that complies with the local rules. To the extent it is desirable to allow for electronic signatures on routine court documents, Rule 49.1 provides at least a stop gap basis for authorization pursuant to local rules.

We have not collected or evaluated the local rules providing for electronic signatures, and we believe that such a study would be a necessary first step for any attempt to modify the Criminal Rules that currently govern signing. The discussion concerning proposed Bankruptcy Rule 5005(3)(B) would also provide useful information if the Advisory Committee were to consider amending the Criminal Rules to deal more specifically with electronic signatures. If the Advisory Committee were to do so, we expect it would draw distinctions between the electronic signatures by judges and other registered users of the court's electronic filing system and third parties such as the defendant, a detained material witness, and the grand jury's foreperson.

We discuss in the next section of this memo the more general question whether it would be useful to amend the language of Rule 49.1 (modeled on Civil Rule 5(d)(3)), which presently refers to the filing of "paper[s]" as the norm and allows for electronic filing of papers only pursuant to the authority of local rules.

## III. Rules requiring writing

Twenty-eight Criminal Rules require a writing or refer to written materials. The writing requirement in these rules serves a variety of purposes. Rules 3 and 7(c) – which define a complaint and indictment as "a written statement of the essential facts constituting the offense charged" – by implication require that any charge be in writing to be treated as an official complaint, indictment, or information. The other rules discussed in this section generally require that a filing, motion, request, consent, notice, approval, evaluation, summary, statement of reasons, disclosure, or waiver be "written" or made or provided "in writing."

All are subject to Rule 49, which allows electronic filings made in accordance with local rules to be treated as if they were made in writing. It provides (emphasis added):

**Rule 49. Serving and Filing Papers**

* * * * *

**(e) Electronic Service and Filing.** A court may, by local rule, allow papers to be filed, signed, or verified by electronic means that are consistent with any technical standards established by the Judicial Conference of the United States. A local rule may require

15

electronic filing only if reasonable exceptions are allowed. **A paper filed electronically in compliance with a local rule is written or in writing under these rules.**

Because of the large number of rules that require a writing or refer to written materials, we have attempted to group the rules for purposes of discussion (though admittedly there is some overlap and some rules are difficult to characterize). We discuss below rules governing (a) motions, (b) requests or notifications to be made by the parties, (c) disclosures by the parties, (d) judgments and judicial orders, findings, and statements of reasons, (e) consents, approvals, and stipulations, (f) other miscellaneous rules.

### A. Rules governing motions

Rule 47 requires motions to be made in writing unless otherwise permitted by the court (and includes general rules for the time of filing). It provides (emphasis added):

**Rule 47. Motions and Supporting Affidavits**

> **(b) Form and Content of a Motion. A motion—except when made during a trial or hearing—must be in writing, unless the court permits the party to make the motion by other means.** A motion must state the grounds on which it is based and the relief or order sought. A motion may be supported by affidavit.
>
> **(c) Timing of a Motion.** A party must serve a **written motion**— other than one that the court may hear ex parte—and any hearing notice at least 7 days before the hearing date, unless a rule or court order sets a different period. For good cause, the court may set a different period upon ex parte application.

In addition, Rule 15(a)(2) provides that a detained material witness may file a written motion requesting to be deposed. The reference to a "written" motion appears to be superfluous in light of Rule 47(b).

### B. Rules governing other requests or notification by the parties

Many Criminal Rules do not refer to "motions," but they require one or both parties to make a formal request or provide required forms of notification in writing.

Rule 12.1(a) allows the attorney for the government to request in writing notification of any intended alibi defense and then requires the defendant to respond in writing.

Rule 12.2(a) and (b) require a defendant intending to assert an insanity defense or introduce expert evidence of a mental disease or defect to notify the attorney for the government in writing.

Rule 12.3(a) and (b) require a defendant asserting a public-authority defense to notify the attorney for the government and requires the attorney for the government to respond in writing.

16

Rule 15(b)(1) requires a party seeking to take a deposition to provide the other party with "reasonable written notice."

Rule 16(d) provides that the court may permit a party to show good cause for a protective order restricting discovery by a "written statement" to be inspected ex parte.

Rule 26.1 provides that a party intending to raise an issue of foreign law must provide all parties with "reasonable written notice."

Rule 30 provides that a party may request "in writing" that the court give an instruction to the jury.

Rule 32(f) provides that the parties may "state in writing" any objections to the presentence report.

Rule 59(b)(2) provides that a party may file "specific written objections" to a magistrate judge's proposed findings and recommendations.

## C. Rules governing disclosures by the parties

Several Criminal Rules governing discovery require the parties to make disclosures of various kinds in writing.

As noted above, Rule 12.1(a) allows the government to make a written request for notification of an intended alibi defense. Rule 12.1(b)(1) mandates reciprocal disclosure "in writing" by the attorney for the government to a defendant who has served notice of an alibi defense, and Rule 12.1(c) mandates a continuing duty to disclose "in writing."

Rule 12.3(a)(4) provides that the attorney for the government may "request in writing" disclosure of witnesses intended to establish a public-authority defense, and requires reciprocal written witness disclosures by the government and the defense; (b)(1) imposes a continuing duty to disclose "in writing."

Rule 16(a)(1)(B) requires the government to disclose the defendant's "written or recorded statement" and the portion of any "written record" containing the substance of an oral statement.

Rule 16(a)(1)(G) and (b)(1)(c) require the government and the defense to provide a "written summary" of certain testimony the government or defense intends to introduce.

17

### D. Rules governing judgments, orders, findings, and statements of reasons

The following Criminal Rules require that the court's orders, judgments, and other judicial statements or findings be "written" or "made in writing."

Rule 4.1(b)(2)(A) requires a judge acting under the rule to "acknowledge the attestation in writing" if the applicant for a warrant or summons does no more than attest to the contents of a written affidavit submitted by telephone or other reliable electronic means. If the judge considers additional testimony or exhibits, (b)(1)(B) requires the judge to "sign any other written record, certify its accuracy, and file it."

Rule 6(e)(3) requires the transferring court to provide a "written evaluation of the need for continued grand jury secrecy" when transferring a petition for the release of grand jury materials.

Rule 23(c) requires the court to state its specific findings of fact in open court or a written decision or opinion.

Rule 32(i)(1)(B) provides that the court must provide the parties with a "written summary of" (or summarize in camera) any information excluded from the presentence report upon which the court intends to rely.

Rule 40(c) states the court may modify a previous release or detention order issued in another district but must state the reasons for doing so "in writing."

Rule 59(a) allows a magistrate judge to enter a written or oral order in a nondispositive matter referred by the district court.

### E. Rules governing consent, approval, reservation of rights, or stipulations

Many Criminal Rules require that a party (usually the defendant) who waives a right or consents a certain procedure do so in writing, and other rules require that approvals, stipulations and the like be in writing. These rules provide a record of the waiver, consent, or other action, and may also draw the party's attention to the importance of the decision being made.

Rule 10(b) provides that a defendant who has signed a written waiver of appearance, affirmed receipt of the indictment or information, and is pleading not guilty need not be present if the court accepts the waiver.

Rule 11(a) allows entry of a conditional guilty or nolo plea (with the consent of the court and government) "reserving in writing" appellate review of a specified pretrial motion.

Rule 15(c)(1) provides that a defendant may "waive[] in writing" the right to be present at a deposition.

Rule 17.1 provides that the government may not use any statement by the defendant or counsel made at a pretrial conference unless the statement is "in writing and signed by the defendant and the defendant's attorney." In this context, the provision of a written statement operates to waive the general rule preventing admission.

18

Rule 20(a) provides that a prosecution may be transferred to another district if the defendant states "in writing" a wish to plead guilty, consents "in writing" to disposition in the transferee district, and the U.S. Attorneys in both districts "approve the transfer in writing."

Ruler 20(d) provides for transfer of a case involving a juvenile when, inter alia, the juvenile consents to the transfer "in writing" and the U.S. Attorneys in both districts "approve the transfer in writing."

Rule 23(b) allows the parties to "stipulate in writing" their agreement to proceed with fewer than 12 jurors.

Rule 32(e) provides that unless "the defendant has consented in writing" a presentence report may not be submitted to the court or otherwise disclosed before the defendant has been found guilty or pleaded guilty or nolo contendere.

Rule 32.2 provides for a stay of forfeiture pending appeal and prevents transfer to a third party until the appeal becomes final "unless the defendant consents in writing or on the record."

Rule 43(b)(2) provides that in certain low level misdemeanor cases the defendant need not be present if he or she gives "written consent" and the court agrees to permit arraignment, plea, trial, and sentencing to occur by video teleconferencing or in the defendant's absence.

Rule 58(b)(5) allows a plea to be taken before a magistrate judge if the defendant consents "either in writing or on the record" to be tried before a magistrate judge and specifically waives trial before a district judge.

Rule 58(b)(2)(a) allows waiver of venue if the defendant "state[s] in writing a desire to plead guilty or nolo contendere," to waive venue, and to consent to the court's disposing of the case in the district.

**F. Other rules requiring writing or governing the use of written documents[2]**

Rule 6(f) requires that when 12 grand jurors do not concur in a pending complaint or information the foreperson must "promptly and in writing report the lack of concurrence to the magistrate judge."

Rule 32.1(b)(2) requires that the court to hold a hearing on the revocation of supervised release and provide the person "written notice of the alleged violation" as well as disclosure of the evidence against the person.

Rule 32.2(b)(1)(B) provides that the court may base a forfeiture determination on the record "including any written plea agreement."

# Reporters' Comments

---

[2]Additionally, Rule 41(d)(2)(B) provides that under some circumstances the judge "may wholly or partially dispense with a written affidavit and base a warrant on sworn testimony."

19

In general, the Criminal Rules seem to require that information be in "writing" or be "written" in order to provide initial clarity and to create a record. Additionally, the requirement of a writing signals to the parties the importance of a decision or action. Although the pervasive inclusion of writing requirements reflect the assumption that paper filings are the norm, these requirements are subject to Rule 49, which allows electronic filings to be treated as "written or in writing" under the Criminal Rules if they are authorized by local rules.[3] Thus in districts with local rules authorizing electronic filings, most or all of the "written" submissions could be made electronically.

The current rules raise two main questions.

First, are the local rules governing electronic filing operating in a satisfactory fashion? For example, are there problems in certain districts, or with certain kinds of filings? Has a consensus best practice emerged, making it time for a uniform rule? We are agnostic on these issues. We have made no study of the relevant local rules and their operation. We think such a study would require the assistance of the Federal Judicial Center and/or the Administrative Office, and it would be important to involve clerks of court, magistrate judges, the Department of Justice, Federal Defenders, and others who deal with the rules on a day to day basis. Moreover, it would be beneficial to consider whether such a study should consider local rules governing civil as well as criminal cases. Discussions in the CM/ECF Subcommittee may be helpful in determining whether such a study is warranted at the present time.

The second question raised by the current structure – reflected in Rule 49 as well as the other rules noted above -- is whether it is time to reconsider the assumption that paper filings are the norm, and that electronic filings should be permitted only when authorized by local rules. Since Rule 49 was based on and tracks Civil Rule 5(d)(3), such a determination should certainly consider civil as well as criminal practice, though there are significant differences that might ultimately dictate different results. It seems likely that eventually paper filings will be the exception rather than the rule, but we are not certain that whatever changes may be made in the CM/ECF system signal that the time is ripe for a change of this magnitude. Again, we look forward to a discussion of these issues in the CM/ECF Subcommittee.

# IV. Rules governing filing

---

[3]Rule 49 authorizes only "papers" to be filed electronically pursuant a valid local rule, and the Criminal, Rules do not generally refer to "papers." In this context, however, the term "papers" is understood to be a generic term encompassing a wide variety of writings such as those encompassed by the Criminal Rules discussed above: notices, discovery disclosures, consents, requests, etc.

20

Twenty-four Criminal Rules make reference to filing.  Most reference the duty, need, or option to file. These rules govern filings by the clerk,[4] by the judge,[5] by the government,[6] by the defendant,[7] by either party,[8] by the grand jury foreperson,[9] by a third party claimants in forfeiture proceedings,[10] by persons seeking the

---

[4]Rule 32(j)(2) (requires clerk to prepare and file a notice of appeal on defendant's behalf if so requested).

[5]The following rules refer to filing by the judge:  Rule 4.1(b)(2)  (judge must file transcription of notes of testimony, exhibits, modified original warrant, etc. considered during application for warrant); Rule 41(d)(2)(C) (same); Rule 42(b) (summary contempt orders must "be filed with the clerk").

[6]The following rules refer to filing by the government:  Rule 5(a) (complaint must be promptly filed in district where offense committed after warrantless arrest); Rule 5.1(a) (magistrate judge must hold a preliminary hearing unless government files an indictment or information); Rule 6(e) (attorney for government must file under seal a notice of certain disclosures); Rule 7(f) (court may direct government to file a bill of particulars); Rule 12(g) (if court grants motion to dismiss, it may order defendant to be detained until new indictment or information has been filed); Rule 12.4(a)(2) (government must file statement identifying organizational victim upon the defendant's initial appearance).

[7]The following rules refer to filing by the defendant: Rule 12.2(a)  (requires defendant to notify government if he intends to assert insanity defense or introduce expert evidence on a mental condition and to file copy of notice "with the clerk"); Rule 12.3(a) (requires defendant to notify government of intent to rely on public authority defense and to file copy of the notice "with the clerk"; also requires notice to be filed under seal if defendant identifies intelligence agency as alleged source of authority); Rule 12.4(a)(1) (requires nongovernmental corporate party to file statement that identifies any parent corporation and any publicly held corporation that owns 10% of its stock); Rule 20(a) & (d) (requires adult and juvenile defendants seeking transfer to file in "the transferee district" a statement waiving proceedings in original district); Rule 33 (requires motion for new trial to be filed at certain times).

[8]The following rules implicitly or explicitly refer to filings by either party: Rule 15(e) (requires filing of deposition in same matter as in civil action); Rule 32.2(b)(2)(C) (governing appeals from forfeiture order by either party); Rule 49(d) (requires parties to file "with the court a copy of any paper the party is required to serve"); Rule 49(e) (court may allow papers to be filed by electronic means); Rule 49.1(b) (governs required privacy protections for "filings," requiring redactions, providing for exemptions from redaction requirements, filing under seal without redaction, filing of redacted version, protective orders including orders limiting remote access, filing of reference list, and waiver by filing of person's own information without redaction);  Rule 58(g)(2) (party appealing from magistrate's order must file notice "with the clerk"); Rule 59(a) & (b) (party objecting to magistrate judge's order on nondispositive matter or findings and recommendations on dispositive matter must "file" objections).

[9]Rule 6(c) states the foreperson "will" record the number of jurors concurring in each indictment and "will" file the record with the clerk.

[10]Rule 32.2 contains multiple references to claims filed by third party in forfeiture proceedings, including requirement in Rule 32.2(c) that the court conduct an ancillary proceeding if a third party files a petition asserting interest in property sought to be forfeited.

21

return of seized property,[11] and by anyone (including the defendant) seeking disclosure of grand jury materials.[12]  Additionally, although the rules on filing do not refer to victims, victims are also affected by rules concerning the filing of motions.  Rule 60 recognizes that victims have various rights, Rule 60(b)(1) references motions to assert a victim's rights, and Rule 60(b)(2) provides that a victim or a victim's lawful representative may assert those rights.

A few Criminal Rules describe or refer to a relationship between documents or items that have been filed:

Rule 4(a) references "affidavits filed with the complaint."

Rule 5(d)(1)(A) references "affidavits filed with the complaint."

Rule 49.1(b)(9) exempts from redaction an affidavit filed "in support of any charging document."

Rule 49.1(g) states that a filing containing redacted information may be filed "together with" a reference list.

## Reporters' Comments

In general, the Criminal Rules direct that certain filings be made or reference documents that have been filed, but they do not specify how filing is to be accomplished and make no reference to the mechanics of the CM/ECF system.  However, all of these people who file under the Criminal Rules – including not only the clerk and the judge, but also the government, persons seeking grand jury disclosure, third parties claiming a right to property the government is seeking to forfeit, and the grand jury foreperson – must have access to system to "file" these things.  Is it contemplated that CM/ECF will make any changes that would affect the various groups?  Are there any problems with access now?  For example, the Advisory Committee was informed that victims in some courts had problems filing motions asserting their rights because the system did not accommodate such filings; the Committee was later advised changes had been made to address the problem.  Also, some criminal filings are to be non-public.  The grand jury foreperson's filing under Rule 6(c) "may not be made be public" without judicial authorization, under Rule 12.3 certain filings regarding the defense of public authority must be filed under seal, and Rule 49.1 makes provision for sealed filings.  We do not know whether the changes being contemplated would affect how such filings would work.

In our view, the rules that refer to the relationship between documents and items that are filed raise questions.  These rules assume that there is a way to determine when a document is filed "with" or "in support of" another document.  We don't know how that works now, and we wonder whether it might change.  For example, if related paper documents are now stapled together, what is the analogous mechanism for electronic filing?

---

[11] Rule 41(g) requires a person aggrieved by unlawful search and seizure to file motion for return of property to be filed in district where the property was seized.

[12] Rule 6(e)(3)(F) provides that anyone seeking disclosure of grand jury matter must file a petition in district where grand jury convened.

We also note that the language used to describe filings varies. For example, some rules refer to filing "with the clerk"[13] or "with the court." Indeed, the caption of Rule 49.1 (the rule governing privacy protections) refers to "Filings Made With the Court," and the rule uses the terms "filing," "court filing," and "a document filed with the court." Civil Rule 5.2, which parallels Rule 49.1, also refers to "filing with the court" and "filing made with the court." We don't know what is adding by a reference to the court or to the clerk. In this context, are there filings not made with the clerk and the court? Is there anything about the move toward electronic filing that makes it less desirable to refer to filing with the clerk or with the court?

Finally, we note that Rules 20 and 21 – which govern transfers for plea and sentence, or for trial – use the term "file" in a difference context, referring to sending "the file, or a certified copy" to the transferee district clerk. We are not certain why these rule refer to the file rather than the "record" as other rules do. (We note that Rule 58(g)(2) defines the "record" for purposes of an appeal from the decision of a magistrate judge, and do not use the term "file.") As noted in the next section of this memo, another feature of Rules 20 and 21 also suggests that it may be appropriate to consider revisions to both rules.

# V. Rules requiring sending and return of files or grand jury material to another district

Rules 20 and 21 require "send[ing]" the file of a case to another district. Rule 20 requires the clerk of court to send the case file (or a certified copy) to the clerk of another district and requires the return of the "papers" under certain circumstances. Rule 21 similarly requires the clerk to send "the file" in a case involving a juvenile. Rule 6 requires the clerk "to send" grand jury material to another district under certain circumstances.

Rule 20, which governs transfer for plea and sentence, provides (emphasis added):

> **(b) Clerk's Duties.** After receiving the defendant's statement and the required approvals, **the clerk where the indictment, information, or complaint is pending must send the file, or a certified copy, to the clerk in the transferee district**.

> **(c) Effect of a Not Guilty Plea.** If the defendant pleads not guilty after the case has been transferred under Rule 20(a), **the clerk must return the papers to the court where the prosecution began, and that court must restore the proceeding to its docket**. The defendant's statement that the defendant wished to plead guilty or nolo contendere is not, in any civil or criminal proceeding, admissible against the defendant.

`

---

[13]E.g., Rule 12.2(a) (copy of notice regarding insanity defense must be "filed with the clerk"), and Rule 42(b) (judge's summary contempt order must be "filed with the clerk").

23

**(d) Juveniles.**

\* \* \* \* \*

**(2) Clerk's Duties. After receiving the juvenile's written consent and the required approvals, the clerk where the indictment, information, or complaint is pending or where the alleged offense occurred must send the file, or a certified copy, to the clerk in the transferee district**.

Rule 21(c), which governs transfer for trial, also requires "the file" (or a certified copy) be "sent" to the district in which trial will be held. It provides (emphasis added):

**(c) Proceedings on Transfer. When the court orders a transfer, the clerk must send to the transferee district the file, or a certified copy, and any bail taken.** The prosecution will then continue in the transferee district.

And finally, Rule 6, which governs the grand jury, provides in pertinent part (emphasis added):

**(e) Recording and Disclosing the Proceedings.**

\* \* \* \* \*

**(3)** *Exceptions.*

(G) If the petition to disclose arises out of a judicial proceeding in another district, the petitioned court must transfer the petition to the other court unless the petitioned court can reasonably determine whether disclosure is proper. **If the petitioned court decides to transfer, it must send to the transferee court the material sought to be disclosed, if feasible, and a written evaluation of the need for continued grand-jury secrecy.** The transferee court must afford those persons identified in Rule 6(e)(3)(F) a reasonable opportunity to appear and be heard.

## Reporters' Comments

Although we are not certain exactly how the technology will work, it seems likely that there are – or soon will be – more efficient options than sending a case file or certified copy to another district. Accordingly, study of those options would be appropriate. Rule 6 poses somewhat different issues because it does not require an entire case file to be sent, and it deals with grand jury materials, which are afforded a high degree of secrecy.

One option would be to amend Rules 20 and 21 to adopt a variant of the language in the proposed amendment to Appellate Rule 6, which refers to "making the record available." That language would accommodate both providing electronic access and physical delivery of the file (or a certified copy) to the

24

Cited in re: A warrant to Seize email account maintained by Microsoft

14-2985 14 Decided 4/25/14 Argued on 5/6/14

Further reproduction prohibited without permission. This document is protected by copyright.

receiving district. However, adoption of the "make available" language in Rule 20(b) would raise a question about Rule 20(c), which currently provides for restoring the proceeding to the sending court's docket if the case is returned. If electronic access is provided, would the case be removed from the court's docket? The time may be ripe for an evaluation of Rules 20 and 21 considering both the requirement of "sending" the case and the question whether to retain the references to the "file" and the "papers" discussed in the previous section of this memo.

It may also be appropriate to consider amending Rule 6 to provide that the district court would "make available" grand jury materials to the court to which a petition to disclose is being transferred. However, before making such a change it would be desirable to determine whether that would be consistent with the general principle of grand jury secrecy.

# VI. Rules requiring mailing

Four rules – Rules 4, 41, 46, and 58 – require the mailing of a summons, warrant for a tracking device, motion to enforce bail forfeiture, and notice to appear in a misdemeanor or petty offense case. In each case, the rule provides that the mailing is to be made to the recipient's "last known address."

## Reporters' Comments

Although technology is increasingly replacing the use of the mails, three (or perhaps all four) of these rules govern situations in which there may be no means of electronic communication and mailing remains the best alternative.

Rule 4(c)(3) governs the service of a summons on an individual or organization. The purpose of the summons is to initiate the case, and at this stage there will often be no mechanism to accomplish electronic service (even in the case of a defendant who will be represented by counsel who may be later be served electronically). Where personal service cannot be made, Rule 4(c)(3) requires service by mail is required in addition to another form of service. In the case of an individual, Rule 4(c)(3)(B)(ii) governs cases in which service is not made in person, but by leaving a copy with a third party at the defendant's residence. In such cases, Rule 4(c)(3)(B)(ii) requires that service also be made by mailing to the defendant's last known address. Similarly, in the case of a corporation, Rule 4(c)(3)(C) requires service both by delivery to an agent of the corporation and by a mailing to the organization's last known address withing the district or its principal place of business. In the absence of effective means of accomplishing electronic service, the mailing provisions continue to provide the only means of service for many defendants. We note that the Advisory Committee is presently considering a proposal by the Department of Justice to amend Rule 4 to revise the provisions on service on corporations to enable effective service on foreign corporations that have no known address within the district or principal place of business in the U.S. This proposal would affect the mailing requirement.

Rule 41(f)(2)(C) requires that after the use of a tracking device has ended, the officer who executed the warrant must serve the warrant on the person whose property was tracked. As under Rule 4(c)(3)(B)(ii), where service is not made in person, but by leaving a copy with a third party at the defendant's residence, the officer must also mail the warrant to the defendant's last know address. As with Rule 4, the mailing provisions continue to provide the only means of service for many defendants.

25

Rule 58(d) provides that in certain petty offense and misdemeanor cases the court may allow the defendant to pay a lump sum in lieu of appearance and end the case. Subdivision (d)(2) states that if a defendant in such a case has neither paid the fixed sum, requested a hearing, nor appeared in response to the citation or violation notice, the clerk or the magistrate judge "may" issue a notice giving the defendant an additional opportunity to pay the fixed sum. In such a case, the clerk is required to mail the notice of this additional opportunity to the defendant's last known address. Because this rule applies in cases in which the defendant has not appeared or responded by other means to the citation or violation notice, there are no obvious alternatives to mailing.

Rule 46(f)(3)(B) & (C), which govern bail forfeiture, stand on a somewhat different footing and it is possible that electronic service may be (or soon be) plausible. The Rule provides that a bail surety consents to the court's jurisdiction and irrevocably appoints the clerk as its agent for receipt of service for any filings. The rule also provides for the service of a motion to enforce the surety's liability to be made upon the clerk, with the proviso that the clerk must promptly mail a copy to the surety at its last known address. Since the surety has consented to the court's jurisdiction, as electronic communication becomes increasingly ubiquitous it may become possible to require the surety to provide the court with an electronic address. Electronic service of the motion provided for in Rule 46(f)(3)(C) would be more efficient for the clerk, and at some point it may also be more likely to reach the surety than a mailing to the surety's last known address. It may be useful for the Committee to study this issue.

## VII. Rules requiring the entry of information on documents, and the entry of orders

A large number of Criminal Rules refer to the entry of the judgment or various orders,[14] but other rules refer to the entry of information on documents related to the issuance of complaints, warrants, and summonses. Although the rules regarding the entry of orders or the judgment seem to pose no distinctive questions for purposes of the CM/ECF Subcommittee, the rules regarding the entry of information on a documents related to the issuance of complaints, warrants, or summonses may be affected by technological changes. The most elaborate provisions appear in Rule 4.1, which provides (emphasis added):

> **Rule 4.1. Complaint, Warrant, or Summons by Telephone or Other Reliable Electronic Means.**
>
> **(B) Procedures. ....**
>
> **(4) *Preparing an Original Complaint, Warrant, or Summons*.
> If the applicant reads the contents of the proposed duplicate
> original, the judge must enter those contents into an original
> complaint, warrant, or summons.** If the applicant transmits
> the contents by reliable electronic means, the transmission received
> by the judge may serve as the original.

---

[14]E.g., Rule 16(d)(2) (court may enter any other order for failure to comply with discovery obligations); Rule 17(c) (requiring court to give notice to victims before entering an order for subpoena for victim's confidential information); Rule 29(a) & (c)(2) (court must enter a judgement of acquittal at close of government's case if evidence is insufficient to sustain a conviction and may enter a judgment of acquittal if jury fails to return a verdict); Rule 32(k) (judge must sign and clerk must enter the judgment).

\* \* \* \* \*

**(6)** *Issuance.* To issue the warrant or summons, **the judge must**:
    (A) sign the original documents;
    (B) **enter the date and time of issuance on the warrant or summons**; and
    (C) transmit the warrant or summons by reliable electronic means to the applicant **or direct the applicant to sign the judge's name and enter the date and time on the duplicate original**.

Rule 41 also contains some parallel provisions (emphasis added):

**Rule 41. Search and Seizure.**

\* \* \* \* \*

**(f) Executing and Returning the Warrant.**
**(1)** *Warrant to Search for and Seize a Person or Property.*
    (A) *Noting the Time.* The officer executing the warrant must **enter on it the exact date and time it was executed.**

\* \* \* \* \*

**(2)** *Warrant for a Tracking Device.*
    (A) *Noting the Time.* The officer executing a tracking-device warrant must **enter on it the exact date and time** the device was installed and the period during which it was used.

## Reporters' Comments

The rules do not specify how information is to be "entered." In the past, this was likely done in handwriting on the documents. As the technology changes, we expect that the form in which a judge or an officer executing a warrant "enters" information will change as well. Although we have had no indication that issues have arisen under these rules that should be addressed by an amendment, this seems to be an issue worth watching.

## VIII. Rules requiring the preservation records or testimony

Rules 16 and 26.2 explicitly impose an obligation to "preserve" certain materials that are not disclosed during pretrial discovery or after a witness has testified.

In the context of pretrial discovery, Rule 16(d) requires the preservation of an statement seeking a protective order limiting discovery. It provides (emphasis added):

27

**Rule 16. Discovery and Inspection**

**(d) Regulating Discovery.**

**(1) *Protective and Modifying Orders.*** At any time the court may, for good cause, deny, restrict, or defer discovery or inspection, or grant other appropriate relief. **The court may permit a party to show good cause by a written statement that the court will inspect ex parte. If relief is granted, the court must preserve the entire text of the party's statement under seal.**

Rule 16 does not permit pretrial discovery of prior statements by witnesses, but Rule 26.2 provides for the production of the relevant portion of a witness's prior statements after the witness testifies at the trial or other proceedings governed by the rule. Like Rule 16, Rule 26.2(c) imposes an obligation to preserve material that was not produced. It provides (emphasis added):

**Rule 26.2. Producing a Witness's Statement.**

**(c) Producing a Redacted Statement.** If the party who called the witness claims that the statement contains information that is privileged or does not relate to the subject matter of the witness's testimony, the court must inspect the statement in camera. **After excising any privileged or unrelated portions, the court must order delivery of the redacted statement to the moving party. If the defendant objects to an excision, the court must preserve the entire statement with the excised portion indicated, under seal, as part of the record.**

## Reporters' Comments

The rules requiring the preservation of particular testimony not disclosed to the opposing party or a written statement examined ex parte make no reference to the technology needed to meet this requirement. Thus they are consistent with any modifications in the CM/ECF system. We include them here, however, because the requirements for preservation so starkly highlight the need for electronic systems of information storage and retrieval to provide not merely short term, but also long term access to the courts' records.

# IX. Rules governing service

Many Criminal Rules require a variety of documents to be served on the parties and others (e.g., victims, sureties for bail, and claimants to property being forfeited). All are subject to Rule 49, which provides (emphasis added):

**Rule 49. Serving and Filing Papers**

**(a) When Required.** A party must **serve** on every other party any

Cited in confidential email maintained by Microsoft 13Mag2013. Archived as Exhibit 4. This document is protected by copyright. Further reproduction prohibited without permission.

written motion (other than one to be heard ex parte), written notice, designation of the record on appeal, or similar paper.

**(b) How Made. Service must be made in the manner provided for a civil action. When these rules or a court order requires or permits service on a party represented by an attorney, service must be made on the attorney instead of the party, unless the court orders otherwise.**

**(c) Notice of a Court Order.** When the court issues an order on any post-arraignment motion, the clerk must provide notice in a manner provided for in a civil action. Except as Federal Rule of Appellate Procedure 4(b) provides otherwise, the clerk's failure to give notice does not affect the time to appeal, or relieve—or authorize the court to relieve—a party's failure to appeal within the allowed time.

**(d) Filing.** A party must file with the court a copy of any paper the party is required to serve. A paper must be filed in a manner provided for in a civil action.

**(e) Electronic Service and Filing. A court may, by local rule, allow papers to be filed, signed, or verified by electronic means that are consistent with any technical standards established by the Judicial Conference of the United States. A local rule may require electronic filing only if reasonable exceptions are allowed. A paper filed electronically in compliance with a local rule is written or in writing under these rules.**

In addition, Rule 4(c) contains more specific provisions regarding service.

## Rule 4. Arrest Warrant or Summons on a Complaint

**(c) Execution or Service, and Return.**
* * * * *
**(3)** *Manner.*
* * * * *
    (B) A summons is served on an individual defendant:
        (I) by delivering a copy to the defendant personally; or
        (ii) by leaving a copy at the defendant's residence or usual place of abode with a person of suitable age and discretion residing at that location and by mailing a copy to the defendant's last known address.
    (C) A summons is served on an organization by delivering a copy to an officer, to a managing or general agent, or to another agent appointed or legally authorized to receive service of process. A copy must also be mailed to the

29

Cited if the warrant to Serve email account is to be maintained by Microsoft 3Mvq2b. Archived 4/5/14. Far this document is protected by copyright. Reproduction is prohibited without permission.

organization's last known address within the district or to its principal place of business elsewhere in the United States.

## Reporters' Comments

Since Rule 49 provides that service in criminal cases generally follows the Civil Rules, changes in CM/ECF that would affect service in civil cases would affect criminal cases as well. However, Rule 4 does provide distinctive procedures for serving a summons on individual and corporate defendants. As noted above, the requirement of mailing to the last known address may be affected by changes in technology, and the mailing requirement in cases involving corporate defendants outside the U.S. is presently under study by the Criminal Rules Committee.

The more general issues raised by permitting electronic service only when and to the extent permitted by local rules are discussed above.

Cited in In re A warrant to Search email account controlled maintained by Microsoft 13Mag2814 Decided 4/25/14

Archived on 5/6/14

This document is protected by copyright. Further reproduction is prohibited without permission.

30